# EXHIBIT 1

Case Numbers: 17-6239, 17-6351, 17-6240, and 17-6315

---

IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**UNITED STATES OF AMERICA**
*Plaintiff /Appellee,*
v.
**JAMES ALVIN CHANEY, M.D., aka Ace Chaney,**
*Defendant /Appellant,*
and
**ACE CLINIQUE OF MEDICINE, LLC**
*Defendant / Appellant.*

---

On Appeal from the United States District Court
For the Eastern District of Kentucky, Southern Division - London
(Case No. 6:14-cr-00037-1 and 3) Hon. Gregory F. Van Tatenhove

---

**JOINT CORRECTED BRIEF FOR DEFENDANT-APPELLANT
JAMES A. CHANEY, M.D. AND DEFENDANT-APPELLANT
ACE CLINIQUE OF MEDICINE, LLC**

---

For the Appellants:
CHRISTY J. LOVE (KBA# 90604)
LOVE LAW FIRM, PLLC
333 North Main St., Ste. B.
Post Office Box 3105
London, Kentucky 40743
TELEPHONE: (606) 877-5683
FAX: (606) 729-08
info@christylovelaw.com

## TABLE OF CONTENTS

| | |
|---|---|
| Disclosure of Corporate Affiliations and Financial Interest | 2 |
| Table of Authorities | 3 |
| Jurisdictional Statement | 7 |
| Statement Regarding Oral Argument | 8 |
| Statement of the Issues | 9 |
| Procedural Background | 10 |
| Factual Background | 15 |
| Summary of the Argument | 34 |
| Argument | 35 |
| I.    The District Court Erred in Denying Appellants' Suppression Motion | 35 |
| II.   Juror Misconduct Warrants a New Trial | 38 |
| III.  The Evidence Presented at Trial was Insufficient to Sustain Appellants' Convictions | 42 |
| IV.   The Sentence Imposed was Procedurally Unreasonable | 53 |
| V.    Other Arguments | 57 |
| Conclusion | 57 |
| Certificate of Compliance | 58 |
| Certificate of Service | 58 |
| Designation of Relevant District Court Documents | 59 |

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA**
                Plaintiff – Appellee

v.

**JAMES A. CHANEY,**                     **CASE NUMBERS:**
**ACE CLINIQUE OF MEDICINE, LLC**         **17-6239, 17-6351,**
                                          **17-6240, and 17-6315**

                Defendants – Appellants

---

## APPELLANTS' JOINT DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

---

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and also

6 Cir. R. 26.1, Defendants-Appellants James A. Chaney and Ace Clinique of

Medicine, LLC hereby make the following disclosures:

1. The parties are not a subsidiary or affiliate of a publicly owned corporation.

2. There is no parent corporation or affiliate.

3. There is no financial interest in a parent corporation or affiliate.

Respectfully Submitted,
*/s/Christy J. Love*
Christy J. Love
Attorney for Appellants
James A. Chaney and Ace
Clinique of Medicine, LLC

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Gall v. United States,* 552 U.S. 38, 51 (2007)                                              53

*Groh v. Ramirez*, 540 U.S. 551 (2004)                                                       36

*In re Winship,* 397 U.S. 358 (1970)                                                         42

*United States v. Leon*, 468 U.S. 897 (1984)                                                 19, 34-35, 38

*Rita v. United States*, 551 U.S. 338 (2007)                                                 55

*United States v. Abrams*, 137 F.3d 704 (2nd Cir. 1998)                                      41

*United States v. Binder,* 26 F.Supp.3d 656 (E.D. Mich 2014)                                 44

*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)                                      53

*United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011)                                   41

*United States v. Brooks,* 594 F.3d 488 (6th Cir. 2010)                                      36

*United States v. Brown*, 732 F.3d 569 (6th Cir 2013)                                        35

*United States v. Brown*, 828 F.3d 375 (6th Cir. 2016)                                       36

*United States v. Callahan,* 801 F.3d 606 (6th Cir. 2015)                                    43

*United States v. Davidson,* 936 F.2d 856 (6th Cir. 1992)                                    35

*United States v. Greene,* 250 F.3d 471 (6th Cir. 2001)                                      35

*United States v. Grubbs*, 506 F.3d 434 (6th Cir., 2007)                                     43

*United States v. Hanna*, 661 F.3d 271 (6th Cir. 2011)                                       36

*United States v. Hernandez,* 227 F.3d 686 (6th Cir. 2000)                                   52

*United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008) ................................................ 49

*United States v. Hython*, 443 F.3d 480 (6th Cir. 2006) ............................................ 35

*United States v. Jackson*, 473 F.3d 660 (6th Cir. 2007) ........................................... 43

*United States v. Jeter*, 721 F.3d 746 (6th Cir. 2013) ............................................... 53

*United States v. Johnson*, 71 F.3d 539 (6th Cir. 1995) ............................................ 44

*United States v. Jones*, 399 F.3d 640 (6th Cir. 2005) .............................................. 38

*United States v. Liou*, 491 F.3d 334 (6th Cir. 2007) ............................................... 55

*United States v. Martinez*, 588 F.3d 301 (6th Cir. 2009) .................................... 43, 48

*United States v. O'Dell*, 805 F.2d 637 (6th Cir. 1986) ............................................ 38

*United States v. Parker*, 997 F.2d 219 (6th Cir. 1993) ............................................ 52

*United States v. Parkes*, 668 F.3d 295 (6th Cir. 2012) ........................................... 53

*United States v. Pinson*, 321 F.3d 558 (6th Cir. 2003) ............................................ 36

*United States v. Raithatha*, 385 F.3d 1013 (6th Cir. 2004) ..................................... 47

*United States v. Resko*, 3 F.3d 684 (3rd Cir. 1993) ......................................... 38, 41-42

*United States v. Richards*, 659 F.3d 527 (6th Cir. 2006) .................................. 19, 36-37

*United States v. Richman*, 600 F.2d 286 (1st Cir. 1979) .......................................... 41

*United States v. Shackleford*, 777 F.2d 1141 (6th Cir. 1985) ................................... 42

*United States v. Shultice*, No. 98–54, 2000 WL 34030842 ....................................... 45
 (N.D.Iowa Apr. 4, 2000)

*United States v. Stafford*, 136 F.3d 1109 (7th Cir. 1998) ........................................ 41

*United States v. Stewart*, 729 F.3d 517 (6th Cir. 2013) ........................................... 43

*United States v. Taylor*, 800 F.3d 701 (6th Cir. 2015)          42-43

*United States v. Trujillo*, 376 F.3d 593 (6th Cir. 2004)          52

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008)          53

*United States v. Wendlandt*, 714 F.3d 388 (6th Cir. 2013)          55

*United States v. Word*, 806 F.2d 658 (6th Cir. 1986)          44


**Statutes:**                                              **Pages**

18 U.S.C. § 2                                              *passim*

18 U.S.C. § 1035                                           *passim*

18 U.S.C. § 1347                                           *passim*

18 U.S.C. § 1349                                           *passim*

18 U.S.C. § 1956(h)                                        *passim*

18 U.S.C. § 1957                                           *passim*

18 U.S.C. § 3231                                           7

21 U.S.C. § 841(a)(1)                                      *passim*

21 U.S.C. § 843(a)(3)                                      *passim*

21 U.S.C. § 846                                            *passim*

21 U.S.C. § 856(a)                                         *passim*

28 U.S.C. § 1291                                           7

**Other Authorities**:                                    **Pages**

U.S. Const. amend. IV                                      34, 36

Federal Rules of Appellate Procedure  28                  10, 57

Federal Rules of Criminal Procedure 33                    38

Federal Rules of Evidence 606                             24

21 CFR § 1306.04                                          45

U.S.S.G. § 2B1.1                                          55

USSG § 2B1.1(b)(1)(C)                                     31

USSG §2B1.1(b)(7)(ii)                                     27

USSG § 2D1.1(c)(7)                                        31, 54

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231, which provides for original district court jurisdiction over all federal offenses. The district court's jurisdiction was based on alleged violations of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, 21 U.S.C. § 856(a), 18 U.S.C. § 1956(h), 21 U.S.C. § 843(a)(3), 18 U.S.C. § 1349, 18 U.S.C. § 1347, 18 U.S.C. § 1035, and 18 U.S.C. § 1957.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, because the district court entered a final judgment against Appellant Dr. James Chaney on October 3, 2017 (R.489, Judgment, Page ID# 9881-9889) and on November 7, 2017 (R.519, Amended Judgment, Page ID# 10265-10273); and against Appellant Ace Clinique of Medicine, LLC on October 12, 2017 (R. 497, Judgment, Page ID# 9905-10158) and on October 27, 2017 (R.510, Amended Judgment, Page ID# 10154-10158).

Appellant Dr. James Chaney timely filed his notices of appeal on October 13, 2017 (R. 498, Notice of Appeal, Page ID# 9910) and November 7, 2017 (R. 520, Notice of Appeal, Page ID# 10274). Appellant Ace Clinique of Medicine, LLC timely filed its notices of appeal on October 13, 2017 (R.499, Notice of Appeal, Page ID# 9911) and on November 2, 2017 (R.516, Page ID# 10258).

7

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Dr. James Chaney and Ace Clinique of Medicine, LLC anticipate that oral argument will be unnecessary in this case because the facts and legal arguments are adequately presented in this brief and in the record.

Respectfully Submitted,

/s/Christy J. Love
Christy J. Love
Attorney for Appellants

# <u>STATEMENT OF THE ISSUES</u>

1. Did the District Court Err in Denying Appellants' Suppression Motion Concerning the Particularity Requirement of the Fourth Amendment?

2. Did the Court Err By Failing to Notify the Parties About Potential Mid-Trial Juror Misconduct?  Did Mid-Trial Juror Misconduct Occur?  Does the Juror Misconduct Warrant a New Trial?

3. Was the Evidence Presented at Trial Sufficient to Sustain Appellants' Convictions?

4. Was the Sentence Procedurally Unreasonable Due to the Court's Loss Calculation and Disregard for Appellants' Nonfrivolous Argument on the Drug Quantity?

## PROCEDURAL BACKGROUND

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, Appellant-Defendant James Alvin Chaney, M.D., aka Ace Chaney, ("Dr. Chaney") and Appellant-Defendant Ace Clinique of Medicine, LLC ("ACM") hereby submit their joint brief.

On October 2, 2014, Dr. Chaney was indicted by a federal grand jury in the Eastern District of Kentucky. (R. 1, Indictment, Page ID# 1-13). Ace Clinique of Medicine, LLC, Lesa Chaney, and Gregory Hoskins were also indicted – though Gregory Hoskins subsequently pled guilty and became a cooperating witness for the government.  Dr. Chaney, his wife Lesa Chaney, and Ace Clinique of Medicine, LLC were charged in a superseding indictment on April 29, 2015 (R.136, Superseding Indictment, Page ID# 1569-1611) and a second superseding indictment on December 16, 2015 (R. 190, Second Superseding Indictment, Page ID# 1877-1920).

The second superseding indictment included 255 counts against Dr. Chaney. Count One charged him and others with conspiracy to knowingly and intentionally distribute and/or dispense Schedule II or III controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 846.  He was charged with 61 counts of knowingly and intentionally unlawfully distributing or dispensing a controlled substance that was

not for a legitimate medical purpose and in the usual course of professional medical practice, in violation of 21 U.S.C. § 841(a)(1). The controlled substances were oxycodone, a Schedule II controlled substance (Counts 2-13 and Counts 32-39), and hydrocodone, a Schedule III controlled substance (Counts 14-31 and Counts 40-62). He was charged with two counts of knowingly and intentionally maintaining a place for the purpose of unlawfully distributing or dispensing controlled substances that was not for a legitimate medical purpose and in the usual course of professional practice, in violation of 21 U.S.C. § 856(a) (Counts 63-64); one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 65); and two counts of acquiring and obtaining possession of a controlled substance by misrepresentation, fraud, deception, or subterfuge, in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2 (Counts 66 and 67).

Additionally, Dr. Chaney was charged with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 68), 130 charges of health care fraud concerning Magnetic Resonance Imaging exams (Counts 69-111), unnecessary or altered urine drug screens (Counts 112-147), questionable billing practices (Counts 148-197), and nerve conduction studies (Count 234) in violation of 18 U.S.C. § 1347 and 18 U.S.C. § 2. Dr. Chaney was also charged with 36 counts of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035; and 21 counts of money laundering in violation of 18 U.S.C. §

1957. (R. 190, Second Superseding Indictment, Page ID# 1877-1920). Excluding Counts 66 and 67, ACM was charged with identical counts as Dr. Chaney (*Id.*).

On December 15, 2014, Dr. Chaney and his codefendants filed a joint motion to suppress evidence seized on September 9, 2013 pursuant to three search warrants concerning his home, business (Ace Clinique of Medicine, LLC) and airport hangar. (R. 71, Motion to Suppress, Page ID# 611-652). The magistrate judge denied suppression of evidence seized from Dr. Chaney's home and business but granted the request that evidence be suppressed from the hangar. (R. 125, Recommended Disposition, Page ID# 1229-175). Dr. Chaney objected to the recommended disposition (R. 134, Objections, Page ID# 1330-1361) but the district court adopted the recommendations in full. (R. 159, Order, Page ID #1737-1760).

A 23-day jury trial began on February 29, 2016 and concluded on April 18, 2016 with a jury verdict against Dr. Chaney of 174 counts of conviction (R. 281, Verdict, Page ID# 2954-2984). ACM was convicted of identical counts, with two exceptions: only Dr. Chaney was convicted of knowingly obtaining controlled substances through misrepresentation or fraud (Counts 66 and 67), and only ACM was convicted of making false statements related to the pre-signed certificates of medical necessity schemes (Counts 221-233) (R. 371, Order, Page ID# 5909 – see footnote).

During the trial, Dr. Chaney and ACM renewed their motion to suppress based on trial testimony (R. 261, Renewed Motion to Suppress, Page ID# 2776-2783) but the district court denied the renewed motion (R. 273, Order, Page ID# 2903-2908).   At the close of the government's proof, Dr. Chaney and ACM moved for a judgment of acquittal (R.416, Trial Transcript, Page ID# 8090-8156) but that was also denied (R. 267, Order, Page ID# 2794-2809).  Dr. Chaney and ACM renewed this motion and also sought a new trial based on juror misconduct. This too was denied by the trial court.  (R. 371, Opinion and Order, Page ID# 5908-5958).

Presentence investigation reports (hereinafter "PSR") were prepared by United States Probation and numerous objections were filed by Dr. Chaney and ACM.  On August 17-18, 2017, the district court held an evidentiary hearing concerning Appellants' objections to the drug quantity and loss calculation. (R. 459, Evidentiary Hearing Transcript Day 1, Page ID# 9443-9571) and (R. 460, Evidentiary Hearing Transcript Day 2, Page ID# 9572-9654).   The PSR calculated Dr. Chaney's total offense level to be  43 and a criminal history category I, making 21,216 months his advisory sentencing range of imprisonment (PSR, Page 33, ¶140).  The PSR determined that ACM's probation range shall not be less than one year, but not more than five years. (ACM PSR, Page 26, ¶80)

On September 28, 2017, Dr. Chaney was sentenced to a total amount of 180 months imprisonment followed by three years of supervised release (R. 519, Amended Judgment, Page ID# 10265-10273).  He was ordered to pay a special assessment of $17,500.00 and restitution in the joint and several amount of $12,703,796. (*Id.*) ACM was sentenced to 5 years probation on each Count to run concurrent with each other, for a total term of 5 years, a special assessment of $74,400.00 ($400.00 per count of conviction), and restitution in the joint and several amount of $12,703,796 (R. 510, Amended Judgment, Page ID# 10154-10158).  Final judgments were entered against Appellant James Chaney (R.489, Judgment, Page ID# 9881-9889)(R.519, Amended Judgment, Page ID# 10265-10273); and against Appellant Ace Clinique of Medicine, LLC (R. 497, Judgment, Page ID# 9905-10158)(R.510, Amended Judgment, Page ID# 10154-10158).

Appellant James Chaney timely filed his notices of appeal on October 13, 2017 (R. 498, Notice of Appeal, Page ID# 9910) and November 7, 2017 (R. 520, Notice of Appeal, Page ID# 10274).  Appellant Ace Clinique of Medicine, LLC timely filed its notices of appeal on October 13, 2017 (R.499, Notice of Appeal, Page ID# 9911) and November 2, 2017 (R.516, Page ID# 10258). This matter is now before this Honorable Court for determination and review.

## FACTUAL BACKGROUND

Dr. Chaney is a medical doctor who operated Ace Clinique of Medicine, LLC ("ACM") in Hazard, Kentucky.  ACM was a state-of-the-art medical facility that included diagnostic equipment such as MRI, X-ray/CT, mammogram and nuclear medicine machines (R. 472, Sentencing Memorandum, Page ID# 9778 ). Beginning in December 2006, Dr. Chaney treated patients at ACM with chronic pain and a variety of illnesses including diabetes, obesity, high cholesterol, hypertension, heart disease, renal failure, cancer, arthritis, hypothyroidism, and chronic pain.  Dr. Chaney treated complex patients with overlapping co-morbidities and often asked other providers to assist in the diagnosis and treatment of his patients. (*Id.*)  One such provider was Dr. Peter Wright, a pain management specialist. (*Id.*)

### June 25, 2010 Investigation

Prior to June 25, 2010, Dr. Chaney utilized the practice of issuing pre-signed prescriptions while he was out of the office.  This practice prompted an investigation by Investigator Chris Johnson ("Johnson") with the Commonwealth of Kentucky Cabinet for Health and Family Services Office of Inspector General Division of Audits and Investigations ("CHFS OIG")(R. 396, Trial Transcript, Page ID# 6280). On June 25, 2010, Johnson received an anonymous call about the pre-signed prescriptions, and he obtained those prescriptions from a local

pharmacy, and then visited ACM to investigate.  (R. 396, Transcript, Page ID#
6283-6287).  He spoke with several employees and learned that Dr. Chaney was
out of town and the prescriptions had been completed and issued by Shannon
Wilder (a nurse practitioner) and Greg Hoskins (a physician assistant) (R. 396,
Transcript, Page ID# 6294).

## I.    **Search Warrants**

On September 9, 2013, the government filed three applications for search
warrants – one, for ACM (R. 71-3, Application and Affidavit for a Search Warrant,
Page ID# 700-744) - the second, for Chaney's residence (R. 71-2, Application and
Affidavit for a Search Warrant, Page ID# 653-699) -  and the third, for his airport
hangar.  The affidavits attached to the warrants to search the business, residence
and hangar differ slightly (R. 125, Recommended Disposition, Page ID# 1244) See
also (R.85-1, Warrant, Page ID# 944-945) and (R.85-2, Warrant, Page ID# 990-
991).

FBI Special Agent Thad Lambdin ("SA Lambdin") authored the affidavits in
support of his request to search.   He began with Johnson's investigation of the
clinic on June 25, 2010 and provided details from Johnson's report. Subsequent
interviews were conducted by Johnson concerning Dr. Chaney's use of pre-signed
prescription blanks.   SA Lambdin also conducted interviews concerning Dr.

Chaney's use of pre-signed prescriptions and the overall business practices at ACM.

Based on his investigation, SA Lambdin estimated that 50% of the patients treated at ACM were legitimate and estimated that 70 patients were seen daily. SA Lambdin provided that the majority of Dr. Chaney's and ACM's income was derived "from the unlawful distribution and unlalful [sic] dispensation of controlled substances in violation of Title 18, United States Code Section 1956(h)." He stated that the use of pre-signed prescriptions was a violation of 21 U.S.C. § 841(a)(1) and that portions of ACM's proceeds were derived from violations of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 856(a)(2), 21 U.S.C. § 846, and 18 U.S.C. § 1956. Attached to the applications and affidavits was a very vague and broad itemized list of items to be seized. (R.71-2, Page ID# 698-699 and R. 71-3, Page ID# 743-744). For example, though SA Lambdin specified 50% of the medical care was legitimate, paragraph 13 of the list provides: "Patient files for patients. Patient lists. Appointment books, patient profiles, receipt books, ledgers of activity, notes regarding patient information, directions to pharmacies and other related documents as it pertains to patients. (*Id.*) This resulted in a free-for-all for the government as evidenced in the list of seized items (R.134-3, Seizure Inventory, Page ID# 1405-1407).

## II.   <u>Suppression Motion</u>

Following Dr. Chaney's indictment, he and his co-defendants filed a joint motion to suppress the evidence seized (R.71, Motion to Suppress, Page ID# 611-613) and raised several issues - but relevant here - they argued the warrants sought exceedingly broad categories of documents. (R.71-1, Memorandum, Page ID# 625-626). Dr. Chaney and ACM argued that the broad language of "Items to be Seized" that accompanied each warrant, failed to specify which patient files were to be seized or specify a timeframe. (R. 71-1, Page ID# 626). This enabled the government to seize from ACM over 695 boxes of patient records. (*Id.*) Appellants argued that this list is insufficient under the particularity requirement and "authorized general rummaging through the clinic's and Dr. Chaney's personal documents." (*Id.* at Page ID# 636-637). They argued that because the affidavit opined 50% of ACM's patients were legitimate, the government failed to establish that ACM was permeated with fraud, therefore the warrants should not be upheld. (*Id.* at Page ID# 637). Dr. Chaney and ACM specified that the affidavit did not satisfy the particularity requirement because it failed to specify a time period (*Id.* at Page ID# 638) and the evidence in the affidavit was stale (*Id.* at Page ID# 639-642). Dr. Chaney and ACM further argued that the affidavit failed to establish a sufficient nexus between the places to be searched and the evidence sought as it pertained to the house and hangar. (*Id.* at Page ID# 642-646). Finally,

Appellants argued the *Leon* good-faith exception did not apply. (*Id.* at Page ID#

649).

Following the government's response disagreeing with the arguments raised

by Appellants (R.89, Response, Page ID# 900-942), the magistrate issued a

Recommended Disposition (R. 125, Page ID# 1229-1275) finding the totality of

the circumstances creates a substantial basis for a finding of probable cause.  The

magistrate did suppress evidence taken from the hangar and also the evidence

dated prior to March 2006 (*Id.* at Page ID# 1229-1230).   The magistrate

recognized that the three affidavits were very similar for each location to be

searched and itemized the slight differences.

Pertaining to the particularity argument, the magistrate found that ACM was

not permeated with  fraud (R.125, Recommended Disposition, Page ID# 1266)

and wrote "[i]t is a close call whether Attachment B set forth the items to be seized

with sufficient particularity 'to cabin the scope of the search to those areas and

items for which there exist[ed] probable cause that a crime ha[d] been committed."

(R.125 at Page ID# 1266)(citing *United States v. Richards*, 659 F.3d 527, 537 (6th

Cir. 2006).  Attachment B was the "Items To Be Seized."  Though agreeing that

the list was "not a model of clarity," the magistrate did not find it "too broad on its

face."  (R. 125, Page ID# 1266-1267). Finally, the magistrate articulated that even

if probable cause did not exist - the good-faith exception in *United States v. Leon*,

468 U.S. 897 (1984) would apply "to spare the evidence seized from suppression" as it pertained to the clinic and residence. (*Id.* at Page ID# 1272-1274)

Dr. Chaney and ACM objected to the magistrate's recommended disposition (R. 134, Objections, Page ID# 1330-1361) and asked the district court to review and reverse the magistrate's findings as it related to the particularity requirement, and other raised issues. The district court adopted the recommended disposition in full. (R. 159, Order, Page ID# 1737-1760).

## IV. **Trial**

The trial spanned over a course of several weeks beginning on February 29, 2016 and concluding on April 18, 2016.[1] The government presented 59 witnesses and the defense presented 22 witnesses. The witnesses for the government consisted of law enforcement officers, government employees, former patients, former employees, codefendants and expert witnesses. Whereas the witnesses for the defense consisted of former employees, fellow medical colleagues, an attorney,

---

[1] For reference please see Trial Minutes for Dates: 02/29/16; 03/01/16; 03/02/16; 03/03/16; 03/07/16; 03/08/16; 03/09/16; 03/14/16; 03/15/16; 03/16/16; 03/21/16; 03/22/16; 03/23/16; 03/30/16; 03/31/16; 04/05/16; 04/06/16; 04/07/16; 04/12/16; 04/13/16; 04/14/16; 04/15/16; and 04/18/16.

former patients, and Dr. Chaney. (R. 286, Exhibit and Witness List, Page ID# 2990-3008).

The government argued that pre-signed prescriptions were utilized at ACM, urine drug screens were altered under the direction of Dr. Chaney, Dr. Chaney was abusing mediation while practicing medicine, ACM had a high patient volume resulting in long waits and short examinations, the billing was up-coded and tests were performed by unqualified staff. (R.308, Response, Page ID# 3449).

The defense argued that ACM was a state-of-the-art facility dedicated to providing a wide-range of premium medical care to Eastern Kentucky. Though pre-signed prescriptions were in fact utilized, they were issued for a legitimate medical purpose. Further, defense argued that altered urine drug screens were conducted by employees without Dr. Chaney's knowledge, he was not practicing medicine while under the influence of medication, he was following standard medical protocol concerning the frequency patients submitted to urine drug screens, and he had several providers available at ACM to address the needs of the high volume patients. He argued that his staff were not underqualified and billing was not upcoded. Furthermore, once Investigator Johnson visited ACM on June 25, 2010, ACM underwent training to ensure compliance with current medical standards. (R. 318, Transcript – Dr. James Chaney, Page ID# 3939-4246, and R. 319, Transcript – Dr. James Chaney, Page ID# 4247-4547).

21

On April 18, 2016, the jury returned a guilty verdict on Counts 1-68, 112-147, 150-163, 165-168, 171-172, 175, 177, 180, 182, 186, 188, 191-192, 197-204, 206-215, 217-218, 220, and 234-255. (R. 281, Verdict, Page ID# 2954-2984). ACM was convicted of "identical counts, with two exceptions: only Dr. Chaney was convicted of knowingly obtaining controlled substances through misrepresentation or fraud (Counts 66 and 67), and only ACM was convicted of making false statements related to the pre-signed certificates of medical necessity schemes (Counts 221-233). (R. 371, Order, Page ID# 5909 – see footnote).  The government moved to dismiss Counts 69, 84, 101, 196, 205, 216, and 219 (R. 262, Trial Minutes, Page ID# 2784) (*See also* R. 416, Trial Transcript, Page ID# 8167) against Dr. Chaney and ACM.  Both Dr. Chaney and ACM were acquitted of Counts 70-83, 85-100, 102-111, 148-149, 164, 169-170, 173-174, 176, 178-179, 181, 183-185, 187, 189-190, 193-195.  (R. 281, Verdict, Page ID# 2954 – 2984).  Dr. Chaney was also acquitted of Counts 221-233 (*Id.*).

## V.    **Juror Misconduct Issues**

### A.  **Juror #116**

On the fifth day of the trial, the jury administrator approached the trial judge and notified him that juror #116 – an alternate juror - expressed "some frustration with the process" and "concerns about how serious[ly] the jury was taking their duty." (R.371, Opinion and Order, Page ID# 5925). The court determined that

further investigation was premature but instructed the jury to bring any issues to the Court's attention. (*Id* at 5926). The alternate juror did have additional issues and approached the jury administrator who simply instructed the alternate to personally confront the other jurors. (*Id.*)

Following the conclusion of trial, the alternate juror called Dr. Chaney's trial counsel and left a voice mail message. Trial counsel reported the attempted contact to the Court and an *in camera* interview of the alternate juror occurred on April 25, 2016. (R. 295, Minutes, Page ID 3230)(R.291, Transcript of Interview of Juror #116, sealed). During the interview, the alternate juror said: "- - I actually wanted to talk to you when it was – I had told Renee - - I talked to her twice, and the last time she told me that - - that she wasn't going to tell you that I - - that I had called, and that for me to just  ask the jurors not to do that myself, and I didn't feel that was appropriate for me to ask them- -"(R. 291, Sealed Transcript, Page 4). The juror worried about a fair trial (*Id.*) and explained she heard two jurors discussing the case. She said, "—you know, the – his house, Dr. Chaney's house and everything." She confronted them and they argued with her and said they could talk about it. Though another juror agreed with her that it wasn't allowed, these discussions continued (*Id.*).

She said she told Renee (presumably a jury administrator for the district court)  about it and Renee said she'd approach them. (*Id.*) But it happened a second

time, and the juror told Renee again. (*Id.*) This time, Renee told her she wasn't going to inform the court and for the juror to admonish them. Then, they were discussing the treatment of an elderly lady on the stand and the juror "felt it was inappropriate, you know, to be - - be talking about that." (*Id.* at Page 7) She also stated that another juror commented on knowing the number of lights in the ceiling due to boredom during a particular part of the trial. (*Id.* at Page 8).

The district court determined that there were "no concerns about any external influences on the jury's deliberation process" and further investigation into the jurors' conduct was unwarranted because "Rule 606(b) expressly prohibits post-verdict investigation of any other influence." (R.371, Opinion and Order, Page ID# 5928). Dr. Chaney and ACM sought a new trial on the basis of this jury misconduct (R. 299, 299-1, Motion for New Trial and Supporting Memorandum, Page ID# 3279-3290) and argued that the jury's violation of the court's instructions impacted Appellants' right to a fair and impartial jury. Had they known of the jurors' conduct, they would have moved for a mistrial or sought their removal. Dr. Chaney and ACM argued that the trial court failed to give them notice and an opportunity to be heard. (R. 299-1, Page ID# 3285). Dr. Chaney acknowledged that while FRE 606 prevents a juror from testifying about statements made during deliberation, this issue did not occur during actual

deliberation because Juror #116 was excused as an alternate. (R. 299-1, Memorandum, Page ID# 3282).

### B. **Juror # 34**

On July 22, 2016, Appellants and codefendant Lesa Chaney submitted a joint motion seeking leave to contact a juror (R. 353, Motion, Page ID# 5652). Attached to the motion was an affidavit of Dr. Chaney's brother, Robert "Butch" Chaney. (R.353-1, Affidavit, Page ID# 5654-5656). Butch Chaney provided that he had been approached by a juror that "stepped aside as the jury foreperson because of the rancor and disagreement that broke out amongst the jurors during their deliberation." (*Id. at Page ID# 5654-5655*). The foreperson "had made several attempts to speak with the judge about the jury's troubles during the deliberations but was put off each time." (*Id.* at Page ID# 5655). The affiant stated that the foreperson said one juror said all defendants were guilty and it was wrong to prescribe narcotic medication to terminally ill patients. (*Id.*) He said the subsequent foreperson was upset about a leopard print rug or carpet shown in a photograph (*Id.*). He also said "someone told the jury that when their vote got to 7-5 that was good enough for a verdict." (*Id.*) Defense argued that the "jurors may have been subject to improper and extraneous influence with respect to the unanimity requirement for their verdict." (R. 357, Reply, Page ID# 5726). The trial court gave defendants permission to submit a juror questionnaire to the court

for pre-approval in an effort to "safeguard the jury's 'inherent right to be free from interrogation concerning internal influences on the decision-making process.'" (R.358, Order, Page ID# 5729). The court subsequently edited the proposed questionnaire and directed court personnel to contact Juror #34 to schedule a time to complete the form. (R. 365, Order, Page ID# 5884-5885). The trial court determined based on the answers to the questionnaire that Juror #34's concerns about the unanimity of the verdict were related only to internal influences of the deliberation process (R. 371, Order, Page ID# 5927, footnote 16).

## VI.   Sentencing Materials and Proceeding

### a.   Presentence Investigation Report and Evidentiary Hearing

In Dr. Chaney's PSR, the U.S. Probation Office provided that 3,332,846 Schedule II prescriptions and 5,107, 652 Schedule III prescriptions were "improper" (*See* PSR ¶13).[2]  This calculation was obtained by the FBI who reviewed KASPER records. (See PSR, Objection #2, Page 39-40).   The prescriptions of oxycodone and hydrocodone were subsequently converted to the marijuana equivalency of 277,950.564 kilograms (PSR ¶ 15)[3], making Dr. Chaney's Base Offense Level a 38 (PSR ¶ 35).  This drug quantity impacted the adjusted offense levels, the loss calculation, the restitution amount, and the Total

---

[2] ACM PSR ¶29
[3] ACM PSR ¶31

Offense Level was 43. (PSR ¶ 140). Dr. Chaney and ACM objected on the premise that these "all-inclusive" calculations failed to consider the prescriptions written with a legitimate medical purpose, and these calculations entirely relied upon KASPER data that is inaccurate and unreliable.

The PSR also increased the base offense level of 6 for Health Care Fraud by 20 levels because the loss amount of $16,524,541 was more than $9,500,000 but less than $25,000,000. (*See* PSR ¶ 20). Probation further recommended a three level increase pursuant to USSG §2B1.1(b)(7)(ii), due to the belief that loss to the government health care program was more than $7,000,000. This loss amount was determined due to Probation's belief that none of the services rendered were supported by a legitimate medical need or were medically necessary and appropriate for the patient. Dr. Chaney and ACM objected arguing that the loss amount should be based on the specific counts of conviction.

The district court held a two-day evidentiary hearing on August 17-18, 2017 to hear testimony concerning Appellants' drug quantity objection and objection on loss attributable to health care fraud. At the hearing, SA Lambdin testified (R.459, Evidentiary Hearing Transcript Day 1, Page ID# 9450-9497). He said he used Dr. Chaney's DEA Number to obtain the KASPER records (*Id.* at Page ID# 9456, and 9487-9488) from January 1, 2007 through August 8, 2014. (*Id.* at Page ID# 9457, and 9495). The KASPER data is entered by pharmacies as they fill prescriptions,

and "entry errors can occur" including the intermixing of Dr. James A. Chaney's prescriptions with Dr. James Dustin Chaney's prescriptions. (*Id.* at Page ID# 9461). Lambdin did not verify the information he relied upon and was unable to testify whether any of the prescriptions provided in his calculation included prescriptions written for a legitimate medical purpose (*Id.* at Page ID# 9491 and 9494).

Defense expert witness Dr. Larry Russell, M.D., C.M.D. (R. 460, Evidentiary Hearing Transcript Day 2, Page ID# 9609-9650) testified on August 18, 2017. He is board certified in family medicine (*Id.* at Page ID# 9612), and he testified that the files he reviewed were within the usual standard practice of medicine. (*Id.* at Page ID# 9615). The randomized sample of patient files was determined by defense expert witness Arnold J. Stromberg, PhD.

Dr. Russell performed two different reviews – first, he conducted a procedural review and – second, a pharmacy review. Concerning the procedural review, Russell examined 87 patient charts. (*Id.* at Page ID# 9643). He reviewed 78 patient charts for the pharmacy review. (*Id.* at Page ID# 9621).

For the pharmacy review, he stated that "good medical care" was shown by Dr. Chaney's implementation of a pain management doctor (Dr. Wright) (*Id.* at Page ID# 9626-9627). Dr. Russell opined that out of the 78 charts reviewed, Dr. Chaney referred patients to Dr. Wright as a pain management specialist in about

56-57 of those charts. (*Id.* at Page ID# 9629). He noted that Dr. Wright would often increase the pain medication or frequency that Dr. Chaney had prescribed (*Id.* at Page ID# 9627-9628). He found that the overall amount of narcotic was certainly well under the current (2017) recommendation of no more than 100 mg of morphine equivalent daily." (R. 464, Memorandum, Page ID# 9692). He concluded that in every case he reviewed, "the narcotics were prescribed for a 'legitimate medical purpose and within the usual course of professional medical practice'" and the use of narcotics appeared to be "medically necessary and appropriate." (*Id.*)

For the procedural review, Dr. Russell noted that he saw references to nursing home visits, hospital visits including admissions, follow-ups, and discharges. Prostate cancer tests were ordered as were basic chemistry tests. (R. 460 at Page ID# 9630). He also reviewed claims for urine drug screens. He testified at length concerning random urine drug screens and indicated that for many years there were no protocols about how often to administer the screens. (*Id.* at Page ID# 9632). He stated that better suggestions were made in 2014 for pain management such as monthly pill counts, urine screens monthly, and the refusal to refill medication if these steps are not followed by the patient. (*Id.* at Page ID# 9632-9633). He found that Ace Clinique of Medicine, LLC was a "routine medical practice that also did pain management" (*Id.*) and was meeting the criteria that existed at that period.

(*Id.*).   He determined that the issuance of the controlled substance prescriptions, the procedures ordered, and claims for services were supported by a legitimate medical need and were medically necessary and appropriate for the patient.  (*Id.* at Page ID# 9636-9637).    Dr. Russell was unable to find any inappropriate billings and indicated "most of the procedures clearly appear to be for a legitimate medical purpose and within the usual course of professional medical practice."  (R. 464, Memorandum, Page ID# 9699-9700).

Dr. Chaney also testified at the evidentiary hearing.  He opened Ace Clinique of Medicine, LLC with a desire to provide a family practice that had a broad spectrum in which he could treat many issues – such as performing skin surgery for cancer patients, providing breathing treatments, treatment for hypothyroidism, pain management, and addressing dehydration (R.459, Transcript, Page ID# 9522-9525).  He treated several patients with chronic pain and his medical practice rendered "pretty extensive" screening on these patients.  (*Id.* at Page ID# 9525). He defined "chronic pain" as pain lasting for three months or more on a daily basis (*Id.* at Page ID# 9526).  The screening process included a psychosocial evaluation, a KASPER profile conducted on the patient, urine drug testing and a specialty consultation.  (*Id.* at Page ID# 9526).  He also provided testimony concerning the unreliability of KASPER data.

Dr. John Gilbert testified as well. He is a board-certified neurosurgeon and is board-certified in pain medicine and addiction medicine. He said he has seen hundreds, maybe thousands of Chaney's patients on a referral basis. (*Id*. at Page ID# 9593-9594). He said: "he had a lot of poor patients. I saw lots of patients from Dr. Chaney that had no money, no insurance, no nothing, but he was taking care of them, and he was providing good care." (R. 460 at Page ID# 9598).

Following the evidentiary hearing, Appellants filed a memorandum concerning the relevant drug quantity and loss amount. (R. 464, Memorandum, Page ID# 9686-9702). Appellants argued that the drug quantity attributable to them is "80, 535 milligrams, or a marijuana equivalency of 539.6 kilograms pursuant to USSG § 2D1.1(c)(7)" (*Id*. at Page ID# 9696). They argued that evidence presented at trial and during the sentencing evidentiary hearing showed that most of the services billed to Medicaid/Medicare pertained to services that were medically necessary. (*Id*. at Page ID# 9701). Further, Dr. Chaney and ACM provided the loss amount attributable to health care fraud for sentencing purposes is greater than $15,000 but less than $40,000, pursuant to USSG § 2B1.1(b)(1)(C) (*Id*.).

### b. **Sentencing Memorandum and Formal Objections**

In his sentencing memorandum, Dr. Chaney analyzed the applicable 18 U.S.C. § 3553 factors and argued that the appropriate guideline level was 30 and a

sentence of imprisonment of 120 months with three years supervised release should be imposed.  (R.472, Sentencing Memorandum, Page ID# 9781).

In addition to the objections filed concerning drug quantity and loss pursuant to healthcare fraud (R.464), and the Sentencing Memorandum (R.472), Dr. Chaney and ACM filed additional formal objections to the PSR (R.471, Objections, Page ID# 9770-9775).    Based on the objections concerning drug quantity, loss amount, and maintaining a premises, Appellants argued that the adjusted offense levels in the PSR needed corrected  (*Id.* at Page ID# 9773).

### c. <u>Sentencing Hearing</u>

The district court held sentencing on September 28, 2017.  The government provided  $16.5 million as a sufficient loss amount and argued it was roughly 77-78% of the $21 million in total healthcare bills.  (R. 508, Sentencing Transcript, Page ID# 10051).  The government argued that the number assumes there was $4.5 million worth of legitimate medical services.  (*Id.*).  Dr. Chaney and ACM argued for a loss amount ranging between $15,000.00 and $40,000.00. (*Id.* at Page ID# 10054).

As it pertained to the loss amount and drug quantity, the Court recognized that many of Dr. Chaney's patients were 'profoundly sick" (*Id* at Page ID# 10066) and "much of the care that was received by those patients was needed." (*Id.*) Thus, the judge concluded that the correct percentage to apply was 60% rather than the

government's suggested 77-78%. (*Id.* at Page ID# 10067). The Court concluded that ACM had a business model about billing fraudulently for services that were not needed. He said, "but I think more than half of it was really about kind of fraudulent billing for things that weren't needed." (*Id.* at Page ID# 10072). The objections concerning the adjusted offense level were directly impacted by the Court's ruling on drug quantity and loss amount, therefore the court overruled the objection. (R. 508, at Page ID# 10073-10075).

Following the Court's analysis of Appellants' objections and declaring that the offense levels did not change, (*Id.* at Page ID# 10098 and 10103*)*, sentencing arguments were made pursuant to the statutory sentencing factors. The government asked for a life sentence for Dr. Chaney (*Id.* at Page ID# 10108); and Dr. Chaney submitted a sentence of ten years was more appropriate and requested a downward variance (*Id.* at Page ID# 10111). The government asked the court to impose a fine against ACM (*Id.* at Page ID# 10116), but ACM requested a sentence of one-year unsupervised probation with the fine waived. (*Id.* at Page ID# 10114). Following analysis of the 18 U.S.C. § 3553 factors, the district court found a downward variance for Dr. Chaney appropriate and sentenced him to a total sentence of 180 months. (*Id.*at Page ID# 10127). The court waived the imposition of a fine for ACM but imposed a sentence of supervised probation of five years to run concurrently (R. 508 at Page ID# 10143).

## SUMMARY OF THE ARGUMENT

Dr. Chaney and ACM argue that the search warrants for Dr. Chaney's residence and ACM did not describe the "Items to be Seized" with sufficient particularity and did not meet the requirements of the Fourth Amendment. Moreover, the warrants were so facially invalid that the *Leon* good faith exception is inapplicable.

Further, after the trial concluded, counsel for ACM and Dr. Chaney was contacted concerning juror misconduct. This was immediately brought to the attention of the trial court and the attorneys subsequently learned that the court had been made aware of jury misconduct as early as five days into the trial. Dr. Chaney and ACM argue that this misconduct warrants a new trial.

Also, Dr. Chaney and ACM challenge the sufficiency of the evidence on several of the counts and argue that their sentence was procedurally unreasonable based on the court's rejection of their non-frivolous argument concerning drug quantity and their pertaining to the loss amount. Appellants request that their convictions be vacated and their case be remanded for a new trial.

# ARGUMENT

## I.   The District Court Erred in Denying Dr. Chaney's and ACM's Motion to Suppress

### A. Standard of Review

This Court asks in suppression cases "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1992)(citation omitted). "[R]eview of an affidavit and search warrant should rely on a totality of the circumstances determination, rather than a line-by-line scrutiny." *United States v. Greene,* 250 F.3d 471, 479 (6th Cir. 2001)(internal quotation marks omitted).

In reviewing the denial of a motion to suppress where no evidentiary hearing was held, this Court reviews de novo the district court's legal conclusion that the affidavit provided probable cause. *United States v. Brown*, 732 F.3d 569, 572 (6th Cir 2013). The question of whether the district court correctly applied the good-faith exception of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), is a conclusion of law which this Court reviews de novo. *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). The Court must "look only to the four corners of the affidavit" to determine whether the search was supported by probable cause.

*United States v. Brooks,* 594 F.3d 488, 492 (6th Cir. 2010)(citing *United States v. Pinson*, 321 F.3d 558, 565)(6th Cir. 2003)).

### B. The Affidavit did not satisfy the particularity requirement

"The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.' U.S. Const. amend. IV." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quotations and citations omitted). The particularity requirement addresses two separate concerns. "[O]ne is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take; and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011). When the warrant is found to be overbroad, only the evidence seized pursuant to that overbroad portion is suppressed. *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011).

36

In this case, an "Items to Be Seized" was attached to all three search warrants. The item specifically challenged here is paragraph 13 that provided seizure of "[p]atient files for patients. Patient lists. Appointment books, patient profiles, receipt books, ledgers of activity, notes regarding patient information, directions to pharmacies and other related documents as it pertains to patients." Though the broadness of this paragraph may be acceptable if the place to be searched is "permeated with fraud," ACM was most certainly not permeated with fraud, and the evidence seized beyond the scope of Counts 2-62 must be suppressed.

In his recommended disposition, the magistrate found that ACM was not permeated with fraud (R.125, Page ID# 1266), and also deemed it "a close call whether Attachment B set forth the items to be seized with sufficient particularity 'to cabin the scope of the search to those areas and items for which there exist[ed] probable cause that a crime ha[d] been committed.' *Richards*, 659 F.3d at 537."(R.125 at Page ID# 1266-1267). He found that the "list of items to be seized was very broad, but potentially limited by the phrase: 'The items to be seized are evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846 and 856, as well as Title 18 United States Code, Section 1956(h)." (R. 125, Recommended Disposition, Page ID# 1266). However, he did not find the list too broad on its face. (*Id.* at Page ID# 1267).

37

Dr. Chaney and ACM respectfully disagree with the magistrate and ask this Court to suppress the evidence that was seized in relation to the particularity violation. Further, Dr. Chaney and ACM argue that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984) cannot apply to a warrant that is facially deficient for lack of particularity.

## II.   Juror Misconduct Warrants a New Trial

### A. <u>Standard of Review</u>

A district court can grant a new trial if "the interest of justice so requires." Fed.R.Crim.P. 33(a). To succeed on a Rule 33 motion, the movant must establish the following elements: "(1) the new evidence was discovered after trial; (2) the evidence could not have been found discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Jones,* 399 F.3d 640, 648 (6th Cir. 2005)(quoting *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir. 1986).

### B. <u>Legal Analysis</u>

Concerning Juror #116, the question for this Court is whether the trial court erred by failing to make a sufficient inquiry into the initial concerns raised mid-trial by this juror. If so, the next question is: what is the remedy? The Third Circuit in *United States v. Resko,* 3 F.3d 684, 686 (3rd Cir. 1993) addressed this question.

In that case, the court learned on the seventh day of a nine-day trial that jurors were discussing the case. The court notified the parties and a two-part questionnaire was given to the jury to determine whether the discussions led them to form an opinion as to guilt or innocence. All jurors admitted to a discussion but denied forming an opinion. The defendants requested individualized voir dire, when the request was denied the defendants asked for a mistrial. *Id*. at 687-688. The Third Circuit vacated the judgment and remanded for a new trial because of the court's failure to investigate further. The circuit court concluded that the trial court could not have made a reasoned determination that no prejudice was suffered due to the juror's premature discussions. Further, by failing to conduct an inquiry, the circuit court was precluded from reviewing the record to determine whether prejudice existed.

"We simply have no way to know the nature of the jurors' discussions and whether these discussions in fact resulted in prejudice to the defendants. We appreciate the discretion that is generally afforded the district court in these situations and its superior ability to assess the jury's demeanor. However, the absence of information and the consequent inability of the district court meaningfully to assess the nature and extent of the jurors' premature discussions in order to ascertain whether there has been any prejudice to the defendants creates a highly problematic situation." *Id.* at 690. "The government asserts that the jurors

were only discussing the facts of the case and not the guilt or innocence of the defendants. Yet the very crux of the problem here is that neither we nor the district court know anything about the nature of the jurors' discussions." *Id.* at 691.

Here, the district court's failure to conduct a thorough inquiry places similar challenges upon Dr. Chaney and ACM.  Juror #116 had expressed her worries about a fair trial because two jurors were talking about "Dr. Chaney's house and everything (R. 291, Sealed Transcript, Page 6)."  She confronted them and reported the incident to the jury administrator (R. 291, Sealed Transcript, Page 4) who in turn notified the court (R.371, Order, Page ID#5925-5926).  This was not brought to the attention of Appellants.  Appellants did not learn of this until after the trial had concluded.  Juror #116 testified that even after she confronted the jurors, they continued to discuss the case. (R. 291, Sealed Transcript, Page 6) When she approached the jury administrator, the administrator refused to report it to the judge.(*Id.*)  She also testified about other instances where the jurors discussed aspects of the trial that she found inappropriate (*Id.* at Page 7-8).

When the court was notified that an alternate juror expressed "some frustration with the process" and "concerns about how serious[ly] the jury was taking their duty (R. 371, Order, Page ID# 5929), Dr. Chaney and ACM argue that the district court should have notified them of the complaint so they could request further inquiry, request a curative instruction, and/or seek a mistrial.  Further, the

district court should have (1) ascertained whether misconduct occurred and specify the reasons for this determination, (2) ascertained whether the misconduct was or was not prejudicial and specify the reasons for this finding, and (3) determined whether there were grounds or not for a new trial and provide the reasons for this determination. *Resko*, at 691 (citing *United States v. Richman*, 600 F.2d 286, 295 (1st Cir. 1979).

In its opinion concerning the misconduct (R.371, Opinion, Page ID# 5932), the district court referenced three cases in "sister circuits" but all three cases involved juror notes to the court. *See United States v. Stafford*, 136 F.3d 1109 (7th Cir. 1998); *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011); and *United States v. Abrams*, 137 F.3d 704 (2nd Cir. 1998). The court wrote, "[t]he information available to this Court was substantially more ambiguous than that provided in *Stafford, Bradley,* or *Abrams*"(R. 371 at Page ID# 5933) and referred to Juror #116's concerns about how seriously the jury was taking their duty (*Id.* at Page ID# 5929) as a third-hand report and of a nebulous nature. Dr. Chaney and ACM argue however, that this would not have been third-handed or of a nebulous nature had the district court conducted some type of inquiry. By combining the complaint raised by Juror #34 with this misconduct raised by Juror #116, it appears a systemic problem existed within the jury that was not remedied by the trial court. This directly affected Dr. Chaney's and ACM's Sixth Amendment right to a fair

41

trial, as well as their due process right to place the burden on the government to prove its case beyond a reasonable doubt. *Resko,* at 690-691 (citing *In re Winship,* 397 U.S. 358, 364 (1970). The Sixth Circuit held in *United States v. Shackleford,* 777 F.2d 1141, 1145 (6th Cir. 1985) that when a trial judge learns of possible juror misconduct, "he has a duty to investigate and to determine whether there may have been a violation of the Sixth Amendment." The district court failed to investigate the possible juror misconduct and now two years have passed since the jury rendered a verdict against Appellants. "Given the passage of time, a juror may no longer recall what his or her state of mind was before the conclusion of trial." *Resko* at 695. Therefore Dr. Chaney and ACM request, like the Third Circuit in *Resko,* that this Court vacate the judgment and remand for a new trial because the interest of justice so requires.

### III.   The Evidence Presented at Trial was Insufficient to Sustain Chaney's Convictions

#### A. <u>Standard of Review</u>

This court "will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015). A criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v.*

*Martinez*, 588 F.3d 301, 314 (6th Cir. 2009)(citation omitted).   This Court will draw "all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart,* 729 F.3d 517, 526 (6th Cir. 2013)(internal quotations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Taylor*, 800 F.3d 701, 700(6th Cir. 2015)(quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir., 2007)). "[A] defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Callahan,* 801 F.3d 606, 619 (6th Cir. 2015)(quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)).

While the United States may prove its case by circumstantial evidence alone, it must still carry its burden of proof on all elements beyond a reasonable doubt and may fail to do so where the evidence is both circumstantial and limited. *United States v. Parkes*, 668 F.3d 295, 300-02 (6th Cir. 2012).

These issues were preserved by Dr. Chaney and ACM for appellate review in their Motion for Judgment of Acquittal. (R. 298-1, Memorandum, Page ID# 3265-3277).

## B. <u>The Government Must Provide Expert Testimony</u>

Though "there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the usual course of professional practice," *United States v. Word*, 806 F.2d 658, 663 (6th Cir. 1986), this is not that type of case. Here, expert testimony was needed to assist the jury with the comprehension of whether Dr. Chaney prescribed medications without a legitimate medical purpose and outside the course of professional practice. *United States v. Johnson*, 71 F.3d 539, 542 (6th Cir. 1995).

Dr. Chaney and ACM argued in their Motion for Judgment of Acquittal (R.298-1, Memorandum, Page ID# 656), and continue to argue, that *United States v. Binder*, 26 F.Supp.3d 656 (E.D. Mich 2014) applies. In *Binder*, a physician was charged with unlawful distribution of controlled substances but evidence supported a good-faith defense. Similar to the facts here, this good-faith evidence in *Binder* included the thoroughness of his examinations, the existence of legitimate illnesses, and the true need for pain medication. The court in Binder provided: "[i]n cases lacking such indicia of the absence of a legitimate medical purpose that even a lay juror could recognize, a directed verdict of acquittal is proper if expert evidence is not presented, because the jury has no reasonable basis on which to conclude beyond a reasonable doubt that the defendant acted outside

the course of professional practice." *Id.* at 662 (quoting *United States v. Shultice,*
No. 98–54, 2000 WL 34030842, at *5 (N.D.Iowa Apr. 4, 2000)).

Dr. Chaney should not have been convicted of Counts 1-62 unless the
Government proved beyond a reasonable doubt that he knowingly and
intentionally issued prescriptions outside the usual course of his professional
practice and for no legitimate medical purpose. 21 CFR § 1306.04 ("A prescription
for a controlled substance to be effective must be issued for a legitimate medical
purpose by an individual practitioner acting in the usual course of his professional
practice").

Here, the government failed to prove that the prescriptions listed in Counts 2
through 62 were issued without a legitimate medical purpose.  Their expert, Dr.
Stephen Loyd, a hospitalist and internal medicine doctor (R. 415, Transcript, Page
ID# 7597), only found two prescriptions, that were not pre-signed, to be issued
without a legitimate medical purpose.  Strangely, he did not examine any of the
files listed in Counts 2 through 62.

Out of those reviewed files, he  found that the patients were treated for a
variety of medical issues including, but not limited to heart disease and diabetes
(*Id.* at Page ID #7613-7614), spondylosis (*Id.* at Page ID# 7631), lupus and
rheumatoid arthritis (*Id.* at Page ID# 7644), myofascial pain syndrome (*Id.* at Page
ID# 7645), ventral hernia repair  (*Id.* at Page ID# 7655), post-traumatic stress

disorder (*Id.* at Page ID# 7659), risk of suicide (*Id.* at Page ID# 7669-7671), significant lumbar disease (*Id.* at Page ID# 7692), and brain cancer (*Id.* at Page ID# 7700). He found in some instances that Dr. Chaney rendered good care to his patients (*Id.* at Page ID#7693). He even commended Dr. Chaney for using "a very neat tool" that is a P3 interpretive report that helps "assess the contribution of psychiatric disorders in the treatment of chronic pain." (*Id.* at Page ID# 7658-7659).

Expert testimony was needed for the jury to properly assess whether prescriptions in the low quantities prescribed by Dr. Chaney could be for a legitimate medical purpose and within the usual course of professional practice for a pain management professional. Because no such expert testimony was presented, Dr. Chaney's motion for a judgment of acquittal should have been sustained.

## C. Count 1 (Conspiracy to Distribute and Dispense)

To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proven beyond a reasonable doubt that two or more people conspired to commit the crime of knowingly and intentionally distributing and/or dispensing Schedule II and III controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. Also, it must be proven that the Appellants knowingly and voluntarily joined the conspiracy.

46

Here, Dr. Chaney and ACM argue that the government has failed to prove beyond a reasonable doubt that an agreement existed to dispense and/or distribute Schedule II or III controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, or that they agreed to join this conspiracy.   Because Dr. Chaney and ACM were also charged in Count 1 with conspiracy to distribute and dispense controlled substances, this expert witness was needed for all prescriptions – not just those specified in Counts 2-62.  This did not occur and therefore, no rational trier of fact can find the essential elements required for a conspiracy conviction beyond a reasonable doubt. When the jury's verdict as to Counts 1 through 62 is set aside, then the convictions related to maintaining a drug-involved premises (Counts 63 and 64) and conspiracy to commit money laundering (Count 65) also fail.  (R. 267, Order, Page ID# 2795, footnote 2).

### D. <u>Healthcare Fraud</u>

To sustain a conviction for health care fraud under 18 U.S.C. § 1347(a), the government must prove that Dr. Chaney and ACM "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Raithatha*, 385 F.3d 1013, 1021 (6th Cir. 2004), Judgment vacated

on other grounds, 543 U.S. 1136 (2005). Therefore, the government "must prove the defendant's 'specific intent to deceive or defraud.'" *Id.*

It is the contention of Dr. Chaney and ACM that the government has failed to show specific intent to deceive or defraud as it pertains to the individual health care fraud counts.

### a.  Counts 112-122 – Unnecessary Drug Screens

Dr. Stephen Loyd testified for the government that he does not have a problem with ACM's drug screening regimen. He noted his excitement when people are drug-screened in rural Appalachia (R. 415, Trial Transcript, Page ID# 7732) but also said random drug screens would be preferable.    Dr. John Morgan testified that if the patients are using opiates to manage their chronic pain, "you run the risk that the opiates can cause; for example, depression, addiction, so you have to watch the patient closer, do urine drug tests." (R. 419, Trial Testimony, Page ID# 8869). The government argues that the generalized testimony of Dr. Parker, Dr. Berman, and Ms. Guice is sufficient to support a conviction. However, *United States v. Martinez*, held that "if expert testimony is offered in lieu of patient testimony, the expert testimony should be sufficiently specific to the patient, date, and services in the indictment." *United States v. Martinez*, 588 F.3d 301, 315 (6th Cir. 2009). Without further evidence, the government has not carried its burden of proof beyond a reasonable doubt.

### b. <u>Counts 190-220 – Concealing Material Fact</u>

"To establish guilt under 18 U.S.C. § 1035 for making false statements relating to health care matters, the government must prove that the defendant knowingly and willfully made false statements or representations in connection with the delivery of or payment for health care benefits, items, or services and in a matter involving a health care benefit program." *United States v. Hunt*, 521 F.3d 636, 647-648 (6th Cir. 2008).

Concerning Counts 190-220, which charged Dr. Chaney and ACM with concealing a material fact by pre-signing prescriptions, Appellants argue the evidence was remarkably insufficient upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. The evidence presented was scant. The question was not whether the prescriptions were pre-signed but whether Dr. Chaney and ACM intentionally hid that they were pre-signed.

To find Dr. Chaney and ACM guilty of violating 18 U.S.C. § 1035 and 18 U.S.C § 2, the government must have proven beyond a reasonable doubt that they, aided and abetted by others, falsified, concealed, or covered up by any trick, scheme, or device a material fact - in connection with the delivery of or payment for health care benefits, items, or services involving a health care benefit program – and they did so knowingly or willfully.  The government's proof has fallen short from establishing any of these elements beyond a reasonable doubt.

49

The government will likely argue that because Greg Hoskins and Roy Combs pled to this violation and knew it was improper, the jury can infer that Dr. Chaney and ACM knew.  They may state that Scott King, a pharmacist, testified at trial he would not have filled the prescriptions had he known they were pre-signed or that Dr. Anne Youlio, an employee with Medicare testified that had Medicare known the prescriptions were pre-signed the claims would not have been paid. (*Id.*). However, neither King or Youlio addressed at trial whether Appellants knowingly or willfully falsified, concealed or covered up by an trick, scheme or device a material fact in an effort to get paid by a health care program.

The evidence presented by the government is insufficient upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt concerning Counts 190-220

## Count 234 - Nerve Conduction Study

Dr. Chaney was convicted of violating 18 U.S.C. § 1347(a) in Count 234 as it pertained to nerve conduction studies.  There appears to be confusion concerning whether a nerve conduction study involves a neural scan machine or an electromyogram (EMG).  ACM had a neural scan machine.  The use of this machine was simple and did not require extensive training.  In fact, Roy Combs testified that he received a certificate from the inventor in a matter of days.  He said the neural scan machine tests patients for neuropathy in the lower back and

neck. He learned operation of the scan by the inventor of the machine. (R. 321, Trial Transcript, Page ID# 4663). He testified "I would take a machine that had eight D batteries in it that connected to a sponge that I had to get wet, and then I'd connect it to a probe with a Q-tip on the end of it. And I would lay the patient on the sponge, whether it'd be the neck or lower back. And then I would use the Q-tip and dip it in water, and hold it to different points on the body. The wetness of the Q-tip and the wetness of the sponge would generate a current. And as I turned the dial, I would ask the patient to let me know when they felt a sensation. And when they told me they felt a sensation, whatever I stopped the dial on is the score that I would write down." *(Id.* at Page ID# 4729).

Kathleen Caudill, a licensed nurse practitioner, said the machine did not involve the use of needles (R. 400, Trial Transcript, Page ID# 6450) and was non-invasive *(Id.* at Page ID# 6451). She said it involved a "spongy" that you wet and put under a patient. *(Id)* "You have a little probe that has a little Q-tip"…[and] you'll touch certain parts, and you'll turn a little dial, and you'll check to see when they actually feel it, or whether they don't feel it at all. *(Id.)*

The government's key witness concerning nerve conduction studies was Dr. Earl Berman. He testified that Medicare will not pay for "nerve conduction studies that are not administered by properly qualified persons." (R. 354, Trial Transcript, Page ID# 5689) He stated that he was not familiar with neural scan machines (R.

354, Trial Transcript, Page ID# 5698), but he testified nerve conduction studies is a "very precise test where a nerve is stimulated by a noxious stimulus, oftentimes which is a needle, oftentimes electrical shock, and then the speed by which that impulse is taken to a reference point. (R. 354, Trial Transcript, 5697).

### E. These Errors Amounted to Cumulative Error.

Even if this Court concludes that the above errors were harmless, Dr. Chaney asserts that the accumulation of the errors at his trial rendered his trial fundamentally unfair. "In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair" *United States v.Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004)(citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)). "This is so because 'errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone…may cumulatively produce a trial setting that is fundamentally unfair.'" *Id.* (citing *United States v. Hernandez,* 227 F.3d 686, 697 (6th Cir. 2000)).

In this case the errors included the government's failure to use expert testimony to show the prescriptions issued were for a legitimate medical purpose as it pertained to Counts 1-62, the insufficient evidence presented concerning the neural scan machine, and the insufficient evidence presented concerning Counts

112-122 and 190-220. When compounded, these errors rendered Dr. Chaney's trial fundamentally unfair, and he should receive a new trial as a result.

## IV.    The Sentence Imposed Was Procedurally Unreasonable

### A. <u>Standard of Review</u>

A sentence may be procedurally unreasonable "where the district court fails to properly calculate the Guideline range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, or fails to adequately explain the chosen sentence. *United States v. Jeter,* 721 F.3d 746, 756 (6th Cir. 2013). This Court reviews sentences under an abuse-of-discretion standard. *Gall v. United States,* 552 U.S. 38, 51 (2007). The abuse-of discretion standard should be applied to Appellants' claim of procedural reasonableness error because the district court failed to ask a proper *Bostic* question. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008*); See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).

### B. <u>The District Court Erred By Failing to Address Appellants' Non-Frivolous Argument for a Lower Drug Calculation</u>

Here, Dr. Chaney's and ACM's claim of procedural reasonableness error is based on the district court's failure to consider their nonfrivolous argument raised at sentencing. This is a general challenge to the procedural reasonableness of the sentence that should be reviewed for abuse of discretion. This nonfrivolous argument for a specific drug quantity calculation was raised several times in the

underlying district court case, and Appellants maintain that the drug quantity

attributable to the Defendants for sentencing purposes is 80, 535 milligrams, or a

marijuana equivalency of 539.6 kilograms pursuant to USSG § 2D1.1(c)(7).    This

calculation is directly derived from the pre-signed prescription counts (Counts 2-

62).  Rather than address this non-frivolous argument, the Court stated:

> "I do think that where the number has landed modestly overstates the fraud
> to legitimate service ratio. And so it falls -- it's almost 80 percent of the
> amount here of what was -- what was paid. And I realize that when we're
> talking about what was billed, we're talking about 19 percent. And I
> understand the guidelines could focus on what is billed. But I think it
> appropriately in this case is focusing on that $21 million. But I think instead
> of 78 percent, that number should be 60. I actually think there was more
> fraudulent billing going on than legitimate billing in this particular case. I
> think that's supported by the evidence in this case, but I think the drug
> quantity, and I think the loss amount should be adjusted to reflect the fact
> that there was this very strong mix." (R. 508, Sentencing Transcript, Page
> ID# 10067-10068).

A request for clarification was made by Appellants' attorney:

> DEFENSE COUNSEL: "Your Honor, if I may get clarification, which I
> don't want to interrupt the Court; it'd be rude, but regarding the drug
> calculation, you're sustaining the arguments and objection on the drug
> amount and also the loss amount, but what are your percentages for the drug
> quantity and loss amount?
>
> THE COURT: Sixty (60) percent.
>
> DEFENSE COUNSEL: Okay. So both of them are 60 percent.
>
> THE COURT: Uh-huh (affirmatively).
>
> DEFENSE COUNSEL: That you found 60 percent were fraudulent and 40
> percent were not?

54

THE COURT: Correct. (*Id. at Page ID# 10068-10069*).

In *Rita v. United States*, 551 U.S. 338, 357 (2007), the United States Supreme Court held that when a nonfrivolous argument is presented for a particular sentence, a judge will normally provide an explanation of why the argument is rejected. "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Id.*

Here, the district judge provided a very brief explanation as to why he was finding 60% of ACM's prescriptions fraudulent . "Rita exhorts the sentencing judge to satisfy the procedural requirement of 'set[ting] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *United States v. Liou,* 491 F.3d 334, 338 (6th Cir. 2007)(quoting *United States v. Rita*, 551 U.S. at 356). This did not occur in Dr. Chaney's and ACM's sentencing.

### C. The District Court Clearly Erred in Calculating the Loss Amount

When reviewing a district court's application of U.S.S.G. § 2B1.1, this Court reviews the sentencing court's factual findings as to the amount of loss for clear error but the method used to calculate loss is reviewed de novo. *United States v. Wendlandt*, 714 F.3d 388, 393 (6th Cir. 2013). Due to the difficulty in calculating loss in a fraud case, the district court need only make a "reasonable estimate"

supported by a preponderance of the evidence. *Id.*    An error with respect to the loss calculation is a procedural infirmity that typically requires remand. *Id.*

Following a two-day evidentiary hearing and briefing period, the district court held that 40% of ACM's billing practice was legitimate and the remaining 60% was fraudulent,  bringing the loss calculation (and joint and several restitution amount) to approximately $12,703,796.  Dr. Chaney and ACM argue that this percentage and loss amount fails to consider the testimony presented by Dr. Russell at the sentencing evidentiary hearing  (R. 460, Evidentiary Hearing Transcript Day 2, Page ID# 9609-9650). Dr. Russell had reviewed 89 patient files and determined that the issuance of the controlled substance prescriptions, the procedures ordered, and claims for services were supported by a legitimate medical need and were medically necessary and appropriate for the patient.  (*Id.* at Page ID# 9636-9637).   He was unable to find any inappropriate billings and indicated "most of the procedures clearly appear to be for a legitimate medical purpose and within the usual course of professional medical practice."  (R. 464, Memorandum, Page ID# 9699-9700).  Dr. Chaney's testimony during this evidentiary hearing supported Dr. Russell's findings in that he was able to provide medical histories for a large number of patients reviewed by Dr. Russell.  Dr. Chaney and ACM argue that the appropriate loss amount, as evidenced in the record , is between $15,000.00 and $40,000.00 (*Id.* at Page ID# 10054).

### V. Other Arguments

Pursuant to Federal Rule of Appellate Procedure 28(i), Dr. Chaney and ACM join in the brief of co-defendant/appellant Lesa Chaney to  the extent her brief bears upon issues pertaining to them,  and adopts and incorporates by reference those arguments and the authority cited in support.

### CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of conviction below and remand either for entry of a judgment of acquittal or for a new trial.

Respectfully Submitted,
/s/Christy J. Love
Christy J. Love
Attorney for Appellant
LOVE LAW FIRM, PLLC
333 North Main St., Ste. B.
Post Office Box 3105
London, Kentucky 40743
TELEPHONE: (606) 877-5683
FAX: (606) 729-0854
info@christylovelaw.com

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B).  The relevant portions of the foregoing brief contain 11420 words in Times New Roman (14-point) type. The word processing software used was Microsoft Office 2016.

/s/Christy J. Love
Christy J. Love Law Firm
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2018, I served the foregoing Corrected Brief of Appellant James Alvin Chaney to all counsel of record by filing through the Sixth Circuit's CM/ECF system.

/s/Christy J. Love
Christy J. Love
Attorney for Appellants

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with 6 Cir. Rul. 30, Appellant hereby designates as "Relevant District Court Documents" the following documents filed in the district court and available via that court's electronic CM/ECF system:

| District Court Docket # | Description of Document | Page ID# |
|---|---|---|
| R. 1 | Indictment | Page ID# 1-13 |
| R. 71 | Motion to Suppress, | Page ID# 611-652 |
| R. 71-1 | Memorandum | Page ID# 614-651 |
| R. 71-2 | Application and Affidavit for A Search Warrant (ACM) | Page ID#700-744 |
| R.71-4 | Application and Affidavit for a Search Warrant (residence) | Page ID# 745-789 |
| R. 85-1 | Warrant (ACM) | Page ID# 944-945 |
| R. 85-2 | Warrant (Residence) | Page ID# 990-991 |
| R.89 | Response | Page ID# 900-942 |
| R. 125 | Recommended Disposition | Page ID# 1229-1275 |
| R. 134 | Objection to Recommended Disposition | Page ID# 1330-1361 |
| R.134-3 | Seizure Inventory | Page ID# 1405-1407 |
| R.136 | Superseding Indictment | Page ID# 1569-1611 |
| R. 159 | Order | Page ID #1737-1760 |

59

R. 190                 Second Superseding Indictment        Page ID# 1877-1920

R. 245                 Trial Minutes (02/29/2016)           Page ID# 2703-2704

R. 246                 Trial Minutes (03/01/2016)           Page ID# 2705-2706

R. 247                 Trial Minutes (03/02/2016)           Page ID# 2707-2708

R. 248                 Trial Minutes (03/03/2016)           Page ID# 2709-2710

R. 249                 Trial Minutes (03/07/2016)           Page ID# 2711-2712

R. 250                 Trial Minutes (03/08/2016)           Page ID# 2713-2714

R.251                  Trial Minutes (03/09/2016)           Page ID# 2715-2716

R. 254                 Trial Minutes (03/14/2016)           Page ID# 2760-2761

R. 255                 Trial Minutes (03/15/2016)           Page ID# 2762-2763

R. 256                 Trial Minutes (03/16/2016)           Page ID# 2764-2765

R. 257                 Trial Minutes (03/21/2016)           Page ID# 2772-2773

R. 258                 Trial Minutes (03/22/2016)           Page ID# 2768-2769

R. 259                 Trial Minutes (03/23/2016)           Page ID# 2770-2771

R. 261                 Renewed Motion to Suppress           Page ID# 2776-2783

R. 262                 Trial Minutes (03/30/2016)           Page ID# 2784-2785

R. 263                 Trial Minutes (03/31/2016)           Page ID# 2786-2787

R. 264                 Trial Minutes (04/05/2016)           Page ID# 2788-2789

R. 265                 Trial Minutes (04/06/2016)           Page ID# 2790-2791

R. 266                 Trial Minutes (04/07/2016)           Page ID# 2792-2793

| | | |
|---|---|---|
| R. 267 | Order | Page ID# 2794-2809 |
| R. 269 | Trial Minutes (04/12/2016) | Page ID# 2814-2815 |
| R. 270 | Trial Minutes (04/13/2016) | Page ID# 2816-2817 |
| R. 271 | Trial Minutes (04/14/2016) | Page ID# 2818-2819 |
| R. 273 | Order | Page ID# 2903-2908 |
| R. 274 | Trial Minutes (04/15/2016) | Page ID# 2909-2910 |
| R. 280 | Trial Minutes (04/18/2016) | Page ID# 2921 |
| R. 281 | Verdict | Page ID# 2954-2984 |
| R. 286 | Exhibit and Witness List | Page ID# 2990-3008 |
| R. 291 | Transcript of Interview of Juror #116 (sealed) | |
| R. 298-1 | Memorandum | Page ID# 3265-3277 |
| R. 299 | Motion for New Trial and (299-1) Supporting Memorandum | Page ID# 3279-3290 |
| R. 308 | Response | Page ID# 3462 |
| R. 318 | Transcript – Dr. James Chaney | Page ID# 3939-4246 |
| R. 319 | Transcript – Dr. James Chaney | Page ID# 4247-4547 |
| R. 321 | Transcript – Roy Combs V.1 | Page ID# 4638-4797 |
| R.323 | Transcript – Roy Combs V.2 | Page ID# 4958-5097 |
| R. 335 | Transcript – Kathleen Caudill | Page ID# 5337-5365 |
| R.353-1 | Affidavit | Page ID# 5654-5656 |
| R. 357 | Reply | Page ID# 5726 |

| R.358 | Order | Page ID# 5729 |
| R. 365 | Order | Page ID# 5884-5885 |
| R. 371 | Opinion and Order | Page ID# 5908-5958 |
| R. 396 | Transcript – Chris Johnson | Page ID# 6283-6287 |
| R. 400 | Transcript – Kathleen Caudill | Page ID# 6443-6452 |
| R. 415 | Transcript – Dr. Stephen Loyd | Page ID# 7597-7838 |
| R.416 | Trial Transcript – Rule 29 Motion | Page ID# 8090-8156 |
| R.459 | Evidentiary Hearing Transcript | Page ID# 9443-9571 |
| R. 460 | Evidentiary Hearing Transcript | Page ID# 9572-9654 |
| R. 464 | Memorandum | Page ID# 9686-9702 |
| R. 471 | Objections to PSR | Page ID# 9770-9775 |
| R. 472 | Sentencing Memorandum | Page ID# 9778 |
| R.489 | Judgment | Page ID# 9881-9889 |
| R. 497 | Judgment | Page ID# 9905-10158 |
| R. 498 | Notice of Appeal | Page ID# 9910 |
| R.499 | Notice of Appeal | Page ID# 9911 |
| R.510 | Amended Judgment | Page ID# 10154-10158 |
| R.516 | Notice of Appeal | Page ID# 10258 |
| R.519 | Amended Judgment | Page ID# 10265-10273 |
| R. 520 | Notice of Appeal | Page ID# 10274 |

| Sixth Circuit Docket Number | Description of Document | Number of Pages |
|---|---|---|
| App.R.17 (17-6351) | James A. Chaney PSR | 140 |
| App.R.8 (17-6315) | Ace Clinique of Medicine, PLLC | 168 |