# EXHIBIT 16

1

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF KENTUCKY
             SOUTHERN DIVISION AT LONDON

UNITED STATES OF AMERICA,

     PLAINTIFF,
                                Criminal No. 6:14-CR-37
VS.                             At London, Kentucky
                                September 28, 2017
                                11:02 a.m.

JAMES ALVIN CHANEY, M.D.,
a/k/a ACE CHANEY, LESA L. CHANEY,
and ACE CLINIQUE OF MEDICINE, LLC,

     DEFENDANTS.


    TRANSCRIPT OF SENTENCING HEARING PROCEEDINGS
 BEFORE U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE


APPEARANCES:

For the Plaintiff:      Hon. Paul C. McCaffrey
                        Hon. Roger West
                        Assistant United States Attorneys
                        260 West Vine Street
                        Suite 300
                        Lexington, Kentucky  40507-1612
                        (859) 685-4895

For the Defendant       Hon. Christy Love
James A. Chaney         Love Law Firm, PLLC
and Ace Clinique        333 North Main Street, Suite B
of Medicine, LLC:       London, Kentucky  40744
                        (606) 312-5683

For the Defendant       Hon. Robert L. Abell
Lesa L. Chaney:         120 North Upper Street
                        P. O. Box 983
                        Lexington, Kentucky 40588-0983
                        (859) 254-7076


        Proceedings recorded by mechanical stenography,
     transcript produced by computer.
```

**SANDRA L. WILDER, RMR, CRR, OFFICIAL COURT REPORTER**
310 South Main Street, Suite 317, London, Kentucky 40745
(859) 516-4114

Case: 6:24-cv-00007-REW-HAI  Doc #: 16-16  Filed: 01/23/24  Page: 3 of 6 - Page ID#: 1105
Case: 6:14-cr-00037-GFVT-HAI  Doc #: 508  Filed: 10/27/17  Page: 2 of 112 - Page ID#: 10042

2

```
 1
 2                         INDEX
 3    Colloquy                                          3-40
 4                   Government's Proof
 5    Direct Examination of THAD LAMBDIN
          By:  Mr. West                                40-42
 6
      Direct Examination of JOHN WOOLLY
 7        By:  Mr. West                                43-45
 8    Cross-examination
          By:  Mr. Abell                               45-47
 9
      Colloquy                                         47-112
10
      Reporter's Certificate                           112
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case: 6:24-cv-00007-REW-HAI  Doc #: 16-16  Filed: 01/23/24  Page: 4 of 6 - Page ID#: 1106
Case: 6:14-cr-00037-GFVT-HAI  Doc #: 508  Filed: 10/27/17  Page: 26 of 112 - Page ID#: 10066

26

1   we're talking about the math in terms of pill counts,
2   we're talking about loss amounts in very, very precise
3   dollar amounts.  The amount billed here we know with
4   precision is $87,971,719.92.  This feels really,
5   really precise.  But the truth is, as the judge
6   responsible for making this determination, I'm drawing
7   a line on a continuum.  And on one end of this
8   continuum is a situation in which there are no
9   patients, there is no healthcare provided and someone
10  submitting absolutely false reimbursement forms to
11  Medicare.  This wouldn't be able to happen, I
12  understand, and they submit them and they get
13  reimbursed.  Nobody's going to have any debate about
14  whether or not that's fraud, right?  There were never
15  any patients and there was never any service.
16          On the other end of this continuum is a
17  situation in which every single thing that was billed
18  was a legitimately medically-necessary service.
19          The jury has found in this case that at some
20  point, that line got crossed at Ace Clinique of
21  Medicine.
22          I recognize that there were real patients.
23  And I recognize that many of them were profoundly
24  sick.  And I recognize that much of the care that was
25  received by those patients was needed.  But the

Case: 6:24-cv-00007-REW-HAI   Doc #: 16-16   Filed: 01/23/24   Page: 5 of 6 - Page ID#: 1107
Case: 6:14-cr-00037-GFVT-HAI   Doc #: 508   Filed: 10/27/17   Page: 27 of 112 - Page ID#: 10067

27

1  finding of the jury is that the way this clinic was
2  designed, and the way the -- it was -- the medicine
3  was practiced, is that that line got crossed, and it
4  got crossed so far beyond what the expectation is in
5  our society that it involved criminal conduct.
6        And so I'm drawing -- I'm having to determine
7  what the line is.  To decide that there is an actual
8  loss amount here, or to decide that the drug
9  quantities here fall in a particular category is not
10 the same thing as saying that it was at this end of
11 the continuum where it's all fraud.
12       And so I've listened really carefully to the
13 testimony that was provided at the hearing.  I've
14 looked at the briefing.  I've thought a lot about this
15 and at the fundamental level.
16       I do think that where the number has landed
17 modestly overstates the fraud to legitimate service
18 ratio.  And so it falls -- it's almost 80 percent of
19 the amount here of what was -- what was paid.  And I
20 realize that when we're talking about what was billed,
21 we're talking about 19 percent.  And I understand the
22 guidelines could focus on what is billed.  But I think
23 it appropriately in this case is focusing on that $21
24 million.  But I think instead of 78 percent, that
25 number should be 60.  I actually think there was more

Case: 6:24-cv-00007-REW-HAI  Doc #: 16-16  Filed: 01/23/24  Page: 6 of 6 - Page ID#: 1108
Case: 6:14-cr-00037-GFVT-HAI  Doc #: 508  Filed: 10/27/17  Page: 28 of 112 - Page ID#: 10068

28

fraudulent billing going on than legitimate billing in this particular case. I think that's supported by the evidence in this case, but I think the drug quantity, and I think the loss amount should be adjusted to reflect the fact that there was this very strong mix. And in times, if you -- if you think back on the evidence, you know, what would happen is the first visit might have been okay, but then it's the later visits that become duplicative. Or it's the first drug test is okay, but then it's the fact that it's done time and time and time and time again.

And so we'll -- we're going to -- we'll take a break to make sure we've got the calculations correct, but consistent with my ruling here at the bench, I'll sustain the objection as it relates to the drug quantity; that's objection number 2 as it relates to Dr. Chaney, and objection number 3 as it relates to Dr. Chaney, and that addresses the loss amount as it -- as we have discussed here.

I want to move now to objection number 4, which is a specific objection to kind of --

MS. LOVE: Your Honor, if I may get clarification, which I don't want to interrupt the Court; it'd be rude, but regarding the drug calculation, you're sustaining the arguments and