**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON**

**JAMES A. CHANEY**                                                                    **PLAINTIFF**

|   |   |
|---|---|
| **V.** | **Civil Action No.: 6:24–cv–00007**<br>**Honorable Robert E. Wier**<br>**(Formerly Civil Action No.: 23-CI-00442**<br>**in the Circuit Court of Perry County, KY)** |

**CVS PHARMACY, INC., et al.**                                               **DEFENDANTS**

---

**MEMORANDUM OF LAW IN SUPPORT OF APPALACHIAN REGIONAL
HEALTHCARE DEFENDANTS' MOTION TO DISMISS**

Defendants, Appalachian Regional Healthcare, Inc. ("ARH") and d/b/a ARH Regional
Medical Center Pharmacy and ARH Community Pharmacy; Helen Herald; and Hollie Harris a/k/a
Hollie Crady (collectively, "ARH Defendants"), move this Court to dismiss Plaintiff's claims,
stating as follows:

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff James Alvin Chaney ("Ace" or "Chaney") and his wife, Lisa Chaney ("Mrs.
Chaney"), owned and operated a clinic in Hazard, Kentucky called Ace Clinique of Medicine
("Ace Clinique"). The clinic attracted suspicion that it was a "pill mill" – a clinic that distributed
addictive prescription pills without a legitimate medical purpose.[1] The FBI launched an
investigation, and Chaney was charged, convicted by a jury, and sentenced. Nearly eight years
later, *while still serving his sentence*, Chaney brings this civil action against eighty-four
pharmacies, medical facilities, personnel, and individuals, alleging Defendants wrongfully

---

[1] *U.S. v. Chaney*, 921 F.3d 572, 577 (6th Cir. 2019).

attributed opioid prescriptions in Kentucky's All Schedule Prescription Electronic Reporting ("KASPER") database using Chaney's name and identification numbers.[2] Chaney claims the KASPER data was the "primary basis for the investigation against him and his indictment," and the alleged "errors and misattributions" resulted in his conviction.[3] In other words, Chaney is using a civil action to attack his federal criminal conviction and sentence collaterally.

**I.      Chaney is Investigated, Indicted, Convicted by a Jury, and Sentenced to Imprisonment for Running a "Pill Mill."**

According to his Complaint, "The government started paying attention to Ace Clinique and the Chaneys in June 2010. An anonymous caller contacted Chris Johnson ('Investigator Johnson'), an investigator for the Kentucky Cabinet for Health and Family Services and told him that Chaney pre-signed prescriptions for use at Ace Clinique while absent.[4] Based on Investigator Johnson's report and interviews of employees and patients, FBI Special Agent Thad Lambdin ("Special Agent Lambdin") authored affidavits for a search warrant of Ace Clinique. Law enforcement obtained the warrant, seized over 695 boxes of Ace Clinique patient records, and discovered evidence of a pill mill operation.[5] Subsequently, Chaney was indicted on October 2, 2014.[6] One year later, a 256-count Second Superseding Indictment charged Chaney, Mrs. Chaney, and Ace Clinique with violations of federal law in three general categories: Controlled Substances, Money

---

[2] *See* Plaintiff's Complaint at ¶¶ 92, 100–104. Physicians are issued controlled substance identification numbers for KASPER by the United States Drug Enforcement Agency ("DEA Number"), Kentucky Board of Medical Licensure ("KBML Number"), and Center for Medicare and Medicaid Services ("National Provider Identification Number" or "NPI Number").

[3] *Id.* at ¶¶ 123, 118 and ¶¶ 112, 113, 114.

[4] *United States v. James A. Chaney, et al.*, 921 F.3d 572, 578 (6th Cir. 2019).

[5] *Id.* at 577; *see also* 2018 Sixth Circuit Merits Brief of Defendant–Appellant James A. Chaney, at p. 18, attached as **Exhibit 1.**

[6] *See* Indictment, attached as **Exhibit 2.** Ace Clinique, Mrs. Chaney, and Chaney's Physician Assistant, Gregory Hoskins, were also named. Gregory Hoskins subsequently pled guilty.

18650722.3

Laundering, and Fraud.[7] A 23-day jury trial began on February 29, 2016, and concluded two months later. The jury returned a guilty verdict for Chaney on 182 counts.[8] In September 2017, Chaney was sentenced to 180 months imprisonment, three years of supervised release, and $12,703,796 in restitution.

## II.    Chaney Unsuccessfully Challenged His Conviction Seven Times Across Six Years.

*Motions for a New Trial and Acquittal.* Chaney first challenged his conviction in May 2016 with two motions. First, Chaney filed a Motion for a New Trial.[9] Second, Chaney filed a Motion for Judgment of Acquittal, alleging, *inter alia*, evidentiary insufficiency.[10] Chaney challenged each violation of the Controlled Substances Act (Counts 1–62), claiming he "testified as to the legitimate reason for each prescription" and the United States presented "no evidence of a lack of a legitimate medical purpose with respect to [Counts 2–62]."[11] The Eastern District denied

---

[7] *See* Second Superseding Indictment, attached as **Exhibit 3**.

[8] (1) Conspiracy to Distribute Schedule II and III Controlled Substances (Count 1); (2) Distribution of Schedule II Controlled Substances (Counts 2–39); (3) Distribution of Schedule III Controlled Substances (Counts 14–62); (4) Maintaining a Drug-Involved Premises (Counts 63 and 64); (5) Conspiracy to Commit Money Laundering (Count 65); (6) Acquiring and Obtaining Possession of a Controlled Substance by Misrepresentation or Fraud (Counts 66 and 67); (7) Conspiracy to Commit Health Care Fraud (Count 68); (8) Defrauding Health Care Benefit Programs by Misrepresentation (Counts 112–147, 150–163, 165–168, 171–172, 175, 177, 180, 182, 186, 188, 191–192, 197, 234); (9) Defrauding Health Care Benefit Programs by Trick (Counts 198–220); and (10) Engaging in Monetary Transactions and Property Derived Unlawfully (Counts 235–255). *See* Verdict Form, **Exhibit 4.**  The jury also convicted Ace Clinique of identical counts, with two exceptions: only Chaney was convicted of knowingly obtaining controlled substances through misrepresentation or fraud (Counts 66 and 67), and only Ace Clinique was convicted of making false statements related to the pre-signed certificates of medical necessity scheme (Counts 221-233).

[9] *See generally*, Motion for New Trial and Memorandum in Support, attached as **Exhibit 5.** Chaney's Motion for New Trial centered on four arguments: (1) juror misconduct; (2) prosecutorial misconduct; (3) the denial of his Motion to Suppress evidence seized at Ace Clinique; and (4) the interests of justice.

[10] *See* Motion for Judgment of Acquittal and Memorandum in Support, attached as **Exhibit 6.**

[11] *Id.*, at p. 5. Chaney also challenged the sufficiency of evidence supporting unnecessary drug screens (Counts 112–122), hospital billings (Counts 148–197), (4) defrauding health care benefit programs by misrepresentation (Count 197); pre-signed prescriptions (Counts 190–220); and nerve conduction tests (Count 234).

both motions, stating the Government "introduced a wealth of evidence establishing the Chaney's direct and pervasive involvement in these crimes."[12]

In October 2017, Chaney appealed the denial of his Motions for a New Trial and Acquittal to the Sixth Circuit. The Sixth Circuit agreed with the Eastern District and affirmed.[13] Chaney argued, *inter alia*, that his sentence was "procedurally unreasonable because the district court failed to address [his] arguments for a lower drug-amount calculation."[14] Chaney argued that inadequate evidence was presented to support his conviction because "the government did not provide expert testimony showing that all prescriptions signed by Ace were illegitimate."[15] The Sixth Circuit dismissed Chaney's drug quantity argument, stating it "simply does not accord with reality," emphasizing the Eastern District's "lengthy explanation of its reasoning for reaching the conclusions on drug and loss amount that it did."[16] The Sixth Circuit further stated, "[i]t is crucial to remember that the investigation of Ace Clinique revealed both specific instances in which patients were illegitimately prescribed controlled substances and evidence suggesting a larger fraud (for example, a pad of pre-signed prescriptions left for use while the doctor was away)."[17] The United States Supreme Court denied Chaney's certiorari petition two years later.[18]

---

[12] *See United States v. James A. Chaney, et al.*, 211 F.Supp.3d 690, 994 (E.D. Ky. 2016).

[13] *United States v. James A. Chaney, et al.*, 921 F.3d 572 (6th Cir. 2019).

[14] *Id.* at 598.

[15] *Id.* at 592.

[16] *Id.* at 599.

[17] *Id.* at 588.

[18] *James A. Chaney v. United States*, 140 S. Ct. 301 (2019).

18650722.3

***Motion to Vacate.*** In July 2020, Chaney filed a Motion to Vacate under 28 U.S.C. § 2255, alleging thirteen (13) counts of ineffective assistance of counsel.[19] In December 2021, Magistrate Judge Ingram recommended denial, emphasizing the evidence supporting Chaney's conviction:

> The evidence presented at trial demonstrated that: [Chaney] knowingly left pre-signed prescriptions for distribution by unlicensed and unqualified medical staff, told an employee "not to tell anyone" about the pre-signed scripts, shouted at employees to "fix" urine drug screens that showed signs of patients' drug abuse and/or diversion, somehow saw up to four patients every fifteen minutes, forced others to wait for up to eight hours to be seen, fabricated medical records, submitted fraudulent billings to public and private insurance providers, ordered an employee to obtain prescriptions unlawfully and divert them to Dr. Chaney for his own private use, and even encouraged one patient to dissolve the pills he had prescribed and inject them.[20]

In response, Chaney filed a Motion to Amend. In May 2022, Judge Tatenhove agreed with Judge Ingram's recommendation, denying Chaney's Motion to Vacate and his Motion to Amend.[21] The Sixth Circuit again agreed with the Eastern District and affirmed.[22] In March 2023, the United States Supreme Court denied Chaney's second certiorari petition.[23]

## III.   Chaney Commences the Eighth Challenge to His Conviction by Filing This Civil Action Against 84 Pharmacies, Medical Facilities, Personnel, and Individuals.

This is the Plaintiff's *eighth attempt* to overturn his conviction, suing eighty-four Defendants ranging from mom-and-pop pharmacies, chain pharmacies, hospital pharmacies, and hospice facilities to their respective personnel. All of Chaney's allegations rest on the premise that Defendants wrongfully attributed opioid prescriptions in the KASPER database using Chaney's

---

[19] *See generally*, Motion to Vacate and Memorandum in Support, attached as **Exhibit 7.**

[20] *United States v. Chaney*, No. 614-CR37-GFVT-HAI-1, 2021 WL 8875684, at *11 (E.D. Ky. Dec. 16, 2021).

[21] *United States v. Chaney*, No. 6:14-CR-00037-GFVT-1, 2022 WL 1421823 (E.D. Ky. May 5, 2022).

[22] *See generally*, *Chaney v. United States*, No. 22-5524, 2022 WL 19264664 (6th Cir. Nov. 17, 2022).

[23] *Chaney v. United States*, 143 S. Ct. 1070 (2023).

name, DEA Number, KBML Number, and NPI Number.[24] Chaney claims KASPER data was the "primary basis for the investigation against him and his indictment," and the alleged "errors and misattributions" resulted in his conviction.[25] However, as noted, the support for Chaney's convictions went well beyond the KASPER data, including pre-signed prescriptions, falsified records, fraudulent billings, and employee testimony.  What Chaney proposes is to have this Court relitigate his criminal conviction, which is the linchpin for all his claims, in the guise of claiming some of the evidence used in his prosecution was inaccurate, but it is too late as the statute of limitations has passed, they are barred by collateral estoppel, and they fail to state claims.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[26] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."[27]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28] "A complaint will be dismissed ... if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."[29]  "Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of

---

[24] *See* Pl's Compl. at ¶¶ 92, 100–104.

[25] *Id*. at ¶¶ 123, 118 and ¶¶ 112, 113, 114.

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

[27] *Id.* at 678 (internal quotation marks and citation omitted).

[28] *Id.* (*citing Twombly*, 550 U.S. at 556).

[29] *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citation omitted).

limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief."[30] Similarly, claims barred by collateral estoppel[31] or that fail to state viable claims[32] should be dismissed.

Relative to the matters subject to review upon a motion to dismiss, courts may consider "public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion [for judgment on the pleadings], as long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion for judgment on the pleadings to a motion for summary judgment.[33] Alternatively, courts may take judicial notice of public records, including charging documents in criminal proceedings, without converting a motion to

---

[30] *Hayes v. Acts 2:38 Faith Deliverance, Inc*., No. 123CV01116STAJAY, 2023 WL 8604178, at *1 (W.D. Tenn. Dec. 12, 2023) (citation and internal quotation marks omitted); see, e.g., *Cmty. Ass'n of Underwriters of Am., Inc. v. TTI Consumer Power Tools, Inc*., No. 3:23-CV-107-RGJ, 2023 WL 8851666 (W.D. Ky. Dec. 21, 2023) (granting motion to dismiss barred by the applicable statute of limitations); *Linney's Pizza, LLC v. Bd. of Governors of Fed. Rsrv. Sys.*, No. 3:22-CV-00071-GFVT, 2023 WL 6050569, at *1 (E.D. Ky. Sept. 15, 2023) ("Therefore, this action, filed in December 2022, is beyond the six-year statute of limitations, the case is untimely, and the Board's Motion to Dismiss [R. 7] is GRANTED."); *Rudd v. United States*, No. 5:22-CV-00201-GFVT, 2023 WL 4923932 (E.D. Ky. Aug. 1, 2023) (dismissing *Bivens* suit as barred by applicable statute of limitations).

[31] *See, e.g., Evans v. Pearson Enter., Inc*., 434 F.3d 839, 849–50 (6th Cir. 2006) (affirming 12(b)(6) dismissal because all elements of collateral estoppel were satisfied); *see also Palmer v. Manor Care, Inc*., 11 F. App'x 567, 569 (6th Cir.2001) ("We conclude that the district court properly relied on collateral estoppel to grant defendant's motion to dismiss."); *Pedroso v. State Farm Mut. Auto. Ins. Co*., No. 3:21-CV-540-CHB, 2023 WL 8439746 (W.D. Ky. Dec. 5, 2023) (dismissing claims barred by collateral estoppel).

[32] *See, e.g., Harley v. Fields*, No. 2:22-CV-00055-GFVT, 2022 WL 1437355 (E.D. Ky. May 5, 2022) (dismissing a complaint for failure to state a viable claim); *Sublett v. Pucket*, No. CV 22-74-DLB, 2022 WL 1177164 (E.D. Ky. Apr. 20, 2022) (dismissing a complaint for failure to state a viable claim); *Chatterjee v. CBS Corp*., No. 6:19-CV-212-REW, 2020 WL 592324 (E.D. Ky. Feb. 6, 2020) (dismissing a complaint, in part, for failure to state viable claims); *Hackney v. Allmed Healthcare Mgmt., Inc*., No. 3:15-CV-00075-GFVT, 2016 WL 1726098 (E.D. Ky. Apr. 28, 2016), *judgment entered*, No. 3:15-CV-00075-GFVT, 2016 WL 1728963 (E.D. Ky. Apr. 28, 2016), and *aff'd*, 679 F. App'x 454 (6th Cir. 2017) (dismissing a complaint for failing to state viable claim); *Gatlin v. Shoe Show, Inc*., No. 3:14-CV-00446-TBR, 2014 WL 3586498 (W.D. Ky. July 21, 2014) (dismissing a complaint for failing to state a viable claim).

[33] *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Jeffery v. Med. Protective Co.*, 446 F. Supp. 3d 177, 180 (E.D. Ky. 2020), amended, No. 3:19-CV-00023-GFVT, 2020 WL 2309258 (E.D. Ky. May 8, 2020).

18650722.3

dismiss to a motion for summary judgment.[34] Here, Chaney's Complaint should be dismissed, with prejudice, as barred by the applicable statutes of limits, collateral estoppel, and viability.

## ARGUMENT

### I.     The Applicable Statutes of Limitation Bar Chaney's Claims.

Chaney claims that "despite efforts by his attorneys, [he] was unable to discover the *extent* of [KASPER] errors and misattributions by Defendants" until "testimony by various pharmacists in 2023."[35] However, the records in Chaney's criminal proceedings demonstrate that he had actual or constructive knowledge of the alleged KASPER misattributions before, during, and after trial.[36] That Chaney "may not have known about the full extent of the damage or even who was responsible [are facts] of no consequence"[37] because a statute of limitations "begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered."[38] "Once the plaintiff knows he has been injured, even if he does not have actual or constructive knowledge of who caused his injury, he 'has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints.'[39] The "discovery rule" is a limited exception to this rule, and "is available only in cases where the fact of injury or

---

[34] *See Robinson v. Higgins*, No. 3:23-CV-09-DJH, 2023 WL 7140510, at *1 (W.D. Ky. Sept. 26, 2023); *Knowlton v. Godair*, No. 5:22-CV-148-BJB, 2023 WL 3166176, at *3 (W.D. Ky. Apr. 28, 2023).

[35] Pl's Compl. at ¶¶ 123–124 (emphasis added).

[36] ARH Defendants do not admit they misattributed KASPER entries and hereby preserve and do not waive all defenses available to them under the law.

[37] *Bd. of Educ. of Estill Cnty., Kentucky v. Zurich Ins. Co.*, 180 F. Supp. 2d 890, 894 (E.D. Ky. 2002), aff'd sub nom. *Estill Cnty. Bd. of Educ. v. Zurich Ins. Co.*, 84 F. App'x 516 (6th Cir. 2003).

[38] *Wilson v. Paine*, 288 S.W.3d 284, 286 (Ky. 2009).

[39] *Roark v. 3M Co.*, 571 F.Supp.3d 708, 712 (E.D. Ky. 2021) (quoting *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007); *see also Paine*, 288 S.W.3d at 286 ("lack of knowledge of one's rights is insufficient to prevent operation of statutes of limitations.").

18650722.3

offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses.[40] However, if a Plaintiff is not reasonably diligent in conducting such an investigation, there is no tolling.[41] Further, the statute standing for the proposition that incarceration acts as a legal disability to toll the running of the applicable limitations period has been repealed.[42] In short, potential plaintiffs cannot simply wait for someone else to connect the dots for them.[43] Here, Chaney's duty to investigate commenced on four distinct occasions: (1) in February 2014, while Ace Clinique was still in operation; (2) in March 2015, during discovery in his criminal prosecution; (3) in March 2016, during his criminal trial; and (4) in August 2017, during his presentencing proceedings.

A.   ***Actual or Constructive Knowledge of KASPER Misattributions During Ace Clinique's Operation in February 2014.***

During the trial, Leslie Jaymes, a former Ace Clinique nurse practitioner, testified that concern about forged prescriptions in the KASPER database once stirred at the clinic.[44] Specifically, Mr. Jaynes testified that after running a patient's personal KASPER report, he found "numerous prescriptions that were written for [the patient] that [Mr. Jaymes] had not written, and Dr. Chaney had not written."[45] This prompted Mr. Jaymes to review his KASPER data to ensure "there wasn't a big bunch of prescriptions that were under [his] name."[46] While a specific date of

---

[40] *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 61 (Ky. 2010); *see also Hack v. State Farm Fire & Cas. Ins. Co.*, No. 3:20-CV-134-CRS, 2020 WL 4803284, at *3 (W.D. Ky. Aug. 18, 2020).

[41] *See Hazel v. Gen. Motors Corp.*, 83 F.3d 422, 1996 WL 198203, at *3 (6th Cir. 1996).

[42] *See Hamilton v. Meridian Mut. Ins. Co.*, No. 02-CI-00141, 2003 WL 22064128 at *5 (Ky. App. Sept. 5, 2003); *accord Fields v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:07-CV-134-S, 2007 WL 4224216, at *5 (W.D. Ky. Nov. 27, 2007).

[43] *Roark*, 571 F.Supp.3d at 712.

[44] *See* Trial Transcript, Testimony of Leslie Jaymes, Page ID # 8268–8269, attached as **Exhibit 8.**

[45] *Id*.

[46] *Id*. at Page ID # 8269.

discovery is not mentioned, Mr. Jaymes testified that he worked at Ace Clinique until its permanent closure on or around late January 2014 or early February 2014.[47] Accordingly, Chaney had actual or constructive knowledge of the alleged KASPER misattributions as early as January or February 2014, *before* his October 2014 indictment.

> **B.** ***Actual or Constructive Knowledge of Alleged KASPER Misattributions During March and April 2015 Discovery.***

The Government produced thousands of prescription records from seventy-eight pharmacies, obtained via subpoenas, and used by the grand jury during the indictment.[48] In addition, the Government produced an itemized spreadsheet of 1,206 "improper" prescriptions.[49] After Chaney's counsel identified inconsistencies between the pharmacy records and spreadsheet, by letter dated March 23, 2015, he requested disclosure of documents and data upon which the United States relied while creating it.[50] Chaney's counsel stated, "it is obvious to me that the data on the spreadsheet has not been taken from the actual prescriptions themselves, at least with respect to the entries beginning in 2011. I conclude, therefore, that the data was taken from KASPER."[51] The United States declined disclosure pursuant to KRS § 128A.202(6)(b) and KRS § 218A.202(8), which prohibits voluntary disclosure of KASPER reports by law enforcement personnel absent a court order.[52] One month later, on April 22, 2015, Chaney filed a Motion to Compel discovery of the data, again directly referencing and targeting KASPER records: "It quickly became obvious

---

[47] *Id*., Page ID # 8262.

[48] *See* Motion to Compel Discovery, at p. 1–2, attached as **Exhibit 9.**

[49] *Id*., at p. 1–2.

[50] *Id*., at p. 3.

[51] *Id*., at p. 3.

[52] *See generally*, United States' Response to Motion to Compel Discovery, attached as **Exhibit 10;** *see also* KRS 218A.202(6) ("The Cabinet for Health and Family Services shall only disclose data to persons and entities authorized to receive the data under this section. Disclosure to any person or entity, including disclosure in the context . . . of discovery or for evidence, is prohibited unless specifically authorized by this section.").

18650722.3

that the data used to create the Spreadsheet had not come from actual prescriptions . . . Quite a few prescriptions show that they were not written by Dr. Chaney at all, but were issued by another practitioner at [Ace Clinique], and a handful were written by physicians not even associated with [Ace Clinique] . . . Defendants suspect that the underlying source data came from KASPER."[53] Accordingly, Chaney also had actual or constructive knowledge of the alleged KASPER misattributions in March 2015, the date of the letter, or April 2015, the date of his Motion.

### C.     *Actual Knowledge of Alleged KASPER Misattributions During Trial in March 2016.*

KASPER is mentioned one hundred seventy-two times[54] during Chaney's March 2016 criminal trial, and it is indisputable that Chaney developed *actual* knowledge of the alleged KASPER misattributions while sitting in the courtroom. Chaney's knowledge is first made certain on the trial's third day during the testimony of Dr. James Dustin ("Dusty") Chaney. Dusty testified that he received credit for patients in KASPER he "never saw before" due to a "pharmacy error" and further explained, "[t]here was a big mix-up between [Chaney] and I because we have the [same] first name."[55] Dusty also provided a statement to Special Agent Lambdin regarding these errors during the FBI's investigation of the clinic.[56]  Chaney's knowledge is made certain again on the trial's fifteenth day by the testimony of Randy Hunter ("Hunter"), a former Detective with Kentucky Drug Enforcement Agency. During Hunter's redirect examination, Chaney's counsel objected to the scope of his testimony regarding Chaney's KASPER records, arguing, "KASPER

---

[53] Motion to Compel Discovery, at p. 2 and 4.

[54] An overwhelming majority of KASPER references stem from Chaney's own fraudulent entries in KASPER, such as altering his patient's urine drug screen data.

[55] Trial Transcript, Direct Examination of James Dustin Chaney, Page ID # 4585 at Lines 4–8; Page ID # 4624 at Lines 15–25; and Page ID # 4625 at Lines 1–5, attached as **Exhibit 11.**

[56] *Id*., Page ID # 4585 at Lines 15–22.

18650722.3

reports in this case are extremely inaccurate. It all depends on what the physician—in what the pharmacist types in, and his statistics are way off base."[57] Accordingly, it cannot be disputed that Chaney knew about the alleged KASPER misattributions in March 2016.

### D.   *Actual Knowledge of Alleged KASPER Misattributions During Presentencing Proceedings in August 2017.*

Finally, Chaney's presentencing records thoroughly establish his actual knowledge of KASPER misattributions. Chaney's Presentence Investigation Report listed 3,332,846 "improper" Schedule II prescriptions and 5,107,652 "improper" Schedule III prescriptions.[58] Chaney "objected on the premise that these 'all inclusive' calculations entirely relied upon KASPER data that is inaccurate and unreliable."[59] Accordingly, in August 2017, the Eastern District held a *two-day evidentiary hearing* regarding the drug quantity for Chaney's sentencing guidelines range.[60] During the evidentiary hearing, "KASPER" is mentioned 52 times. The United States argued the quantity should be calculated by "every Schedule II or III prescription drug Ace prescribed during the relevant time period and every billing to Medicaid from Ace Clinique or a pharmacy filling an Ace Clinique prescription."[61] Chaney argued the quantities should be solely calculated from his conviction counts. Special Agent Lambdin testified that he used Chaney's KASPER records from

---

[57] Trial Transcript, Testimony of Detective Randy Hunter, Page ID # 8067 at Lines 16–19, attached as **Exhibit 12.**

[58] *See* 2018 Brief of Appellant Chaney, at p. 26 (citing Chaney's Pretrial Sentencing Report at ¶ 13).

[59] *Id.*, at p. 27.

[60] *See also* Chaney Memorandum Concerning Guideline Calculations of Drug Quantity and Health Care Fraud Loss, attached as **Exhibit 13**; United States' Memorandum Regarding Drug Quantity Calculation, attached as **Exhibit 14.**

[61] *See Chaney*, 921 F.3d at 579.

18650722.3

January 1, 2007, through August 8, 2014, to assist in the calculation.[62] Special Agent Lambdin admitted that KASPER data can be unreliable, and "'entry errors can occur' including the intermixing of Dr. James A. Chaney's prescriptions with [his nephew], Dr. James Dustin Chaney's prescriptions."[63] Chaney *himself testified* about the unreliability of KASPER data, stating, "KASPER is fraught with errors."[64] Chaney further claimed that from a list of 1,208 prescriptions alleged to be his, he found 1,207 of those prescriptions written by other doctors or nurse practitioners and inaccuracies in the date the prescription was filled as opposed to which it was written.[65] When asked whether he compared KASPER data with his actual files when looking for errors and inconsistencies, Chaney stated, "absolutely."[66] Counsel also reminded the Eastern District that Chaney's nephew, Dusty, testified at trial that he "personally found several errors in KASPER reports."[67] A few weeks after the hearing, Chaney filed a memorandum once again reiterating that his drug quantity "calculations entirely rely upon KASPER data that is inaccurate and unreliable."[68] The Eastern District refused to adopt either proposed calculation method. As noted above, the support for Chaney's conviction went well beyond KASPER data, including pre-signed prescriptions, falsified records, fraudulent billings, and employee testimony[69] As such, the Eastern District ruled that sixty percent of the drugs the United States calculated were fraudulent

---

[62] 2018 Brief of Appellant Chaney, at p. 27; *see also* Evidentiary Hearing Transcript, Testimony of Special Agent Thad Lambdin, Page ID # 9452–9453, attached as **Exhibit 15.**

[63] *Id*., at p. 27–28, 30.

[64] Chaney Drug Quantity Memo, at p. 8 (citing Evidentiary Hearing Transcript, Testimony of James A. Chaney, Page ID # 9527).

[65] *Id*.

[66] Evidentiary Hearing Transcript, Testimony of James A. Chaney, Page ID # 9527–9528.

[67] Chaney Drug Quantity Memo, at p. 3 (citing Trial Transcript, Direct Examination of James Dustin Chaney, Page ID #4585).

[68] *Id*., at p. 2.

[69] *See supra* Pages 3–5.

and sentenced Chaney accordingly. Thus, records from August 2017 presentencing proceedings again establish Chaney's actual knowledge of KASPER misattributions.

### i.      Count I of Chaney's Complaint (Negligence) is Time-Barred.

Personal injury actions governed by KRS 413.140(1) "shall be commenced within one (1) year after the cause of action accrued."[70] Thus, Count I of Chaney's Complaint for Negligence is time-barred as it was filed more than one year after (1) Chaney's employee testified that the Clinic was aware of KASPER data errors before February 2014; (2) the alleged KASPER data errors were the subject of a discovery dispute in April 2015; (3) multiple witnesses, with Chaney present, testified as to the alleged errors during his trial in March 2016; and (4) a two-day hearing was conducted in August 2017 regarding those alleged errors.

### ii.      Count II of Chaney's Complaint (Fraudulent Misrepresentation) is Time-Barred.

Actions for fraud are governed by KRS 413.120(12), which provides that actions for fraud must be brought within five years after the cause of action accrued. The cause of action "shall not be deemed to have accrued until the discovery of the fraud or mistake."[71] The limitations period commences on a claim for fraud or misrepresentation when it is "discovered or, in the exercise of reasonable diligence, should have been discovered."[72] As Chaney's complaint was filed more than five years after a two-day hearing was conducted regarding alleged errors in the KASPER database, the claim for Fraudulent Misrepresentation is time-barred.

### iii.      Counts III, IV, and V of Chaney's Complaint (False Light, Defamation, Libel Per Se) Are Time-Barred.

---

[70] *Combs v. Albert Kahn Assocs., Inc.*, 183 S.W.3d 190, 194 (Ky. Ct. App. 2006).

[71] KRS 413.130(3); *see also Raisor v. Burkett*, No. 2007-CA-001508-MR, 2008 WL 2219887, at *4 (Ky. Ct. App. May 30, 2008).

[72] *Kerman v. Chenery Assocs., Inc.*, No. 3:06CV-338-S, 2011 WL 1106736, at *6 (W.D. Ky. Mar. 23, 2011).

14

Under Kentucky law, defamation and false light claims are subject to a one-year statute of limitations.[73] "It is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations provided by KRS 413.140(1)(d)."[74] Thus, Counts III, IV, and V of Chaney's Complaint for False Light, Defamation, and Libel Per Se are time-barred as it was filed more than one year after (1) Chaney's employee testified that the Clinic was aware of KASPER data errors before February 2014; (2) the alleged KASPER data errors were the subject of a discovery dispute in April 2015; (3) multiple witnesses, with Chaney present, testified as to the alleged errors during his trial in March 2016; and (4) a two-day hearing was conducted in August 2017 regarding those alleged errors.

### iv.   Count VI of Chaney's Complaint (Identity Theft) is Time-Barred.

In Count VI of his Complaint, Chaney alleges Defendants violated KRS 514.160, a criminal statute, entitling him to damages under KRS 446.070 and Kentucky's Consumer Protection Act, KRS 367.110, *et seq*. The statute of limitations for KRS 514.160 is "five (5) years from the date of the discovery of the violation." As Chaney's Complaint was filed more than five years after a two-day hearing was conducted regarding alleged errors in the KASPER database, the claim for Identity Theft is time-barred.

### v.   Count VII of Chaney's Complaint (Attorney Fees) is Time-Barred.

---

[73] *See Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 19 (Ky. 2008)" *Porter v. Sergent*, No. CV 5:19-455-KKC, 2020 WL 4495465, at *10 (E.D. Ky. Aug. 4, 2020).

[74] *Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980); *see also*, *Barnett v. Louisville & Nashville R.R. Co.*, 407 F.2d 1333 (6th Cir. 1969); *Hoskins Adm'r v. Kentucky Ridge Coal Co., Ky.*, 305 S.W.2d 308 (1957); *Lashlee v. Sumner, 570 F.2d 107 (6th Cir. 1978).*

A claim for attorney's fees is subject to the same statute of limitations applicable to the underlying tort.[75] Accordingly, as Counts I-VI of the Complaint is time-barred, Count VII of the Complaint is also time-barred.

### vi. Counts VII (Causation) and Count IX (Punitive Damages) of Chaney's Complaint Are Not Causes of Action and Are Time-Barred.

The remaining two counts of Chaney's Complaint—Causation and Punitive Damages—are remedies, not independent causes of action,[76] and, they are predicated on other time-barred claims, are also time-barred.

## II. The Doctrine of Collateral Estoppel Bars Chaney's Claims.

"By operation of the doctrine of collateral estoppel, a valid criminal conviction acts as a bar to overturning that conviction in a civil damages suit."[77] Courts reason that "[p]ermitting collateral relitigation of the validity of criminal convictions outside [the criminal court] framework would undermine the effective administration of the judicial system."[78] Courts with statutory

---

[75] *Hack v. State Farm Fire & Cas. Ins. Co.*, No. 3:20-CV-134-CRS, 2020 WL 4803284, at *3–4 (W.D. Ky. Aug. 18, 2020).

[76] *See Johnson v. BLC Lexington SNF, LLC*, No. CV 5:19-064-DCR, 2019 WL 2476739, at *11 (E.D. Ky. June 13, 2019) ("To the extent that 'causation and damages' is asserted as a separate cause of action, it will be dismissed.") and *Russell v. Citi*, No. CIV.A. 12-16-DLB-JGW, 2012 WL 5947450, at *2 (E.D. Ky. Nov. 28, 2012) ("Plaintiff purports to assert a cause of action for 'punitive damages' . . . [h]owever, punitive damages are a remedy, not a cause of action . . . Therefore, the Court will dismiss [the punitive damages count].").

[77] *Levine v. Kling*, 123 F.3d 580, 583 (7th Cir. 1997); *Breeland v. Security Ins. Co. of New Haven, Conn.*, 421 F.2d 918 (5th Cir. 1969); *United States v. Fabric Garment Co.*, 366 F.2d 530 (2d Cir. 1966); *see also Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (An inmate may not attack his criminal conviction through a civil rights action unless he proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus").

[78] *Rosenberg v. Shostak*, 405 S.W.3d 8, 15 (Mo. Ct. App. 2013); *see also Stevens v. Bispham*, 851 P.2d 556, 562 (Or. 1993) ("The panoply of protections accorded to the criminally accused (including direct appeal and post-conviction relief) is so inclusive, and the significance of a conviction so important to vindication of the rule of law, that it would appear most unusual to permit a person to prosecute a legal malpractice action premised on some flaw in the process that led to that person's conviction at the same time that the person's conviction remained valid for all other purposes. In other words, while the conviction and sentence remain valid for all other purposes, it is inappropriate

schemes, as in Kentucky, permitting post-conviction habeas corpus review, have gone so far as to say it would "shock the public conscience, engender disrespect for courts and generally discredit the administration of justice."[79]  The general principle is that the "guilty have procedural rights, but they are vindicated by arguments and submissions at trial, by appeals, and by postconviction attacks on the conviction or sentence, not by acquittal, or by damages in lieu of acquittal."[80]

Chaney had his day in court with the opportunity to produce witnesses, to examine and cross-examine witnesses, to appeal from the judgment, and to be acquitted unless the evidence established his guilt beyond a reasonable doubt.[81] To be exact, Chaney had his day in both the Eastern District and Sixth Circuit to challenge the drug quantities attributed to him, where he raised the KASPER misattribution issue.[82] "Under section 2D1.1(c) of the Sentencing Guidelines, the district court must determine the quantity of drugs for which a defendant is responsible in order to determine [his] base offense level."[83] "The calculation of drug quantities is an individual, fact-specific exercise that requires individual, fact-specific briefing."[84] "[T]he evidence supporting the estimate must have a minimal level of reliability beyond mere allegation."[85] At sentencing, the Eastern District remarked that it had "listened really carefully to the testimony that was provided

---

to treat a complaining convicted offender as having been 'harmed' in a legally cognizable way by that conviction."); *accord Connecticut Fire Ins. Co. v. Ferrara*, 277 F.2d 388 (8th Cir. 1960).

[79] *Id*.

[80] *Levine*, 123 F.3d at 582.

[81] It is immaterial that the ARH Defendants were not parties to Chaney's criminal prosecution. *See* Restatement (Second) of Judgments § 85 ("There are two basic patterns for applying issue preclusion in favor of a third party. The clearest situation is where the person who was convicted of an offense brings an action against the third party to assert a claim that rests on factual premises inconsistent with those established in the criminal prosecution").

[82] *See supra* Pages 3–5 and 12–13; *Chaney*, 921 F.3d at 598.

[83] *United States v. Huffman*, F29 F.App'x 426, 430 (6th Cir. 2013).

[84] *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002).

[85] *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004).

at the [drug quantity calculation] hearing," had "looked at the briefing," and "thought a lot about [calculations] at the fundamental level."[86] Chaney exhausted his KASPER defense, and he is barred from doing so again in this civil action.

However, even excluding the alleged misreported prescriptions, other non-misreported prescriptions support Chaney's criminal conviction. Contrary to his allegation that KASPER was the "primary basis" for his prosecution, his own patient records and business practices were the heart of his investigation, indictment, and conviction:

> [T]he evidence demonstrated that Dr. Chaney signed hundreds of blank prescriptions days or weeks in advance, without any foreknowledge of who would ultimately receive those prescriptions. Mrs. Chaney would then leave "stacks" of these pre-signed scripts in a drawer for Roy Combs, the office's untrained "IT guy," who would hand them out for distribution by unlicensed and unqualified medical staff. Combs also testified that Dr. Chaney instructed him "not to tell anyone" about the pre-signed scripts.

> And all of this behavior occurred in the context of the Clinque's other disturbing and illegitimate practices, as evidenced by testimony that the Chaneys altered urine drug screens to conceal evidence of the patients' drug abuse and/or diversion, quadruple-booked patients into fifteen-minute time slots, forced others to wait for up to eight hours to be seen, and fabricated patients' charts. [87]

To be sure, by Chaney's own admission, "Chaney utilized the practice of issuing pre-signed prescriptions while he was out of the office. This practice prompted an investigation."[88] Accordingly, Chaney's claims at the heart of this civil action are barred by his criminal conviction under the doctrine of collateral estoppel.

## III.    Chaney's Complaint Fails to State Viable Claims.

### A.    *Count I States No Viable Negligence Claim as It Identifies No Source of any Legal Duty to Him Breached by the Defendants.*

---

[86] *See* Sentencing Hearing Transcript, Page ID # 10066–10068, attached as **Exhibit 16.**

[87] US Chaney Drug Quantity Memo, at p. 6.

[88] 2018 Brief of Appellant Chaney, at p. 15.

18650722.3

Under Kentucky law, "The elements of a negligence claim are (1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages."[89] In the absence of a legal duty owed to a negligence plaintiff, a suit for negligence is not viable and should be dismissed.[90] As Chaney identifies no source of legal duty owed to him by the Defendants relative to the KASPER database, his Complaint states no viable claim for negligence.

**B.      *Count II States No Viable Fraud Claim as It Does Not Allege that the Defendants Made False Representations to Him Upon Which He Reasonably Relied to His Detriment.***

"In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury."[91]  Here, Count II of Chaney's Complaint does not allege that the Defendants knowingly or recklessly made false representations to induce him to rely upon those representations or that he relied on those representations, causing him injury. To be sure, the Eastern District and Sixth Circuit reiterated time and time again that Chaney's conviction stands supported by ample evidence of disturbing and illegitimate medical practices regardless of KASPER data.[92] Further, by Chaney's own admission, he could not rely on KASPER data.[93] Accordingly, his Complaint states no viable claim for fraud.

---

[89] *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016).

[90] *See, e.g., Merrick v. Diageo Americas Supply, Inc.*, 5 F. Supp. 3d 865, 877 (W.D. Ky. 2014), aff'd, 805 F.3d 685 (6th Cir. 2015) ("Diageo contends that Plaintiffs have failed to plead facts which show that Diageo owed them a duty, or that it breached any such duty. We agree. Plaintiffs have not identified the source of Diageo's purported duty to minimize and prevent its ethanol emissions from entering Plaintiffs' property, nor have they identified the source of Diageo's alleged duty to prevent whiskey fungus from accumulating on Plaintiffs' property.").

[91] *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (*citing Wahba v. Don Corlett Motors, Inc.,* 573 S.W.2d 357, 359 (Ky. App. 1978)).

[92] *See supra* Pages 3–5, 12–13.

[93] *See supra* Notes 64–66.

19

**C.**     ***Count III States No Viable Claim for False Light Invasion of Privacy as Erroneous Database Entries, Even if Made, Did Not Place Chaney in a False Light.***

In 1981, Kentucky adopted the tort of false light invasion of privacy from the RESTATEMENT (SECOND) OF TORTS.[94]  "The two basic requirements to sustain such an action are: (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed."[95]  Entries into a computer database attributing individual prescriptions to Chaney are not "highly offensive." Nor are they "publicized matter." "KASPER data is not available to the general public, but rather only to specified personnel who certify that they are conducting a bona fide specific investigation involving a designated person.'"[96] Accordingly, the Complaint fails to state a viable claim for a false light invasion of privacy.

**D.**     ***Count IV States No Viable Claim for Defamation as Entries Into a Computer Database Are Not Defamatory Standing Alone.***

To prevail on a claim for defamation under Kentucky law, a plaintiff must establish each of four elements: "'(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher;

---

[94] *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981).

[95] *Id.* at 888.

[96] *Williams v. Commonwealth*, 213 S.W.3d 671, 783 (Ky. 2006); *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459 (Ky. 1998); *see also* KRS § 128A.202(6)(b) and KRS § 218A.202(8) (generally prohibiting disclosure of KASPER data to unauthorized individuals).

and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'"[97]   Although the Complaint alleges that the Defendants made erroneous KASPER entries, satisfying the "false" statement element, the entries themselves do not satisfy the second element, i.e., that they are "defamatory." Under Kentucky law, "Speech is defamatory if it tends to '(1) bring a person into public hatred, contempt or ridicule; (2) cause[s] him to be shunned or avoided; or (3) injure[s] him in his business or occupation.'"[98] What brought Chaney into public hatred, contempt, and ridicule was the fact that he signed hundreds of blank prescriptions weeks in advance, altered drug screens to conceal evidence of patient drug abuse, quadruple-booked patients into fifteen-minute time slots, and fabricated patient charts.[99] Further, as none of the entries were accessible by the public, or standing alone, brought Chaney into public hatred, contempt, or ridicule, or caused him to be shunned or avoided, or injured him in his business or occupation, the Complaint fails to state a viable defamation claim.[100]

> **E.      Count V States No Viable Claim for Defamation Per Se As Entries Into a Computer Database Standing Alone Satisfied None of its Requirements.**

Under Kentucky law, "for a defendant's written statement to be 'actionable per se justifying a recovery without averments of special damages,' it must be more than annoying, offensive, or embarrassing; the words must 'tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people,' or the statement must 'impugn one's competence, capacity, or fitness in the performance of his profession.'"[101]  "In

---

[97] *Winchester v. Salvation Army*, No. 2022-CA-0575-MR, 2023 WL 7930393, at *6 (Ky. Ct. App. Nov. 17, 2023) (citation omitted).

[98] *Id.*

[99] *See supra* Pages 3–4 and 12–13.

[100] *See supra* Note 96.

[101] *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 790 (E.D. Ky. 2019) (citations omitted).

determining whether a writing is libelous per se [under Kentucky law], *courts must stay within the four corners of the written communication*."[102] "Statements classified as defamatory per se include those which attribute to someone a criminal offense, a loathsome disease, serious sexual misconduct, or conduct which is incompatible with his business, trade, profession, or office."[103] Such statements must tend to expose the plaintiff to public hatred, ridicule, contempt, or disgrace or induce such an evil opinion of the plaintiff as to deprive him of friendship.[104] Whether an alleged statement constitutes defamation per se is a matter of law.[105] Plainly, applying these standards, Chaney's claim for defamation per se fails as a matter of law.

### F.   Count VI States No Viable Claim for Identity Theft as the Complaint Does Not Allege that the Defendants Used Chaney's Identifying Information with the Intent of Representing That They Were Chaney.

Count VI of the Complaint is based on a criminal statute, KRS § 514.160, which provides, "A person is guilty of the theft of the identity of another when he or she knowingly … uses any … identifying information of the other person … with the intent to represent that he or she is the other person." "A person found guilty of violating any provisions of this section shall forfeit any lawful claim to the identifying information, property, or other realized benefit of the other person as a result of such violation."[106] As the Complaint does not allege that the Defendants used Chaney's identifying information to represent that they were Chaney, his civil claim for identity theft fails as a matter of law.

---

[102] *Id.* (emphasis supplied, internal quotation marks, and citation omitted).

[103] *Gilliam v. Pikeville United Methodist Hosp. of Ky., Inc.*, 215 S.W.3d 56, 61 (Ky. App. 2006).

[104] *Id.*

[105] *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 274 (Ky. App. 1981).

[106] KRS § 514.160(6).

18650722.3

G.    *Count VII States No Viable Claim for Attorney Fees Under Mo–Jack Distrib., LLC v. Tamarak Snacks, LLC, 476 S.W.3d 900 (Ky. Ct. App. 2015).*

There is, of course, no cause of action for attorney fees.  Instead, it is occasionally an available remedy under contract, statute, or equity.  In his Complaint, Chaney references *Mo–Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900 (Ky. Ct. App. 2015), but the Court of Appeals in that case reaffirmed the American Rule, noting only an equitable exception: "[T]his 'American Rule' does not abolish the equitable rule that 'an award of counsel fees is within the discretion of the court depending on the circumstances of each particular case.'"[107] Only because of the nominal amount of punitive damages awarded in *Mo-Jack* did the Court of Appeals remand for their consideration: "On remand and upon proper post-judgment motion, the trial court is instructed to consider an award of attorney fees in light of whether the punitive damages awarded are inadequate to punish and deter Clark from future similar conduct and, within its discretion, award reasonable fees."[108]  Again, this is an equitable remedy, not a cause of action, and Count VII states no viable claim.

H.    *Counts VIII and IX State No Viable Claims as "Causation" and "Punitive Damages" are Not Independent Causes of Action.*

As with his attorney fee claim, Counts VIII and IX of his Complaint state no viable causes of action as "Causation" is an element of all Chaney's claims, and "punitive damages" is a form of damages, not a cause of action.[109]

---

[107] *Mo–Jack Distrib., LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 911 (Ky. Ct. App. 2015) (citation omitted).

[108] *Id.*

[109] *See supra* Note 76.

23

## CONCLUSION

For the foregoing reasons, Defendants Appalachian Regional Healthcare, Inc. and d/b/a ARH Regional Medical Center Pharmacy and ARH Community Pharmacy; Helen Herald; and Hollie Harris a/k/a Hollie Crady, request that all claims against them be dismissed, with prejudice, that they be awarded the costs and expenses incurred in defending the same and all other relief to which Defendants may be entitled.

**APPALACHIAN REGIONAL HEALTHCARE, INC. AND D/B/A ARH REGIONAL MEDICAL CENTER PHARMACY AND ARH COMMUNITY PHARMACY; HELEN HERALD; HOLLIE HARRIS A/K/A HOLLIE CRADY**

**By Counsel:**

/s/Anders W. Lindberg
Anders W. Lindberg (KY Bar No. 93983)
Stacey Richards-Minigh (KY Bar No. 91969)
STEPTOE & JOHNSON PLLC
825 Third Avenue, Suite 400
Huntington, West Virginia 25701
(304) 526-8149
(304) 526-8089 (Fax)

Nathaniel R. Kissel (KY Bar No. 93162)
STEPTOE & JOHNSON PLLC
100 W. Main Street, Suite 400
Lexington, Kentucky 40507
(859) 219-8200
(859) 255-6903 (Fax)

18650722.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON**

**JAMES A. CHANEY**                                                     **PLAINTIFF**

|  |  |
|---|---|
| **V.** | **Civil Action No.: 6:24–cv–00007**<br>**Honorable Robert E. Wier**<br>**(Formerly Civil Action No.: 23-CI-00442**<br>**in the Circuit Court of Perry County, KY)** |

**CVS PHARMACY, INC., et al.**                                          **DEFENDANTS**

---

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 23rd day of January, 2024, a copy of the foregoing ***"Memorandum of Law in Support of Appalachian Regional Healthcare Defendants' Motion to Dismiss"*** was filed electronically with the Court. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and U.S. Mail, postage prepaid. Parties may access this filing through the Court's system:

Masten Childers, III, Esq.
Aaron M. Oppegard, Esq.
Michael W. Durborow, Esq.
Sarah E. Cooley, Esq.
Madeleine R. Hamlin, Esq.
WHITEFORD TAYLOR & PRESTON, LLP
161 N. Eagle Creek Dr., Suite 210
Lexington, Kentucky 40509
mchilders@whitefordlaw.com
aoppegard@whitefordlaw.com
mdurborow@whitefordlaw.com
scooley@whitefordlaw.com
mhamlin@whitefordlaw.com
*Counsel for Plaintiff*

Keith E. Whitson, Esq.
Jordan N. Kelly, Esq.
WHITEFORD TAYLOR & PRESTON, LLP
11 Stanwix Street, Suite 1400
Pittsburgh, Pennsylvania 15222
kwhitson@whitefordlaw.com
jkelly@whitefordlaw.com
*Co-Counsel for Plaintiff*

Christopher Chaisson, Esq.
WHITEFORD TAYLOR & PRESTON, LLP
1800 M Street NW, Suite 450N
Washington, District of Columbia 20036
*Co-Counsel for Plaintiff*

Justin S. Peterson, Esq.
Kellie M. Collins, Esq.
Laura Jane Phelps, Esq.
PETERSON LAW OFFICE, PLLC
2424 Harrodsburg Road, Suite 205
Lexington, Kentucky 40503
justin@justinpetersonlaw.com
kellie@justinpetersonlaw.com
laurajane@justinpetersonlaw.com
*Co-Counsel for Plaintiff*

18650722.3

Gene Smallwood, Esq.
P.O. Box 40
Whitesburg, KY 41858
Gslex1127@yahoo.com
*Counsel for Mountain Comprehensive
Health Corporation d/b/a
Leatherwood-Blackey Medical Clinic*

Darryl W. Durham, Esq.
Seiller Waterman, LLC
462 South Fourth Street, 22nd Floor
Louisville, KY 40202
ddurham@derbycitylaw.com
*Counsel for Defendants, CVS Pharmacy,
Inc. and Kentucky CVS Pharmacy, L.L.C.*

Randall Scott May
Davidson & Associates
Post Office Drawer 986
Hazard, KY 41702
rmay@windstream.net
*Counsel for Defendants, CVS Pharmacy,
Inc. and Kentucky CVS Pharmacy, L.L.C.*

Jay Milby Ridings, Esq.
Marcia Milby Ridings, Esq.
Hamm, Milby & Ridings PLLC
120 N. Main St.
London, KY 40741
jridings@hmrkylaw.com
marcia@hmrkylaw.com
*Counsel for Defendants Walmart Stores
East, L.P. and Mike McIntosh*

Kyle M. Virgin, Esq.
Freeman Mathis & Gary, LLP
2525 Harrodsburg Road, Suite 500
Lexington, KY 40504
Kyle.virgin@fmglaw.com
*Counsel for Defendant Hospice of the
Bluegrass, Inc.*

Ryan McGrainer
c/o CVS Pharmacy
30 South Kentucky Highway 15
Hazard, KY 41701

James Shackleford
1033 Bee Hive Rd.
Slemp, KY 41763-8910

Sherry Sutherland
131 Sutherland Dr.
Bimble, KY 40915-6131

R/X Discount Pharmacy, Inc.
c/o Richard K. Slone, Registered Agent
500 Morton Blvd.
Hazard, KY 41701

R/X Discount Pharmacy of Harzard, Inc.
c/o Richard K. Slone, Registered Agent
500 Morton Blvd.
Hazard, KY 41701

Richard K. Slone
4736 Possum Trot Road
Leburn, KY 41831

R/X Discount Pharmacy of Harlan Co. Inc.
d/b/a Clay Discount Pharmacy
c/o Richard K. Slone
306 Morton Blvd.
P.O. Box 7157
Hazard, KY 41702

Rebecca Wooten Napier
10664 N Ky Highway 15
Chavies, KY 41727

Boggs Pharmacy, Inc.
P.O. Box 747
Jenkins, KY 41537

Broadway Clinic Pharmacy, Inc.
d/b/a Medicine Cabinet Pharmacy
c/o Timothy S. Eldridge, Registered Agent
114 N. Main Cross St.
Flemingsburg, KY 41041

26

Community Drug of Manchester, Inc.
c/o Carlo Wessels, Registered Agent
250 Grandview Drive, Suite 500
Fort Mitchell, KY 41017

Michael Sizemore
5460 Slate Lick Road
London, KY 40741

Complete Care Pharmacy, PLLC
c/o Cynthia R. Williams, Registered Agent
572 Morton Blvd.
Hazard, KY 41701

Cynthia Williams
55 Lindsey Lane
Hazard, KY 41701

Lori Johnson
59 Lauren Paige Lane
Hazard, KY 41701

D.B. Coyle Enterprises, Inc.
d/b/a The Medicine Shoppe
c/o Douglas A. Coyle, Registered Agent
900 Hustonville Road
Danville, KY 40422

Tombert, Inc. d/b/a The Medicine Shoppe
c/o Thomas D. Detraz
815 County Club Lane
Hopkinsville, KY 42240

Downtown Drug, Inc.
c/o Melissa Samons, Registered Agent
90 Triangle St.
Martin, KY 41649

DSSK Pharmaceutical, Inc. and
d/b/a The Medicine Shoppe Hazard
c/o Danny Rose, Registered Agent
941 North Main Street, Suite 102
Hazard, KY 41701

Susan Fields
120 Holly Drive
Hazard, KY 41701

East Main Street Pharmacy, LLC
c/o Barry Martin, Registered Agent
101 Town and Country Lane, Suite 101
Hazard, KY 41701

Dachea Wooten
555 Ridgeview Way
Hazard, KY 41701

Family Pharmacy of Jackson
265 Highway 15 South Ste. 2
Jackson, KY 41339

Harlan Medical Center Pharmacy, Inc.
c/o Earnest J. Watts, Registered Agent
2354 HWY 15
Whitesburg, KY 41858

Ernest Watts
33 Blue Spruce Ridge
Hazard, KY 41701

Brian Key
59 Watertower Lane
Hardinsburg, KY 40143

Hometown Pharmacy of Hazard, LLC
c/o Derek Lewis, Registered Agent
221 East Main Street
Hazard, KY 41701

Hometown Pharmacy of Jackson, LLC
95 Jackson Heights
Jackson, KY 41339

Hometown Pharmacy, Inc.
c/o Derek Lewis, Registered Agent
130 HWY 80
P.O. Box 1746
Hyden, KY 41749

27

Joe Lewis
1302 N. Franklin Rd.
Indianapolis, IN 46219

Doug Morgan
105 Grapevine Place
Hazard, KY 41701

Hometown Pharmacy of Manchester, LLC
c/o Robert Goforth, Registered Agent
2163 East Highway 30
East Bernstadt, KY 40729

Matthew Hutera
c/o Hometown Pharmacy of Manchester, LLC
2163 East Highway 30
East Bernstadt, KY 40729

Jeffrey Holmes
1733 Harrodsburg Road
Lexington, KY 40504

Wendell Short
137 River Oak Circle
London, KY 40744

Howard Family Pharmacy, Inc.
c/o Wesley W. Howard, Registered Agent
1453 Prater Fork
Hueysville, KY 41640

Wesley Howard
P.O. Box 1651
Harlan, KY 40831

Johns Creek Drug Center, Inc.
c/o Donnie K. Starnes, Registered Agent
181 Starnes Drive
Pikeville, KY 41501

Donnie K. Starnes
181 Starnes Drive
Pikeville, KY 41501

Jordan Drug, Inc.
FBT LLC Lexington
2700 Lexington Financial Center
Lexington, KY 40507-1742

King Pharmacy, Inc.
c/o Leslie Scott, Registered Agent
900 Morton Blvd.
Hazard, KY 41701

Leslie Scott King
239 Artie Way
Hazard, KY 41701

Knott Prescription Center, Inc.
c/o Todd Hall, Registered Agent
59 West HWY 80, Suite 1
Hindman, KY 41822

Christopher Hall
c/o Knott Prescription Center, Inc.
59 West HWY 80, Suite 1
Hindman, KY 41822

Charles Stuard Duff
538 Ridgeview Way
Hazard, KY 41701

Lackey Pharmacy, Inc.
c/o Alora Warren, Registered Agent
2400 Abbeywood Road
Lexington, KY 40515

Verlon Banks
4236 Highway 15
Whitesburg, KY 41858

Manchester Pharmacist Group, LLC
d/b/a Family Drug Center
c/o Justin Bell, Registered Agent
2425 Williamsburg Estates Ln
Lexington, KY 40504

McDowell Professional Pharmacy, Inc.
c/o Steven Gregory Dawson, Registered
Agent
Rt. 122, Box 700
McDowell, KY 41647

Steve Dawson
230 Frasure Creek
McDowell, KY 41647

Alicia Dawson
230 Frasure Creek
McDowell, KY 41647

Med-Mart Pharmacy, LLC
c/o Mike Sizemore, Registered Agent
87 CVB Drive
London, KY 40741

The Medicine Shoppe Hyden
c/o Ronnie Stewart, Registered Agent
22044 Main St.
Hyden, KY 41749

Ronnie Stewart
16 Hickory Street
Hyden, KY 41749

Mountain Clinic Pharmacy, LLC
c/o Brooks Webb, Registered Agent
1904 North Main Street
Hazard, KY 41701

Brooks Webb
3903 Wentworth Place
Lexington, KY 40515

Parkview Pharmacy, Inc.
c/o Valerie Akers
8274 KY Route 122
Minnie, KY 41651

PEJ, Inc.
c/o Everett L. Dunaway, Registered Agent
265 Kentucky Highway 15 South, Suite 2
Jackson, KY 41339

The Plaza Pharmacy, PLLC
c/o Theresa Merced, Registered Agent
1389 HWT 15 N.
Box 606
Jackson, KY 41339

Powers Pharmacy, Inc.
c/o David Powers, Registered Agent
73 #1 Hill
P.O. Box 66
Burdine, KY 41517

Professional Pharmacy of Hazard, PLLC
c/o Daniel Glen Thies, Registered Agent
233 Orchard Street
Hazard, KY 41701

Daniel Thies
699 Phoenix Place Blvd. 96
Hazard, KY 41701

Specialty Care Center Pharmacy of E.
Kentucky
c/o Lori M. Hayden
11910 Berr Hill Road
Louisville, KY 40243

Barry Martin
3845 Real Quiet Lane
Lexington, KY 40509

Robert Burton
1418 Clear Creek Road
Hazard, KY 41701

Stallard's Pharmacy, Inc.
c/o James Craig Stallard, Registered Agent
972 HWY 317
Neon, KY 41840

James Craig Stallard
1063 Dairy Hollow
Jenkins, KY 41537

18650722.3

Walters-Griffin Enterprise, Inc.
d/b/a Superior Drug
c/o Robert J. Walters, Sr.
P.O. Box 2290
359 Hazard Rd.
Whitesburg, KY 41858

William Reed Hall
74 Ohio Street
Whitesburg, KY 41858

Robert Walters, Sr.
58 Anderson St.
Jenkins, KY 41537

Thompson Discount Drug, Inc.
c/o F. Britton Thompson, Registered Agent
810 East 4th Street
London, KY 40741

F. Britton Thompson
918 East 4th Street
London, KY 40741

Value RX Bluegrass, LLC
c/o Todd Walters, Registered Agent
21 Mink Lane
Pineville, KY 40977

Value RX II, LLC
c/o Todd Walters, Registered Agent
21 Mink Lane
Pineville, KY 40977

Todd Walters
21 Mink Lane
Pineville, KY 40977

/s/Anders W. Lindberg

18650722.3

31