1

Ex. F

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
 2                SOUTHERN DIVISION AT LONDON

 3  UNITED STATES OF AMERICA,

 4       PLAINTIFF,
                                    Criminal No. 6:14-CR-37
 5  VS.                             At London, Kentucky
                                    March 2, 2016
 6                                  2:51 p.m.

 7  JAMES ALVIN CHANEY, M.D.,
    a/k/a ACE CHANEY, LESA L. CHANEY,
 8  and ACE CLINIQUE OF MEDICINE, LLC,

 9       DEFENDANTS.

10
    EXCERPTED TRANSCRIPT OF JURY TRIAL PROCEEDINGS BEFORE
11      U.S. DISTRICT JUDGE GREGORY F. VAN TATENHOVE
        TESTIMONY OF JAMES DUSTIN "DUSTY" CHANEY, D.O.
12                   DAY 3 of 25 DAYS
    APPEARANCES:
13
    For the Plaintiff:    Hon. Andrew Sparks
14                        Hon. Roger West
                          Assistant United States Attorneys
15                        260 West Vine Street
                          Suite 300
16                        Lexington, Kentucky  40507-1612
                          (859) 685-4895
17
    For the Defendant     Hon. Elizabeth Snow Hughes
18  James A. Chaney       Green, Chesnut & Hughes, PLLC
    and Ace Clinique of   201 East Main Street, Suite 1250
19  Medicine, LLC:        Lexington, Kentucky  40507
                          (859) 475-1471
20
    For the Defendant     Hon. Robert L. Abell
21  Lesa L. Chaney:       120 North Upper Street
                          P. O. Box 983
22                        Lexington, Kentucky 40588-0983
                          (859) 254-7076
23

24         Proceedings recorded by mechanical stenography,
       transcript produced by computer.
25
```

SANDRA L. WILDER, RMR, CRR, OFFICIAL COURT REPORTER
310 South Main Street, Suite 317, London, Kentucky  40745
(859) 516-4114

EXHIBIT F

Case: 6:24-cv-00007-REW-HAI  Doc #: 60-6  Filed: 02/28/24  Page: 2 of 4 - Page ID#: 1926
Case: 6:14-cr-00037-GFVT-HAI  Doc #: 321  Filed: 06/07/16  Page: 38 of 90 - Page ID#: 4585

38

```
 1      Q.      Okay.  Now, later on, did you -- another
 2 patient, Roxy Sizemore; did you look at some of the
 3 stuff there?
 4      A.      Some of these things were seen in my
 5 KASPER, and there were -- I was getting credit for
 6 patients that I had never saw before.  There was a big
 7 mix-up between he and I because we have the first
 8 name.
 9      Q.      Okay.  Let me -- let me go back
10 specifically about Roxy Sizemore then.  Did you look
11 at that -- have contact with that file on
12 Ms. Sizemore?
13      A.      I'd never seen Ms. Sizemore, no.  I
14 never -- never saw her as a patient, that I remember.
15      Q.      Did you recall providing a statement to
16 Agent Thad Lambdin?
17      A.      When we looked at the prescriptions that
18 Ms. Sizemore was getting methadone, like 240 methadone
19 a month, and I had never saw her.
20              And that's what I was trying to say, is that
21 a lot of these people I was getting credit for seeing,
22 I had never saw.
23      Q.      Okay.  Do you know if your patients
24 usually had insurance, sir?
25      A.      My patients -- typically, most patients at
```

Case: 6:24-cv-00007-REW-HAI   Doc #: 66-6   Filed: 02/28/24   Page: 3 of 4 - Page ID#: 1984
Case: 6:14-cr-00037-GFVT-HAI   Doc #: 321   Filed: 06/07/16   Page: 77 of 90 - Page ID#: 4624

77

1  there myself, even though I didn't feel comfortable
2  going into a locked office, but, you know -- do you
3  understand what I'm trying to say?  I told him to take
4  them and give them to him when I --
5       Q.      These were totally blank prescription
6  pads, unused, not presigned?
7       A.      Correct.
8       Q.      You did not leave any presigned
9  prescriptions, although you admitted that prior to
10 your departure, you had presigned prescriptions?
11      A.      Correct.
12      Q.      None of those were on the premises, to
13 your knowledge, when you left?
14      A.      No, ma'am.  No, ma'am.
15      Q.      Now, when you talked about the mix-up
16 about Aaron Campbell and Roxy Sizemore and the
17 pharmacies -- well, you may not have said the
18 pharmacies, but I'm going to ask you about that --
19 those were -- those were prescriptions that were
20 registered as if you had written them in KASPER,
21 correct?
22      A.      Correct.
23      Q.      But in fact, it was Ace Chaney who had
24 written them, correct?
25      A.      Correct.

```
 1      Q.      And nobody had forged your name or
 2 anything else?  It was --
 3      A.      It was a pharmacy error.
 4      Q.      When it was inputted?
 5      A.      Correct.
 6      Q.      Now, Exhibit 365, I'm not going to show it
 7 to you again, it's a government exhibit of the
 8 document filed with the KBML about supervising
 9 physician.  Could that have been Greg Hoskins's
10 handwriting on that document?
11      A.      All that I can say with certainty is, is
12 that it was not mine, okay?
13              If I'm allowed to answer it that way, I could
14 say, Yeah, it could have been.  All I can say that I
15 know is that it's not mine.
16      Q.      But you also mentioned that it was -- the
17 document was notarized by Greg Hoskins's sister?
18      A.      Yes.  She was a notary, correct.
19      Q.      And she was not an employee of Ace
20 Clinique of Medicine, was she?
21      A.      No, she was not.
22      Q.      But you did supervise -- you did supervise
23 a PA Leah Pack at Primary Care; is that correct?
24      A.      At Primary Care the way things worked --
25 her name was Leah Back -- and the way things worked
```