# Kentucky Trial Court Review
The Most Current and Complete Summary of Kentucky Jury Verdicts

---

**December 2023**          Published in Louisville, Kentucky Since 1997          27 K.T.C.R. 12

*Comprehensive Statewide Jury Verdict Coverage*

**Civil Jury Verdicts**

Complete and timely coverage of civil jury verdicts including circuit, division, presiding judge, parties, case number, attorneys and results.

---

**The 2023 KTCR Year in Review is coming in January.**

It will have all the details on the 2023 verdicts, the big ones, the little ones, all of them, as well as the multipliers, judge reports, attorney index, and everything else you've relied on.

**Order the 2023 Edition**
(*Link to the online store*)

---

.

**Pharmacy Negligence/False Light** - An osteopath in Hazard pled to federal criminal charges (and was sentenced to 30 months in prison and lost his medical license) after facing charges he was a "pill mill" physician improperly prescribing opioids – in this lawsuit he blamed those devastating consequences on two pharmacies that improperly misattributed opioid prescriptions to him in reporting to the state's KASPER system, both in negligently doing so and placing him in a false light – the pharmacies conceded the misattribution (the evidence of it was clear) but denied that it had caused injury to the plaintiff as it was the federal government that prosecuted him and he pled guilty

*Chaney v. CVS et al*, 15-115
Plaintiff:  Laraclay Parker and Cody P. McIlvoy, *Golden Law Office*, and Jeffrey R. Morgan and Jeremy Morgan, *Morgan & Associates*, Hazard
Defense:  Darryl W. Durham, *Seiller Waterman*, Louisville and Richard S. Davis, Miami, FL and Robert H. Griffith, Chicago, IL, both of *Foley & Lardner* for CVS
Barry Miller, David Cecil and Elizabeth D. Gentile, *Freeman Mathis & Gary*, Lexington for Rite Aid
Verdict:  $14,000,000 for plaintiff assessed 55% to CVS and 44% Rite Aid
Court:   **Perry**
Judge:   Alison Wells
Date:    3-17-23

Dr. James Dustin Chaney (known as Dusty) is an osteopath born and raised in Perry County. He set up a practice in Hazard and operated clinic from 2010 to 2014. That clinic prescribed opioids to its patients. As a part of the prescription scheme in Kentucky, pharmacies report those (including the doctors that write the scripts) to so-called KASPER (Kentucky All Schedule Prescription Electronic Reporting). Chaney wrote thousands of prescriptions.

Two national chains with a presence in Hazard, Rite Aid and CVS, dutifully reported Chaney prescriptions to KASPER. However they also misattributed opioid prescriptions to Chaney that he had not written. It was 100 or so by CVS and 77 by Rite Aid. Rite Aid, incidentally, later lost its records of those misattributions. A third local pharmacy, RX Discount Pharmacy, similarly misattributed prescriptions to Chaney.

Although those were the only prescriptions the pharmacies conceded, there was evidence they did many more. Some were from other doctors including a relative, Dr. Ace Chaney, with a similar name. In some cases the prescriptions were filled by the pharmacies with no written prescription, without a doctor's signature, with no patient information and even when phoned in by unknown persons and placed in Chaney's name

Chaney's prescription behavior (of which some was misattributed) triggered red flags in the hunt for "pill mill" doctors who were flooding the region with opioids.. The FBI began to investigate and he was indicted in June of 2014 for illegally prescribing opioids among other charges. A year later on the eve

**EXHIBIT 1**

**INSTRUCTION NO. 4**

It was the duty of Benjamin Sullivan to operate his vehicle with the due regard for the safety of all persons, including Plaintiffs, that would be exercised by a reasonable and prudent law enforcement officer acting under similar circumstances. If you are satisfied from the evidence that Benjamin Sullivan failed to comply with this duty, and that his failure to comply with this duty was a substantial factor in causing Plaintiffs' injuries, you will find for the Plaintiffs by marking "Yes;" otherwise you will find for Benjamin Sullivan by marking "No."

Yes: ✗       No: _____

FOREPERSON (only if unanimous)

JURORS SO FINDING (if not unanimous):

*[signatures]*

*The "due regard" liability instruction*

even very minor ones. Benjamin Sullivan was on patrol that night working a special violent crime detail.

Sullivan observed a Ford 500 sedan driven by Larry Williams. Williams was out on bond for a pending felony trafficking case and was up to no good. He had a weapon in his vehicle and was motivated to avoid a police interaction. Sullivan observed Williams made a right turn without signaling. He turned on his blue lights and sirens to pull over Williams.

Williams sped away leading Sullivan to believe the car was stolen and a pursuit was on. There was evidence LMPD policy prohibited a police pursuit in cases involving minor traffic offenses. Why? Because police pursuits are incredibly dangerous and have a risk of danger to innocent persons. However there was a Special Order from the Chief at that time to allow pursuits of a stolen vehicles. Sullivan for his part denied it was a pursuit at all – he just wanted to catch up to the vehicle to get the license plate number to determine if it was stolen.

Sullivan's pursuit only lasted some 20 seconds. However Williams reached speeds of 108 mph on residential streets north of Broadway – Sullivan drove as fast at 89 mph. Sullivan discontinued the pursuit. Williams kept going. Moments after the pursuit Williams (still actively fleeing and trying to avoid a police interaction) ran a red light at the intersection of W.L. Hodge and busy Broadway. Williams was at 95 mph when he ran the light. This was near Sam's Food Mart which recorded the entire event in a chilling CCTV video.

Williams first struck a 2014 Honda Ridgeline (a pick-up) that was driven by Walter Jackson. Brent Bernier was a passenger with Jackson. The vehicle burst into flames and Jackson and Bernier were able to jump out before the fire erupted – Sullivan participated in their rescue. They did not avoid injury. Jackson suffered L2-4 fractures as well as a shoulder injury that led to a replacement. Bernier suffered a cervical fracture, a T-12 fracture, a sternal fracture, broken ribs and internal bleeding. Their injuries were undoubtedly serious.

Williams careened off the pick-up truck and struck a moped driven by Trevon Mitchell, age 22. Mitchell suffered gruesome, grotesque and fatal injuries. Mitchell's friend, Aidan Colemore, a teenager on another moped, was also struck but didn't suffer physical injuries. However Colemore complained of an emotional injury in seeing his friend die. A fifth person, John Robinson in a separate vehicle, suffered minor injuries when Williams continued on and struck his car.

The initial plaintiffs in this case, Mitchell's estate, Jackson, Bernier and Robinson, sued LMPD and alleged a negligent police pursuit by Sullivan. The case was pursued against Sullivan individually. Colemore later intervened as a plaintiff to assert his claim for emotional damages.

The heart of the case was that the pursuit never should have been initiated in the first place for a minor traffic violation. LMPD knew this in advance because its own strict policies, it was argued, prohibited such a pursuit. That policy acknowledged that limiting pursuits is wise because they are so risky and

**EXHIBIT 1**