# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

Eastern District of Kentucky
**F I L E D**

DEC 1 6 2015

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

V.                                    **SUPERSEDING INDICTMENT NO. 14-CR-37-SS-GFVT**

**JAMES ALVIN CHANEY, M.D.,**
        **aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC**
        **Registered agent:  James A. Chaney**

\*   \*   \*   \*   \*

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

    **A.**    **Dr. Chaney and his Medical Practice**

    1.    **JAMES ALVIN CHANEY** was a licensed physician in the Commonwealth of Kentucky with a specialty in general medicine.  He was permitted by the United States Department of Justice, Drug Enforcement Agency, to write or prescribe narcotic prescriptions.  **CHANEY** practiced at **ACE CLINIQUE OF MEDICINE, LLC** in Perry County, Kentucky.

    2.    **ACE CLINIQUE OF MEDICINE** is a limited liability company with a principal office at 181 Roy Campbell Drive, Hazard, Kentucky. **JAMES ALVIN CHANEY** and **LESA L. CHANEY** are the only members of **ACE CLINIQUE OF MEDICINE, LLC.**

    3.    **LESA L. CHANEY** is the wife of **JAMES ALVIN CHANEY** and the

President and Chief Executive Officer of **ACE CLINIQUE OF MEDICINE, LLC**.

      4.     **JAMES ALVIN CHANEY, LESA L. CHANEY,** and **ACE CLINIQUE OF MEDICINE, LLC** submitted claims for payment to Medicare, Kentucky Medicaid and private insurers.

      **B.**     **Controlled Substances**

      5.     21 C.F.R. § 1306.04(a) provides:  A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice.  The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription.  An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of Section 309 of the Controlled Substance Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

      6.     21 C.F.R. § 1306.05(a) provides: All prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner.

      7.     Schedule II drugs, including oxycodone, are used with severe restrictions because of their potential for abuse, which abuse may lead to severe psychological and

physical dependence.

8.     Schedule III drugs, including Hydrocodone, have a potential for abuse less than the drugs in Schedule II, but are drugs which, if abused, may lead to moderate and low physical dependence or high psychological dependence.

C.     **Medicare and Medicaid**

9.     Medicare is a health care benefit program under 18 U.S.C. § 24(b); that is, a public or private plan or contract, affecting commerce, under which medical benefits, items and services were provided to individuals.

10.     Medicare Part B (Medical Insurance) helped cover doctors' services, outpatient care, and supplies when they are ordered by a doctor and are medically necessary. Medicare Part B paid for 80% of the allowed amount of medically necessary physician services, outpatient services and other medical services. The remaining 20% of the Part B charges were to be paid by the Medicare beneficiary.

11.     Medicare Part D subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. It was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006. Part D benefits were administered by private insurance plans that were reimbursed by Medicare through CMS.

12.     Beneficiaries could obtain Part D benefits in two different ways: they could join a Prescription Drug Plan which covered only prescription drugs; or they could join a Medicare Advantage Plan that covered both prescription drugs and medical services.

13.     Typically, a Medicare beneficiary enrolled in a Medicare Part D plan would fill their prescription at a pharmacy utilizing their Medicare Part D plan coverage to pay for the prescription. The pharmacy would then submit the prescription claim for reimbursement to the Medicare Part D beneficiary's plan for payment under the beneficiary's Health Insurance Claim Number and/or Medicare Plan identification number.

14.     Medicaid was a health care benefit program under 18 U.S.C. § 24(b). Kentucky Medicaid ("Medicaid") is jointly funded by the Commonwealth of Kentucky and the federal government.  Claims for Medicaid beneficiaries were sent to the fiscal agent for the Kentucky Medicaid Management Information System for payment. Beneficiaries were required to meet certain conditions to get these benefits.

15.     The Centers for Medicare & Medicaid Services ("CMS") was a federal agency within the United States Department of Health and Human Services and was responsible for administering the Medicare and Medicaid programs. CMS had the authority to make coverage and medical necessity determinations.

16.     At all times relevant, Medicare and Medicaid prohibited payment for items and services that were not "reasonable and necessary" for the diagnosis and treatment of an illness or injury.  Medicare claim forms, for example, required the provider who made a claim for services to certify that the services were "medically indicated and necessary for the health of the patient."

17.     Federal regulations require that healthcare practitioners provide services which are provided economically and only when, and to the extent, medically necessary;

4

are of a quality which meets professionally recognized standards of healthcare; and are supported by evidence of medical necessity and quality in such form and fashion and at such time as may reasonably be required by a reviewing peer review organization in the exercise of its duties and responsibilities.  42 U.S.C. § 1395y(a)(1)(A).

18.     **JAMES ALVIN CHANEY and ACE CLINIQUE OF MEDICINE, LLC** provided services to Medicare and Medicaid beneficiaries, as well as beneficiaries insured by private health insurance plans.

**D.     Health Care Billing**

19.     Medical providers and health care benefit programs utilized well-known and standard insurance processing codes to identify the service provider, the medical diagnoses, and the medical treatments or procedures rendered to a patient.

20.     Each licensed medical provider, such as a physician, physician's assistant, or nurse practitioner, had a unique code called a National Provider Identifier, or NPI. With the NPI number, the health care provider enrolled with CMS to become eligible to bill Medicare and Medicaid for services rendered to covered beneficiaries.

21.     The Kentucky Department of Medicaid Services administers Medicaid in Kentucky.  A health care provider must undergo and pass an approval process and enter into a written provider agreement before being allowed to claim Medicaid reimbursement in Kentucky.  Upon approval, Medicaid internally assigns the provider a unique Medicaid Provider Number (MPN) that is associated with the provider's unique National Provider Identifier number and the appropriate taxonomy code.  A health care provider who submits a claim with Kentucky Medicaid is required to identify himself using his unique

5

NPI and a taxonomy code. Kentucky Medicaid receives, processes, and pays those claims according to Medicaid rules, regulations and procedures, and by matching the health care provider's NPI and taxonomy code with the internally assigned MPN.

22. The numerical codes for medical diagnoses were published in the International Classification of Diseases, Ninth Revision, Clinical Modification. The codes are commonly referred to as ICD-9 codes.

23. The numerical codes for medical procedures were published in the American Medical Association's Physicians' Current Procedural Terminology. These codes are commonly referred to as CPT codes.

24. Medical providers commonly record diagnosis and procedure codes on a form referred to as a "superbill" during the course of the examination of a patient or the performance of a medical procedure.

25. The provider's NPI and the diagnosis and procedure codes were later recorded on a standard claim form known as the CMS 1500 form, which the medical provider would send to the patient's health care benefit program, or the data from which the medical provider would submit electronically to the patient's health care benefit program, for payment. Whether submitted in paper form or electronically, the health care benefit program would rely on such information in evaluating the claims for payment.

26. When each claim was submitted for payment, either in paper form or electronically, the treating physician certified to the health care benefit program that (1) the services shown on the form were medically indicated and necessary for the health of the patient, and (2) were personally furnished by the physician or were furnished incident

to the physician's professional service by the physician's employee under his immediate personal supervision.

27.    The health care benefit programs relied on this certification, the NPI, the diagnosis codes, and the CPT codes, and only provided medical providers payment on claims if the services were medically reasonable and necessary and either personally furnished by the physician or under his immediate personal supervision.

28.    A physician cannot bill for services furnished incident to the physician's professional service by the physician's employee rendered in a hospital setting.

29.    Health care providers could submit a bill for office visits using the following evaluation and management codes for new patients: 99201, 99202, 99203, 99204 and 99205. For established patients, the following evaluation and management codes were used: 99211, 99212, 99213, 99214, or 99215. Determination of the proper CPT code depended on the nature of the office visit.  Specifically, the CPT Code described codes 99211 through 99214 as follows:

   a.    99211: Office or other outpatient visit for the evaluation and management of an established patient that may not require the presence of a physician. Usually, the presenting problem(s) are minimal. Typically, 5 minutes are spent performing or supervising these services.

   b.    99212: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: (1) a problem-focused history; (2) a problem-focused examination; (3) straightforward medical decision-making. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are self-limited or minor. Physicians typically spend 10 minutes face-to-face with the patient and/or family.

 c. 99213: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: (1) an expanded problem-focused history; (2) an expanded problem-focused examination; (3) medical decision-making of low complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of low to moderate severity. Physicians typically spend 15 minutes face-to-face with the patient and/or family.

 d. 99214: Office or other outpatient visit for the evaluation and management of an established patient, which requires at least 2 of these 3 key components: (1) a detailed history; (2) a detailed examination; (3) medical decision-making of moderate complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Physicians typically spend 25 minutes face-to-face with the patient and/or family.

 30. The more complex the office visit, the higher the rate of reimbursement for the provider. Medicare and Medicaid will only pay providers for services that are actually performed.

 **E.** **Clinical Diagnostic Laboratories**

 31. **ACE CLINIQUE OF MEDICINE, LLC** operated a clinical laboratory to test, among other things, urine drug screens.

 32. Clinical diagnostic laboratories performing high complexity testing are required to employ a sufficient number of individuals who meet the qualification requirements of 42 C.F.R. § 493.1489.

 **F.** **Urine Drug Screens**

 33. Drugs of abuse testing may be useful in the clinical setting because it may provide objective information to assist the provider in diagnosing and making treatment

decisions. Clinicians may use qualitative and quantitative drugs of abuse testing to look for the presence or absence of drugs in the body.

34.     Qualitative drug testing is generally used to determine the presence or absence of a drug or drug metabolite in the sample. The test result is expressed in non-numerical terms, with a negative or positive result.

35.     Quantitative drug testing is generally used when it is medically necessary to determine a specific quantity of drug or drug metabolite present in the sample. The test result is expressed in numerical terms.

36.     Clinicians must have choice in selecting which drugs to test and when, and all testing should be tailored to the individual patient under consideration. Providers are to carefully consider the drug/drug classes to be tested.

37.     Drugs or classes for which screening is performed should reflect only those likely to be present, based on the patient's medical history or current clinical presentation.

38.     Physicians are required to utilize urine drug screens in a random manner at appropriate times to determine whether the patient is taking prescribed medications or taking illegal substances or medications not prescribed by the physician. A patient deemed "low risk" should be screened at least once a year, a patient deemed "moderate risk" should be screened at least twice a year, and a patient considered "high risk" should be screened three to four times per year.

39.     Medicare and Medicaid do not pay for routine urine drug screening.

40.     Effective July 18, 2008, guidelines were issued under which Medicare

9

would allow payment for qualitative urine drug screening using CPT code 80101. Effective April 2010, CPT 80101 was discontinued.

41.    CPT code GO431 was thereafter temporarily set into effect to pay for only one unit of drug screening.

42.    Effective January 11, 2011, CPT code GO434 was instituted to cover drug screens using moderate complexity test methods.  Providers were allowed to bill only one unit for both GO431 and GO434.

43.    Medicare contains certain Procedure-to-Procedure edits that define when certain CPT codes should be reported together.  If certain codes are reported on the same date of service, the first code is eligible for payment while the additional codes are denied.

44.    Modifier 59 is used to bypass this edit and obtain payment for multiple procedures on the same day of service.  Modifier 59 is appropriately used only when the provider renders multiple services not ordinarily encountered or performed on the same day by the same individual.

45.    Modifier 59 should not be used to bypass a Procedure-to-Procedure edit unless the proper criteria for use of the modifier are met.

G.    **Magnetic Resonance Imaging**

46.    Magnetic resonance imaging (MRI) of the spine is an imaging technique used to determine if bone, nerve, spinal cord, vertebral disc or muscle damage exists in the cervical, thoracic or lumbar spine.  MRI is usually performed in response to a neurologic deficit.

47.     Neurologic deficit exists when muscle is atrophied, sensation is abnormal or focal weakness is noted.  A neurologic deficit usually indicates damage to the spine or impingement of a nerve.  Thus radicular pain or pain radiating from the back is an indication for MRI to rule out tumor, disc herniation or abscess impinging a nerve.

48.     After the initial evaluation, repeat MRIs of the same portion of the spine would not be indicated unless the pattern of pain changed or new neurologic deficit developed.

### Controlled Substances Scheme

### COUNT 1
### 21 U.S.C. § 846

49.     On or about March 7, 2006, the exact date unknown, and continuing through on or about October 21, 2014, in Perry County, in the Eastern District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY,
### LESA L. CHANEY,
### ACE CLINIQUE OF MEDICINE, LLC,

and others, did knowingly and intentionally conspire to unlawfully distribute and unlawfully dispense Schedule II controlled substances and Schedule III controlled substances, that is, issue prescriptions not for legitimate medical purpose and outside the usual course of professional medical practice, contrary to 21 C.F.R. § 1306.04(a),  in violation of 21 U.S.C. § 841(a) (1), and all in violation of 21 U.S.C. § 846.

## COUNTS 2-13
### 21 U.S.C. § 841(a)(1)
### 18 U.S.C. § 2

50.     On or about June 11, 2010, in Perry County, in the Eastern District of

Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

aided and abetted by others, did knowingly and intentionally unlawfully distribute and

unlawfully dispense Schedule II controlled substances by having unauthorized employees

issue prescriptions in his absence using prescriptions that he had previously signed in

blank to the individuals listed below:

| Count | Recipient | Substance | Amount |
|-------|-----------|-----------|--------|
| 2 | J. C. | Oxycodone | 60 |
| 3 | D. W. | Oxycodone | 120 |
| 4 | B. E. | Oxycodone | 120 |
| 5 | S.D. | Oxycodone | 60 |
| 6 | J.L. | Oxycodone | 120 |
| 7 | A. B. | Oxycodone | 60 + 90 |
| 8 | V. M. | Oxycodone | 120 |
| 9 | F. S. | Oxycodone | 120 |
| 10 | T. S. | Oxycodone | 120 |
| 11 | N. C. | Oxycodone | 90 |
| 12 | J. B. | Oxycodone | 60 + 60 |
| 13 | B. C. | Oxycodone | 120 |

Contrary to 21 C.F.R. § 1306.05(a), and each count in violation of 21 U.S.C. § 841(a)(1)

and 18 U.S.C. § 2.

**COUNTS 14 - 31**
21 U.S.C. § 841(a)(1)
18 U.S.C. § 2

51.    On or about June 11, 2010, in Perry County, in the Eastern District of

Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

aided and abetted by others, did knowingly and intentionally unlawfully distribute and

unlawfully dispense Schedule III controlled substances by having unauthorized

employees issue prescriptions in his absence using prescriptions that he had previously

signed in blank to each of the individuals listed below:

| Count | Recipient | Substance | Amount |
|-------|-----------|-----------|--------|
| 14 | V. S. | Hydrocodone | 90 |
| 15 | R. D. | Hydrocodone | 60 |
| 16 | D. S. | Hydrocodone | 150 |
| 17 | A.H. | Hydrocodone | 90 |
| 18 | D. S. | Hydrocodone | 60 |
| 19 | D. N. | Hydrocodone | 90 |
| 20 | B. N. | Hydrocodone | 120 |
| 21 | B.C. | Hydrocodone | 90 |
| 22 | B.F. | Hydrocodone | 120 |
| 23 | C.F. | Hydrocodone | 90 |
| 24 | P.S. | Hydrocodone | 90 |
| 25 | F.M. | Hydrocodone | 120 |
| 26 | K.C. | Hydrocodone | 60 |
| 27 | C.R. | Hydrocodone | 90 |
| 28 | G.I. | Hydrocodone | 90 |
| 29 | D.C. | Hydrocodone | 90 |
| 30 | S.T. | Hydrocodone | 60 |
| 31 | L.C. | Hydrocodone | 60 |

Contrary to 21 C.F.R. § 1306.05(a), and each count in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## COUNTS 32 - 39
### 21 U.S.C. § 841(a)(1)
### 18 U.S.C. § 2

52.     On or about June 25, 2010, in Perry County, in the Eastern District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

aided and abetted by others, did knowingly and intentionally unlawfully distribute and unlawfully dispense Schedule II controlled substances by having unauthorized employees issue prescriptions in his absence using prescriptions that he had previously signed in blank to each of the individuals listed below:

| Count | Recipient | Substance | Amount |
|-------|-----------|-----------|--------|
| 32 | B.B. | Oxycodone | 90 |
| 33 | D.E. | Oxycodone | 120 |
| 34 | L.G. | Oxycodone | 150 |
| 35 | W.H. | Oxycodone | 90 plus 60 |
| 36 | B.H. | Oxycodone | 120 |
| 37 | D.K. | Oxycodone | 120 |
| 38 | H.M. | Oxycodone | 60 |
| 39 | D.N. | Oxycodone | 120 |

Contrary to 21 C.F.R. § 1306.05(a), and each count in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## COUNTS 40 - 62
### 21 U.S.C. § 841(a)(1)
### 18 U.S.C. § 2

53.    On or about June 25, 2010, in Perry County, in the Eastern District of

Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

aided and abetted by others, did knowingly and intentionally unlawfully distribute and

unlawfully dispense Schedule III controlled substances by having unauthorized

employees issue prescriptions in his absence using prescriptions that he had previously

signed in blank to each individual listed below:

| Count | Recipient | Substance | Amount |
|-------|-----------|-----------|--------|
| 40 | E.A. | Hydrocodone | 60 |
| 41 | H.A. | Hydrocodone | 90 |
| 42 | A.B. | Hydrocodone | 60 |
| 43 | C.B. | Hydrocodone | 120 |
| 44 | C.B. | Hydrocodone | 90 |
| 45 | D.C. | Hydrocodone | 120 |
| 46 | R.C. | Hydrocodone | 60 |
| 47 | S.C. | Hydrocodone | 60 |
| 48 | R.D. | Hydrocodone | 120 |
| 49 | C.H. | Hydrocodone | 120 |
| 50 | D.H. | Hydrocodone | 90 |
| 51 | G.H. | Hydrocodone | 90 |
| 52 | C.J. | Hydrocodone | 120 |
| 53 | D.J. | Hydrocodone | 120 |
| 54 | J.L. | Hydrocodone | 120 |
| 55 | P.L. | Hydrocodone | 120 |
| 56 | B.M. | Hydrocodone | 90 |
| 57 | C.N. | Hydrocodone | 120 |
| 58 | E.S. | Hydrocodone | 150 |
| 59 | J.S. | Hydrocodone | 60 |
| 60 | A.S. | Hydrocodone | 120 |

| 61 | M.T. | Hydrocodone | 120 |
| 62 | S.S. | Hydrocodone | 90 |

Contrary to 21 C.F.R. § 1306.05(a), and each count in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## COUNT 63
### 21 U.S.C. § 856(a)

54.    On or about March 7, 2006, the exact date unknown, and continuing through on or about June 30, 2010, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY,**
**ACE CLINIQUE OF MEDICINE, LLC,**

and others, did knowingly open, lease, rent, use, and maintain a place, to wit, **ACE CLINIQUE OF MEDICINE, LLC,** located in Hazard, Perry County, Kentucky, whether permanently or temporarily, for the purpose of unlawfully distributing controlled substances, all in violation of 21 U.S.C. § 856(a).

## COUNT 64
### 21 U.S.C. § 856(a)

55.    On or about a day in November 2010, the exact date unknown, and continuing through on or about September 10, 2013, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY,**
**ACE CLINIQUE OF MEDICINE, LLC,**

and others, did knowingly open, lease, rent, use, and maintain a place, to wit, **ACE CLINIQUE OF MEDICINE, LLC,** located in Hazard, Perry County, Kentucky, whether permanently or temporarily, for the purpose of unlawfully distributing controlled substances, all in violation of 21 U.S.C. § 856(a).

**COUNT 65**
**18 U.S.C. § 1956(h)**

56.　　On or about a day in June 2006, the exact date unknown, and continuing through on or about August 22, 2014, in Perry County, in the Eastern District of Kentucky, and elsewhere,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY,**
**ACE CLINIQUE OF MEDICINE, LLC,**

and others, knowing that the property involved in financial transactions affecting interstate commerce, to wit, the transfer of United States currency, represented the proceeds from the unlawful dispensation and unlawful distribution of controlled substances and proceeds from health care fraud, did conspire to conduct such financial transactions, which, in fact, involved proceeds of specified unlawful activity, that is, the unlawful dispensation and unlawful distribution of controlled substances and health care fraud in the Eastern District of Kentucky, with the intent to promote the carrying on of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the source, the ownership, and the control of the proceeds of such specified

unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and all in violation of 18 U.S.C. § 1956(h).

**COUNT 66**
**21 U.S.C. §  843(a)(3)**
**18 U.S.C. § 2**

57.     Between on or about February 14, 2013, through on or about October 13, 2014, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**

aided and abetted by others, did knowingly and intentionally acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, all in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.

**COUNT 67**
**21 U.S.C. §  843(a)(3)**
**18 U.S.C. § 2**

58.     On or about a date in November 2010, the exact date unknown, through on or about a date in September 2014, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**

aided and abetted by others, did knowingly and intentionally acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, all in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2.

## Health Care Fraud Scheme

### COUNT 68
### 18 U.S.C. § 1349

59.   Paragraphs 1-58 are realleged and incorporated by reference.

60.   From on or about March 7, 2006 and continuing through or on about

October 21, 2014, in Perry County, in the Eastern District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY,
### LESA L. CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

did knowingly and willfully, with the intent to further the objects of the conspiracy,

combine, conspire, confederate and agree with each other and with others known and

unknown to the Grand Jury to commit certain offenses against the United States, namely,

to knowingly and willfully execute a scheme and artifice to defraud a health care benefit

program affecting commerce, as defined in Title 18, United States Code, Section 24(b),

that is, Medicare and Medicaid, and to obtain, by means of materially false and

fraudulent pretenses, representations, and promises, money and property owned by, and

under the custody and control of, said health care benefit programs, in connection with

the delivery of and payment for health care benefits, items, and services, in violation of

Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

61.   It was a purpose of the conspiracy for the defendants and their co-

conspirators to unlawfully enrich themselves by, among other things: (a) submitting false

and fraudulent claims to Medicare and Medicaid for services that were medically

unnecessary and that were not eligible for reimbursement; (b) submitting false and

fraudulent claims to Medicare and Medicaid for diagnostic tests that were medically

unnecessary; (c) submitting claims to Medicare and Medicaid that were up-coded, that

is, submitting claims that indicated the provision of a higher level of service than

actually performed; (d) submitting claims to Medicare and Medicaid for services that

falsely indicated the beneficiary was seen by a physician who was not actually present;

(e) submitting claims to Medicare and Medicaid for urine drug screens that had been

fraudulently altered to indicate either the presence or absence of controlled substances;

(f) submitting claims to Medicare and Medicaid for laboratory testing performed by

unqualified personnel; (g) submitting to Medicare and Medicaid false or fraudulent

certifications of medical necessity for durable medical equipment that was not necessary

or not ordered, personally signed, or approved by the physician; (h) causing claims to be

submitted to Medicare and Medicaid for prescriptions that were issued in violation of law

or otherwise outside the bounds of accepted medical practice, and (i) diverting proceeds

of the fraud for the personal use and benefit of the defendants.

### Manner and Means

62.    The manner and means by which the defendants sought to accomplish the

purpose of the conspiracy included, among others, the following:

63.    Beginning on or about March 7, 2006, and continuing through on or about

October 21, 2014, **JAMES ALVIN CHANEY and ACE CLINIQUE OF MEDICINE,**

**LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for urine

drug screens that had been altered at the direction of **JAMES ALVIN CHANEY** to

fraudulently reflect the patients were taking the controlled substances as prescribed or to conceal the patient's use of illicit substances.

64.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for urine drug screens that had been performed by unqualified personnel.

65.     Beginning on or about January 2010 and continuing through on or about December 2010, **JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare claims for urine drug screens that improperly used Modifier 59 to bypass Procedure to Procedure edits.

66.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for office visits as a Level Three (99213) or higher, falsely representing he performed the necessary extended examination and medical decision-making required to be reimbursed for that code.

67.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for more office visits than **JAMES ALVIN CHANEY** could

perform on a given day.

68.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for services that were not medically necessary, in that the patients had no legitimate medical need for treatment, but rather sought access to controlled substances.

69.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY** submitted and caused to be submitted to Medicare and Medicaid claims for medical services, despite evidence that the beneficiaries were not seeking medical treatment but instead were diverting the controlled substances prescribed by **JAMES ALVIN CHANEY.**

70.     Beginning on or about March 7, 2006, and continuing through on or about September 9, 2013, **JAMES ALVIN CHANEY and LESA L. CHANEY** caused to be submitted to Medicare and Medicaid claims for controlled substances by means of pre-signed but otherwise blank prescriptions that were issued by employees of **ACE CLINIQUE OF MEDICINE, LLC,** so that the employees could issue prescriptions for controlled substances when **JAMES ALVIN CHANEY** was not present at the clinic.

71.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for Magnetic Resonance Imaging tests that were not medically indicated.

72.     Beginning on or about March 7, 2006, and continuing through on or about

22

October 21, 2014, **JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC**, submitted and caused to be submitted to Medicare and Medicaid claims for diagnostic testing, including nerve conduction testing, that were performed by unqualified personnel.

73.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY** submitted and caused to be submitted to Medicare and Medicaid claims for in-patient hospital visits performed by his non-physician employees, but billed as if the service was provided by **JAMES ALVIN CHANEY**.

74.     Beginning on or about March 7, 2006, and continuing through on or about October 21, 2014, **JAMES ALVIN CHANEY and ACE CLINIQUE OF MEDICINE, LLC,** submitted and caused to be submitted to Medicare and Medicaid claims for services performed by his non-physician employees, but billed as if the service was provided by **JAMES ALVIN CHANEY**, when in fact **JAMES ALVIN CHANEY** was not present at **ACE CLINIQUE OF MEDICINE, LLC**, or otherwise did not see the patients.

All in violation of 18 U.S.C. § 1349.

**COUNTS 69-111**
**18 U.S.C. § 1347**
**18 U.S.C. § 2**

Magnetic Resonance Imaging Scheme

75.     The Grand Jury incorporates by reference Paragraphs 1 through 74 as if fully restated and alleged herein.

76.    On or about the dates enumerated below, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

with others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and private health plans, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefits programs, in connection with the delivery of and payment for health care benefits, items, and services, by causing the submission to Medicare, Medicaid and private health plans materially false and fraudulent claims for services, specifically, for Magnetic Resonance Imaging exams, that were not medically indicated or necessary to those beneficiaries:

| Count | Date | Intervention | Beneficiary | Payor |
|-------|------|--------------|-------------|-------|
| 69 | 4/30/13 | MRI lumbar spine | C.C. | Medicare |
| 70 | 2/14/11 | MRI cervical spine | P.C. | Wellcare of Kentucky |
| 71 | 2/16/11 | MRI lumbar spine | P.C. | Wellcare of Kentucky |
| 72 | 2/16/12 | MRI lumbar spine | P.C. | Wellcare of Kentucky |
| 73 | 3/13/12 | MRI cervical spine | P.C. | Wellcare of Kentucky |
| 74 | 3/14/13 | MRI lumbar spine | P.C. | Wellcare of Kentucky |
| 75 | 12/30/10 | MRI cervical spine | M.G. | Medicare |
| 76 | 11/9/11 | MRI lumbar spine | M.G. | Medicare |
| 77 | 3/15/12 | MRI cervical spine | M.G. | Medicare |
| 78 | 5/7/13 | MRI lumbar spine | M.G. | Medicare |
| 79 | 7/22/13 | MRI thoracic spine | M.G. | Medicare |
| 80 | 4/22/11 | MRI lumbar spine | W.M. | Medicare |

| 81 | 10/17/11 | MRI cervical spine | W.M. | Medicare |
| 82 | 8/28/12 | MRI lumbar spine | W.M. | Medicare |
| 83 | 10/29/12 | MRI cervical spine | W.M. | Medicare |
| 84 | 9/24/12 | MRI lumbar spine | W.R. | Wellcare of Kentucky |
| 85 | 10/1/12 | MRI lumbar spine | W.R. | Wellcare of Kentucky |
| 86 | 2/13/13 | MRI cervical spine | W.R. | Wellcare of Kentucky |
| 87 | 10/3/11 | MRI lumbar spine | W.S. | Medicare |
| 88 | 1/23/12 | MRI cervical spine | W.S. | Medicare |
| 89 | 11/13/12 | MRI lumbar spine | W.S. | Medicare |
| 90 | 3/19/13 | MRI cervical spine | W.S. | Medicare |
| 91 | 7/26/10 | MRI lumbar spine | R.S. | Blue Cross/Blue Shield |
| 92 | 4/22/10 | MRI lumbar spine | T.W. | Medicare |
| 93 | 6/24/10 | MRI cervical spine | T.W. | Medicare |
| 94 | 7/20/10 | MRI thoracic spine | T.W. | Medicare |
| 95 | 9/9/10 | MRI lumbar spine | T.W. | Medicare |
| 96 | 9/13/10 | MRI cervical spine | T.W. | Medicare |
| 97 | 8/25/11 | MRI lumbar spine | T.W. | Medicare |
| 98 | 11/29/11 | MRI cervical spine | T.W. | Medicare |
| 99 | 9/26/12 | MRI lumbar spine | T.W. | Medicare |
| 100 | 5/1/13 | MRI cervical spine | T.W. | Medicare |
| 101 | 9/17/12 | MRI lumbar spine | L.B. | Kentucky Farm Bureau |
| 102 | 6/17/11 | MRI lumbar spine | E.B. | Medicare |
| 103 | 12/13/11 | MRI cervical spine | E.B. | Medicare |
| 104 | 11/13/12 | MRI lumbar spine | E.B. | Medicare |
| 105 | 9/17/10 | MRI lumbar spine | B.H. | Medicare |
| 106 | 4/4/12 | MRI lumbar spine | B.H. | Medicare |
| 107 | 6/4/12 | MRI cervical spine | B.H. | Medicare |
| 108 | 9/29/10 | MRI lumbar spine | M.M. | Medicare |
| 109 | 12/6/11 | MRI lumbar spine | M.M. | Medicare |
| 110 | 8/30/11 | MRI lumbar spine | C.S. | Medicare |
| 111 | 2/27/12 | MRI cervical spine | C.S. | Medicare |

Each count in violation of 18 U.S.C. §§ 1347 and 2.

## COUNTS 112-122
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

Urine Drug Screen Scheme – unnecessary tests

77.    The Grand Jury incorporates by reference Paragraphs 1 through 76 as if

fully restated and alleged herein.

78.     On or about the dates enumerated below, in Perry County, in the Eastern

District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY,
### LESA L. CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

with others known and unknown to the Grand Jury, knowingly and willfully executed and

attempted to execute a scheme and artifice to defraud a health care benefit program

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare, Medicaid, and private health plans, and to obtain by means of materially false

and fraudulent pretenses, representations and promises, money and property owned by,

and under the custody and control of, said health care benefits program, in connection

with the delivery of and payment for health care benefits, items, and services, by causing

the submission to Medicare, Medicaid, and private health plans, of materially false and

fraudulent claims for services, specifically, for urine drug screens that were not medically

indicated or necessary to those beneficiaries:

| Count | Date | Number of UDS | Opioid Risk Assessment | Beneficiary | Payor |
|-------|------|---------------|------------------------|-------------|-------|
| 112 | 3/3/10 – 8/12/13 | 24 | Low | C.C. | Medicare |
| 113 | 9/7/10 – 8/20/13 | 35 | Low | P.C. | Wellcare of Kentucky |
| 114 | 10/15/10 – 8/12/13 | 34 | Low | M.G. | Medicare |
| 115 | 8/23/10 – 8/14/13 | 36 | None | W.M. | Medicare |
| 116 | 6/3/09 – 8/13/13 | 18 | Low | W.R. | Wellcare of Kentucky |
| 117 | 9/20/10 – 8/26/13 | 31 | Low | W.S. | Medicare |

| 118 | 7/16/10 – 6/28/11 | 10 | None | R.S. | Blue Cross/Blue Shield |
| 119 | 1/19/11 – 8/7/13 | 40 | Low | T.W. | Medicare |
| 120 | 5/17/10 – 8/13/13 | 36 | Low | E.B. | Medicare |
| 121 | 1/5/12 – 9/4/13 | 18 | Low | J.C. | Medicare |
| 122 | 6/15/11 – 8/19/13 | 18 | Low | R.S. | Medicare |

Each count in violation of 18 U.S.C. §§ 1347 and 2.

### COUNTS 123-147
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

Urine Drug Screen Scheme – altered test results

79.    The Grand Jury incorporates by reference Paragraphs 1 through 78 as if fully restated and alleged herein.

80.    On or about the dates enumerated below, in Perry County, in the Eastern District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY,
### and ACE CLINIQUE OF MEDICINE, LLC,

with others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicaid, and private health plans, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefits program, in connection with the delivery of and payment for health care benefits, items, and services, by causing the submission to Medicare, Medicaid, and private health plans, of materially false and

fraudulent claims for services, specifically, **JAMES ALVIN CHANEY** directed the staff

at **ACE CLINIQUE OF MEDICINE, LLC,** to alter laboratory results for urine drug

screens to fraudulently reflect either the presence of controlled substances that were

prescribed to the patient or absence of controlled or illicit substances that were not

prescribed to the patient, in connection with the delivery of and payment for health care

benefits, items and services involving Medicare, Medicaid, and private health plans,

health care benefit programs as defined in 18 U.S.C. § 24(b):

| Count | Date | Beneficiary | Payor |
|-------|------|-------------|-------|
| 123 | 12/17/12; 3/20/13; 12/18/13; 1/20/14; 2/19/14; 3/20/14 | B.V. | Blue Cross/ Blue Shield |
| 124 | 8/09/12;10/31/12; 11/29/12; 11/13/13;1/9/14 | J.A. | Medicaid |
| 125 | 12/18/12; 10/3/13 | B.A. | Medicaid |
| 126 | 8/16/10; 9/15/10 | N.A. | Medicaid |
| 127 | 2/4/10; 6/7/12; 9/16/13; 10/15/13; 11/13/13 | T.A. | Medicaid |
| 128 | 5/15/13; 8/12/13; 9/14/13; 11/14/13 | D.A. | Medicaid |
| 129 | 8/14/13; 9/16/13; 10/15/13; 12/16/13; 1/14/14; 2/12/14 | T.B. | Medicaid |
| 130 | 2/26/13; 9/25/13; 1/28/14; 2/25/14 | D.B. | Medicaid |
| 131 | 9/19/13; 11/20/13 | B.B. | Medicaid |
| 132 | 8/16/10; 3/28/12; 12/19/12; 3/20/14; 10/22/14 | T.B. | Medicaid |
| 133 | 9/19/13; 10/17/13; 12/17/13 1/21/14; 2/20/14 | V.C. | Medicaid |
| 134 | 12/10/13 | B.A. | Medicaid |
| 135 | 4/30/14 | J.A. | Medicaid |
| 136 | 12/4/13 | M.A. | Medicaid |
| 137 | 8/16/10; 4/11/11 | L.A. | Medicaid |
| 138 | 9/19/13 | T.A. | Medicaid |
| 139 | 9/23/13; 10/24/13 | M.A. | Medicaid |
| 140 | 7/22/10 | G.B. | Medicaid |
| 141 | 8/13/10 | K.B. | Medicaid |
| 142 | 1/17/13; 2/5/14 | M.B. | Medicaid |
| 143 | 10/22/13; 12/19/13 | R.B. | Medicaid |

| 144 | 6/7/11; 10/2/13 | W.C. | Medicaid |
| 145 | 7/24/12; 12/19/13 | J.C. | Medicaid |
| 146 | 12/5/12 | E.C. | Medicaid |
| 147 | 5/15/13; 8/20/13; 12/5/13; 3/25/14 | C.C. | Medicaid |

Each count in violation of 18 U.S.C. §§ 1347 and 2.

## COUNTS 148-196
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

Hospital Billings

81.    The Grand Jury incorporates by reference Paragraphs 1 through 80 as if fully restated and alleged herein.

82.    On or about the dates enumerated below, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

with others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefits program, in connection with the delivery of and payment for health care benefits, items, and services, by causing the submission to Medicare and Medicaid of materially false and fraudulent claims for services, specifically, **JAMES ALVIN CHANEY** billed for services rendered at Appalachian

Regional Hospital as if the services were performed by **JAMES ALVIN CHANEY**

when, in fact, **JAMES ALVIN CHANEY** was not physically present and did not render

the services himself:

| Count | Date Out of Country | Patient(s) Billed | Payor |
|-------|---------------------|-------------------|-------|
| 148 | 6/28/14 – 7/6/14 | R.W. | Medicaid |
| 149 | 5/15/14 – 5/18/14 | D.S.; S.S.; C.W. | Medicaid |
| 150 | 4/3/14 – 4/6/14 | V.L.; E.S. | Medicaid |
| 151 | 7/3/13 – 7/7/13 | V.S.; C.S.; G.B. | Medicare |
| 152 | 5/23/13 – 5/26/13 | E.C.; R.W. | Medicare |
| 153 | 5/23/13 – 5/26/13 | C.P.; D.R. | Medicaid |
| 154 | 4/4/13 – 4/7/13 | J.G.; E.M. | Medicare |
| 155 | 4/4/13 – 4/7/13 | B.S. | Medicaid |
| 156 | 3/14/13 – 3/17/13 | I.C.; L.D.; B.F.; R.G.; E.H.; A.L.; B.M.; D.W. | Medicare |
| 157 | 3/14/13 – 3/17/13 | D.R.; S.S.; C.W. | Medicaid |
| 158 | 3/7/13 – 3/10/13 | L.C.; J.D.; L.D.; E.H.; E.M.; W.P.; G.P.; J.S., J.T. | Medicare |
| 159 | 3/7/13 – 3/10/13 | C.P. | Medicaid |
| 160 | 1/31/13 – 2/3/13 | E.M.; C.P.; L.R. | Medicaid |
| 161 | 1/31/13-2/3/13 | T.F.; C.F.; R.H.; G.P.; B.W. | Medicare |
| 162 | 12/30/12 – 1/1/13 | W.C.; P.F.; U.H.; E.M.; E.M.; S.O.; V.S. | Medicare |
| 163 | 12/30/12 – 1/1/13 | B.S. | Medicaid |
| 164 | 11/23/12 – 11/25/12 | U.H. | Medicare |
| 165 | 11/23/12 – 11/25/12 | E.M.; B.S. | Medicaid |
| 166 | 9/13/12 – 9/16/12 | D.A.; L.C.; E.C.; R.E.; E.H.; G.H.; W.P.; B.R.; W.S. | Medicare |
| 167 | 9/13/12 – 9/16/12 | M.J.; J.N. | Medicaid |
| 168 | 8/16/12 – 8/19/12 | E.M.; J.N.; W.P.; C.S.; D.T.; Z.W. | Medicare |
| 169 | 8/16/12 – 8/19/12 | E.S. | Medicaid |
| 170 | 6/30/12 – 7/8/12 | I.C.; A.L.; R.S. | Medicare |
| 171 | 6/30/12 – 7/8/12 | H.R.; D.R. | Medicaid |
| 172 | 5/31/12 – 6/3/12 | I.C.; S.G.; N.J.; L.W. | Medicare |
| 173 | 5/31/12 – 6/3/12 | V.L. | Medicaid |
| 174 | 4/26/12 – 4/29/12 | A.H. | Medicare |
| 175 | 3/22/12 – 3/25/12 | G.B.; A.H.; R.R.; J.S. | Medicare |

| | | | Medicaid |
|---|---|---|---|
| 176 | 3/22/12 – 3/25/12 | V.L.; L.R. | Medicaid |
| 177 | 3/15/12 – 3/18/12 | L.C. | Medicare |
| 178 | 1/27/12 – 1/29/12 | R.W. | Medicaid |
| 179 | 12/25/11 – 1/1/12 | S.M. | Medicare |
| 180 | 11/3/11 – 11/6/11 | S.G. | Medicare |
| 181 | 9/1/11 – 9/5/11 | C.S.; R.T. | Medicaid |
| 182 | 8/12/11 – 8/14/11 | S.E.; W. H.; S.M.; A.R. | Medicare |
| 183 | 8/12/11 – 8/14/11 | A.M.; N.N.; C.S.; D.S.; E.S.; S.S. | Medicaid |
| 184 | 8/5/11 – 8/7/11 | T.H. | Medicare |
| 185 | 8/5/11 – 8/7/11 | A.M.; C.S.; D.S.; R.W. | Medicaid |
| 186 | 6/9/11 – 6/12/11 | E.H.; G.H. | Medicare |
| 187 | 6/9/11 – 6/12/11 | D.S. | Medicaid |
| 188 | 5/27/11 – 5/30/11 | C.C. | Medicare |
| 189 | 4/22/11 – 4/24/11 | M.J.; A.R.; R.S. | Medicare |
| 190 | 4/22/11 – 4/24/11 | A.M.; C.S.; C.W. | Medicaid |
| 191 | 4/15/11 – 4/17/11 | N.C.; B.D.; F.M. | Medicare |
| 192 | 4/15/11 – 4/17/11 | A.M.; D.S.; C.S.; E.S.; C.W. | Medicaid |
| 193 | 6/10/10 – 6/13/10 | E.S. | Medicaid |
| 194 | 5/22/10 – 5/23/10 | R.S. | Medicare |
| 195 | 5/22/10 – 5/23/10 | N.N.; D.S. | Medicaid |
| 196 | 7/29/09 – 8/2/09 | E.S. | Medicaid |

Each count in violation of 18 U.S.C. §§ 1347 and 2.

## COUNT 197
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

83.     The Grand Jury incorporates by reference Paragraphs 1 through 82 as if fully restated and alleged herein.

84.     On or about March 19, 2013, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

with others known and unknown to the Grand Jury, knowingly and willfully executed and

attempted to execute a scheme and artifice to defraud a health care benefit program

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is,

Medicare and Medicaid, and to obtain by means of materially false and fraudulent

pretenses, representations and promises, money and property owned by, and under the

custody and control of, said health care benefits program, in connection with the delivery

of and payment for health care benefits, items, and services, by causing the submission to

Medicare and Medicaid of materially false and fraudulent claims for services, in that

**JAMES ALVIN CHANEY** billed for a level of services rendered at **ACE CLINIQUE**

**OF MEDICINE, LLC,** for a number of patients that could not have been performed in

one day, specifically, **JAMES ALVIN CHANEY** documented office visits for over fifty

patients, as well as documented hospital rounds for ten patients, all on March 19, 2013.

All in violation of 18 U.S.C. §§ 1347 and 2.

**COUNTS 198-220**
**18 U.S.C. § 1035**
**18 U.S.C. § 2**

Pre-signed Prescriptions Scheme

85.     The Grand Jury incorporates by reference Paragraphs 1 through 84 as if

fully restated and alleged herein.

86.     On or about the dates enumerated below, in Perry County, in the Eastern

District of Kentucky,

### JAMES ALVIN CHANEY, M.D.,
### aka ACE CHANEY,
### LESA L. CHANEY, and
### ACE CLINIQUE OF MEDICINE, LLC,

aided and abetted by G.H., R.C., and others, knowingly and willfully falsified, concealed, and covered up by a trick, scheme and device a material fact, in that **JAMES ALVIN CHANEY** pre-signed prescriptions for controlled substances but otherwise left the prescription blank, to be completed by non-physician personnel at the **ACE CLINIQUE OF MEDICINE, LLC,** when **JAMES ALVIN CHANEY** was not physically present in the clinic, in connection with the delivery of and payment for health care benefits, items and services involving Medicare and Medicaid, health care benefit programs as defined in 18 U.S.C. § 24(b):

| Count | RX Number | Date Written | Payor |
|-------|-----------|--------------|-------|
| 198 | 0303429 | 6/11/10 | Medicare |
| 199 | 0303429 | 6/11/10, refilled 7/9/10 | Medicare |
| 200 | 0303429 | 6/11/10, refilled 8/9/10 | Medicare |
| 201 | 211181 | 6/25/10 | Medicare |
| 202 | 1656740 | 6/25/10 | Medicare |
| 203 | 1656740 | 6/25/10, refilled 7/23/10 | Medicare |
| 204 | 2006147 | 6/25/10 | Medicare |
| 205 | 1128725 | 7/6/12 | Medicare |
| 206 | 0783313 | 6/11/10 | Medicaid |
| 207 | 0783345 | 6/11/10 | Medicaid |
| 208 | 0303570 | 6/11/10 | Medicaid |
| 209 | 0303501 | 6/11/10 | Medicaid |
| 210 | 0305925 | 6/25/10 | Medicaid |
| 211 | 0211131 | 6/25/10 | Medicaid |
| 212 | 4196526 | 6/25/10 | Medicaid |
| 213 | 0219310 | 6/25/10 | Medicaid |
| 214 | 4020422 | 6/11/10 | Medicaid |
| 215 | 2006446 | 6/25/10 | Medicaid |

| 216 | 4033549 | 12/30/11 | Medicaid |
| 217 | 0648192 | 6/11/10 | Medicaid |
| 218 | 0649377 | 6/25/10 | Medicaid |
| 219 | 759025 | 3/15/13 | Medicaid |
| 220 | 0541646 | 6/11/10 | Medicaid |

Each count in violation of 18 U.S.C. §§ 1035 and 2.

**COUNTS 221-233**
**18 U.S.C. § 1035**
**18 U.S.C. § 2**

Pre-signed Certificates of Medical Necessity Scheme

87.     The Grand Jury incorporates by reference Paragraphs 1 through 86 as if fully restated and alleged herein.

88.     On or about the dates enumerated below, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

knowingly and willfully made and used  materially false writings and documents, specifically,  certifications of medical necessity for back braces, knowing the same to contain materially false, fictitious, and fraudulent entries, in that  the certifications were pre-signed by **JAMES ALVIN CHANEY** so that they could be completed and issued by the employees of **ACE CLINIQUE OF MEDICINE, LLC**, in connection with the delivery of and payment for health care benefits, items and services involving Medicare and Medicaid,  health care benefit programs as defined in 18 U.S.C. § 24(b):

34

| Count | Date | Beneficiary | Payor |
|-------|------|-------------|-------|
| 221 | 4/29/10 | B.W. | Medicare |
| 222 | 5/13/10, 5/14/10 | V.M. | Medicare |
| 223 | 5/20/10 | D.S. | Medicaid |
| 224 | 5/21/10, 5/24/10 | H.P. | Medicare |
| 225 | 7/16/10, 7/21/10 | T.B. | Medicare |
| 226 | 8/04/10 | R.W. | Medicare |
| 227 | 8/06/10 | H.S. | Medicare |
| 228 | 8/13/10 | E.S. | Medicare |
| 229 | 8/19/10 | G.H. | Medicare |
| 230 | 8/26/10 | J.S. | Medicare |
| 231 | 9/01/10 | D.R. | Medicare |
| 232 | 9/10/10 | T.B. | Medicare |
| 233 | 9/29/10 | L.W. | Medicare |

Each count in violation of 18 U.S.C. §§ 1035 and 2.

## COUNT 234
### 18 U.S.C. § 1347
### 18 U.S.C. § 2

89.    The Grand Jury incorporates by reference Paragraphs 1 through 88 as if fully restated and alleged herein.

90.    From on or about August 28, 2013, until October 21, 2014, in Perry County, in the Eastern District of Kentucky,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

with others known and unknown to the Grand Jury, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and  Medicaid, and to obtain by means of materially false and fraudulent

pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefits program, in connection with the delivery of and payment for health care benefits, items, and services, by causing the submission to Medicare and Medicaid of materially false and fraudulent claims for services, in that

**JAMES ALVIN CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** billed for nerve conduction studies performed at **ACE CLINIQUE OF MEDICINE, LLC,** by R.C., an individual with no formal medical training who was unqualified to perform the tests.

All in violation of 18 U.S.C. §§ 1347 and 2.

### COUNTS 235-255
### 18 U.S.C. § 1957

91.     On or about the dates set forth below in Perry County, in the Eastern District of Kentucky and elsewhere,

**JAMES ALVIN CHANEY, M.D.,**
**aka ACE CHANEY,**
**LESA L. CHANEY, and**
**ACE CLINIQUE OF MEDICINE, LLC,**

knowingly engaged in monetary transactions through a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of United States currency and funds, such property having been derived from a specified unlawful activity, that is, the unlawful dispensation and unlawful distribution of controlled substances and from health care fraud:

| Count | Date, on or about | Check No. and Bank | Amount | Payee |
|---|---|---|---|---|
| 235 | 3/9/11 | 15202, Peoples Bank #0676 | $21,870.47 | American Express |
| 236 | 4/12/11 | 15073, Whitaker Bank | $21,551.44 | American Express |
| 237 | 5/9/11 | 15314, Peoples Bank #0676 | $21,128.12 | American Express |
| 238 | 6/14/11 | 15397, Peoples Bank #0676 | $50,715.86 | American Express |
| 239 | 7/11/11 | 15460, Peoples Bank #0676 | $13,375.99 | American Express |
| 240 | 9/8/11 | 16610, Peoples Bank #0676 | $11,816.46 | American Express |
| 241 | 10/17/11 | 16714, Peoples Bank #0676 | $13,394.06 | American Express |
| 242 | 12/13/11 | 16839, Peoples Bank #0676 | $19,816.96 | American Express |
| 243 | 3/19/12 | 16071, Peoples Bank #0676 | $16,702.49 | American Express |
| 244 | 4/17/12 | 16141, Peoples Bank #0676 | $18,185.50 | American Express |
| 245 | 5/17/12 | 16174, Peoples Bank #0676 | $14,919.23 | American Express |
| 246 | 7/16/12 | 16296, Peoples Bank #0676 | $26,862.15 | American Express |
| 247 | 8/15/12 | 16357, Peoples Bank #0676 | $21,174.74 | American Express |
| 248 | 8/24/12 | 16574, Peoples Bank #0676 | $21,120.41 | American Express |
| 249 | 9/17/12 | 16413, Peoples Bank #0676 | $18,152.00 | American Express |
| 250 | 10/5/12 | 16449, Peoples Bank #0676 | $10,104.15 | American Express |
| 251 | 11/13/12 | 17516, Peoples Bank #0676 | $13,775.46 | American Express |
| 252 | 12/21/12 | 17609, Peoples Bank #0676 | $92,566.78 | American Express |
| 253 | 2/13/13 | 16988, Peoples Bank #0676 | $15,748.99 | American Express |
| 254 | 4/13/13 | 17803, Peoples Bank #0676 | $10,308.45 | American Express |

| 255 | 5/13/13 | 17879, Peoples Bank #0676 | $10,186.86 | American Express |

Each count in violation of 18 U.S.C. § 1957.

## COUNT 256
### 18 U.S.C. § 1519
### 18 U.S.C. § 2

92.     On or about a day in early December 2014, in Perry County, in the Eastern District of Kentucky,

**LESA L. CHANEY,**

aided and abetted by M.B., did knowingly alter, destroy, mutilate, conceal and cover up records and documents with the intent to impede, obstruct, and influence the investigation or proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation and in relation to and in contemplation of a criminal investigation, to wit: after learning that R.C. had testified before a federal grand jury and would not be returning to work at Ace Clinique of Medicine, LLC, **LESA L. CHANEY** destroyed documents and records located in R.C.'s office at Ace Clinique of Medicine, LLC.

All in violation of 18 U.S.C. §§ 1519 and 2.

## FORFEITURE ALLEGATION
### 21 U.S.C. § 853
### 18 U.S.C. § 982(a)(1)
### 18 U.S.C. § 982(a)(7)

1. In committing the offenses alleged in Counts 1-64, 66, and 67 of this Second Superseding Indictment, the same being punishable by imprisonment for more than one year, **JAMES ALVIN CHANEY, M.D., aka ACE CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** used and intended to use, the below-

38

described property to commit and to facilitate the commission of the said controlled substance violations, and the below-described property constitutes proceeds obtained directly and indirectly as a result of the commission of the aforesaid violations of 21 U.S.C. §§ 841(a)(1), 846, 856(a) and 843(a)(3);

2. In committing the felony offenses alleged in Counts 65 and 235-255 of this Second Superseding Indictment, punishable by imprisonment for more than one year, **JAMES ALVIN CHANEY, M.D., aka ACE CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any property involved in the 18 U.S.C. §§ 1956(h) and 1957 offenses or any property traceable to such property, including, but not limited to, the below listed property;

3. In committing the felony offenses alleged in Counts 68-234 of this Second Superseding Indictment, punishable by imprisonment for more than one year, **JAMES ALVIN CHANEY, M.D., aka ACE CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7) any property, real or personal, that constitutes of is derived, directly or indirectly, from gross proceeds traceable to the commission of the 18 U.S.C. §§ 1349, 1347, and 1035 offenses, including, but not limited to, the following property:

**REAL PROPERTY:**

1. Real property known as 181 Roy Campbell Drive (including the building in which Ace Clinique operates) located in Perry County, Kentucky, being all of the same property conveyed to James A. Chaney and Lesa L. Chaney by Deed of Conveyance dated September 5, 2006, of record in Deed Book 325, Page 593, in the records of the Perry County Clerk.

2. Real property known as "Rebo's Recovery Center," Perry County Map No. 086-20 05 012.02, being the same property conveyed to James A. Chaney, M.D. and Lesa L. Chaney, by General Warranty Deed dated August 14, 2007, of record in Deed Book 333, Page 215, in the records of the Perry County Clerk.

3. Real property known as "Various parcels across from hospital," Perry County Map No. 086-20-03 034.03, being the same property conveyed to James A. Chaney, M.D. and Lesa Chaney by Deed of Conveyance recorded in Deed Book 352, Page 707, on May 11, 2010, in the records of the Perry County Clerk.

4. Real property known as 373 Vista Drive located in Perry County, Kentucky, being all of the same property conveyed to James A. Chaney, M.D. and/or Lesa L. Chaney by the following three instruments recorded in the office of the Perry County Clerk:
     a) Deed dated July 19, 1994 in Deed Book 247, Page 609;
     b) Deed of Correction dated September 30, 1994, in Deed Book 249, Page 68; and
     c) General Warranty Deed dated January 21, 1999, in Deed Book 273, Page 60.

5. Real property known as 106 Argyll Circle located in Perry County, Kentucky, being all of the same property conveyed to James A. Chaney and Lesa Chaney by Deed dated June 22, 2009, of record in Deed Book 347, Page 47, in the records of the Perry County Clerk.

6. The Hangar Building at Highway 15 Airport located in Perry County, Kentucky, Map No. 058-00 00 002.01 L 18 (no deed recorded).

**CASH/CURRENCY:**

1. $285,507.49 in United States currency;

2. $6,280.00 in United States currency;

3. $70,456.26 in funds from Passbook Savings Account #xxx075 in the names of James & Lesa Chaney at Peoples Bank & Trust in Hazard, Kentucky; and

4. $8,567.49 in funds from Business Checking Account #xxx-xx-252 in the name of ACE Clinique of Medicine at Whitaker Bank in Hazard, Kentucky.

## VEHICLES/CONVEYANCES:

1. 2012 Bentley Continental GT AWD Coupe, VIN SCBFR7ZA8CC072106;

2. 2003 Dodge Viper, VIN 1B3JR65Z33V501476;

3. 2005 Hummer H2, VIN 5GRGN23U85H102101;

4. 2009 EZ-Rider Homesteader Trailer, VIN 5HABE162X9N000715;

5. 2008 Mercedes Benz S550, VIN WDDNG86X28A225195;

6. 2009 Cadillac Escalade, VIN 1GYFK26209R201246;

7. 2003 Mercedes Benz SL500, VIN WDBSK75F23F041951;

8. 2001 Harley Davidson FXDL Dyna Low Rider Motorcycle, VIN 1HD1GDV141Y335675;

9. 2008 Mercedes-Benz S63, VIN WDDNG77X58A152722;

10. 2010 Kubota RTV1100 Utility Vehicle, SAE# J2194 VIN KRTV10071010350; and

11. 1979 Beech King Air 200 Airplane, tail # N902AC, serial # BB596.

## MONEY JUDGMENT

$23,352,899.00 which sum represents the gross proceeds in aggregate obtained by the defendants, **JAMES ALVIN CHANEY, M.D., aka ACE CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,** as the result of the aforesaid violations, and for which these defendants are jointly and severally liable.

By virtue of the commission of the felony offenses charged in this Second

Superceding Indictment, any and all interest **JAMES ALVIN CHANEY, M.D., aka**

**ACE CHANEY, LESA L. CHANEY, and ACE CLINIQUE OF MEDICINE, LLC,**

have in the above-described property is vested in the United States and hereby forfeited

to the United States pursuant to 21 U.S.C. § 853, 18 U.S.C. § 982(a)(1), and 18 U.S.C.

§ 982(a)(7).

If any of the property listed above, as a result of any act or omission of the defendants,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property in which the above defendants have an interest, up to the value of the currency described above, and any other property of the defendants not specifically listed in the indictment.

**A TRUE BILL**


**KERRY B. HARVEY**
**UNITED STATES ATTORNEY**

## PENALTIES

**COUNT 1:**  **Schedule II Controlled Substances:**
Not more than 20 years imprisonment, not more than $1,000,000 fine, and at least 3 years supervised release.

**Schedule III Controlled Substances:**
Not more than 10 years imprisonment, not more than $500,000 fine, and at least 2 years supervised release.

**COUNTS 2-13, 32-39:**

Not more than 20 years imprisonment, not more than $1,000,000 fine, and at least 3 years supervised release.

**COUNTS 14 – 31, 40-62 :**

Not more than 10 years imprisonment, not more than $500,000 fine, and at least 2 years supervised release.

**COUNTS 63-64:**

Not more than 20 years imprisonment, not more than $500,000 fine, and not more than 3 years supervised release.

**COUNT 65:**  Not more than 20 years imprisonment, not more than $500,000 fine or twice the value of the property involved in the transaction, whichever is greater, and a term of supervised release of not more than 3 years.

**COUNTS 66-67:**  Not more than 4 years imprisonment, not more than a $250,000 fine, and a term of supervised release of not more than 1 year.

**COUNTS 68-197, 234:**

Not more than 10 years imprisonment, not more than $500,000 fine, and not more than 3 years supervised release.

**COUNTS 198-233:**  Not more than 5 years imprisonment, not more than $500,000 fine, and not more than 3 years supervised release.

**COUNTS 235-255:**  Not more than 10 years imprisonment, not more than $250,000 fine, or twice the value of the property involved in the transaction,

whichever is greater, and a term of supervised release of not more than 3 years.

**COUNT: 256**      Not more than 20 years imprisonment, not more than $250,000 fine, and not more than 3 years supervised release

**PLUS:**      Forfeiture of listed assets.

**PLUS:**      Mandatory special assessment of $100 per felony offense.

**PLUS:**      Restitution, if applicable.