# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

FILED ELECTRONICALLY

NO. 14-CR-00037-SS-GFVT

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | |
| JAMES A. CHANEY, AND<br>ACE CLINIQUE OF MEDICINE, LLC | DEFENDANTS |

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendants, James A. Chaney and Ace Clinique of Medicine, LLC, hereby move the Court for judgment of acquittal pursuant to Fed.R.Civ.P. 29. As grounds for this Motion, Defendants submit the memorandum filed herewith.

/s/ Elizabeth S. Hughes
Elizabeth S. Hughes
GREEN CHESNUT & HUGHES PLLC
201 East Main Street, Suite 1250
Lexington, Kentucky 40507
Telephone: (859) 475-1471
Facsimile: (859) 455-3332
Email: ehughes@gcandh.com
ATTORNEYS FOR DEFENDANTS
JAMES A. CHANEY AND ACE CLINIQUE
OF MEDICINE, LLC

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing MOTION FOR JUDGMENT OF ACQUITTAL has been served on May 2, 2016, via the Court's ECF system, which will send electronic notice to counsel of record.

/s/ Elizabeth S. Hughes
**ATTORNEY FOR DEFENDANTS**

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

FILED ELECTRONICALLY

NO. 14-CR-00037-SS-GFVT

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | |
| JAMES A. CHANEY, AND ACE CLINIQUE OF MEDICINE, LLC | DEFENDANTS |

MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT OF ACQUITTAL

The Defendants, James A. Chaney and Ace Clinique of Medicine, LLC, submit the following memorandum in support of their motion for judgment of acquittal pursuant to Fed.R.Civ.P. 29 with respect to the counts identified herein.

I. STANDARD

Defendants recognize that the evidence must be evaluated in the light most favorable to the Government, but that does not mean any evidence supporting the verdict is sufficient. "The prosecution, however, must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a

reasonable doubt." *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir.1985) (internal citation omitted). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir.1967). Where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger*, 224 F.3d 107, 116 (2d Cir.2000).

## II. CONTROLLED SUBSTANCES ACT: COUNTS 1 THROUGH 62

Defendants are cognizant of the Court's ruling on the issue of whether the Government presented sufficient evidence of violations of the Controlled Substances Act. (Doc # 267), but asks the Court to revisit the issue in light of the evidence at the time the motion under Rule 29 was first made and in light of the evidence thereafter presented by the defense.

Count 1 alleged a conspiracy and counts 2 through 62 involved specific prescriptions which were, admittedly, presigned. Certainly, there was evidence that presigning prescriptions was outside the usual course of professional practice. But, in order for the Government to prevail on these counts, it must also prove prescriptions were issued without a legitimate medical purpose. There was no such evidence. With

respect to a conspiracy spanning more than eight years, testimony supporting a finding that two prescriptions (which were not presigned) were without a legitimate medical purpose was insufficient as a matter of law to support the conspiracy conviction. With respect to counts 2 through 62, there was no testimony whatsoever that any of those prescriptions were without a legitimate medical purpose.

Dr. Stephen Loyd was called by the government at trial and, although he testified that certain things, such as the consent forms, were not acceptable medical practice, he testified that only one patient received controlled substances without a legitimate medical purpose. That patient was R.E. and there were only two prescriptions in issue; the third prescription R.E. received was for a non-controlled medication. For most of the patients whose files he reviewed, Dr. Loyd found that some amount of controlled substance was appropriate; for others, he did not opine either way about the need for controlled substances. Dr. Loyd declined to opine in any respect about one patient who was suffering from brain cancer and clearly was going to (and did) suffer an agonizing illness and death. For one patient, Dr. Lloyd had no criticism whatsoever.

Stated differently, the Government seized all patient files from Defendants' office, but yet offered proof that only two prescriptions for one patient were not for a legitimate medical purpose, and those two prescriptions were not the subject of any specific count of the Second Superseding Indictment. Defendants were entitled to separate

3

consideration of each count of the Indictment and obviously the jury failed to give that consideration as to counts 2 through 62,[1] as a conclusion about R.E.'s two prescriptions cannot transfer to the other counts.

Defendants understand the logic of the Court's prior ruling, *i.e.*, that indicia of practices outside the usual course can supply evidence of illegitimacy, but evidence of these practices cannot substitute for an essential element of the offense, that the prescriptions not be for a legitimate medical purpose. To hold that evidence of illegitimate practices substitutes for evidence of the lack of a legitimate medical purpose would render one element of the crime a nullity.

Furthermore, to hold that evidence of conduct outside the usual course of professional practice could satisfy the second prong, that the prescriptions also were not for a legitimate medical purpose, would directly contradict the instructions, which provided:

> This case is not about whether the defendants acted negligently or whether Dr. Chaney committed malpractice. Rather, in order to find the defendant(s) guilty of this charge, you must find that the government has proved beyond a

---

[1] That the jury found Defendants guilty based upon the evidence presented, even when that evidence did not satisfy the elements required by the instructions, should be given no weight for the reasons set forth in Defendants' motion for a new trial. At least two jurors began ignoring the instructions at the first opportunity – after opening statements – and it should be no surprise that they continued to do so. It is Rule 29 that provides the vehicle for the Court to correct this.

4

> reasonable doubt that the defendant(s) conspired to distribute and/or dispense controlled substances outside the usual course of professional practice and not for a legitimate medical purpose.

In essence, to allow evidence of conduct outside the usual course of professional practice to be the only evidence supporting the jury verdict of guilty on counts 1 through 62, permits Defendants to be convicted based upon a something akin to a malpractice standard.

In addition, Dr. Chaney testified as to the legitimate reason for each prescription. In several cases, the patients themselves testified the prescriptions were legitimate and necessary and explained the reasons they suffered pain. While Defendants understand the jury has the right to assess credibility, this evidence was not contradicted by the Government. Although there was evidence of practices outside the usual course, there was no evidence of a lack of a legitimate medical purpose with respect to counts 2 through 62.

Defendant is aware of the authority supporting the Government's position that expert testimony is not required in all cases in which a physician is prosecuted, but this case does not fall within that category. In *United States v. Word*, 806 F.2d 658, 663-64 (6th Cir. 1986), the Sixth Circuit explained the rationale for not requiring expert testimony:

> The above cases indicate that while expert testimony as to "legitimate medical purpose" and "in the usual course of professional practice" may be helpful to a jury, there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the usual course of professional practice. We find the instant appeal to present such a case. The lay testimony clearly established that defendant prescribed great quantities of Dilaudid for large sums of money and that he dispensed these drugs at various locations. In his own testimony, defendant admitted, and does not now dispute, that he wrote prescriptions for various individuals whom he did not examine upon other individuals' representations that that person needed the drugs. There was even testimony from a party to whom he sold pills that that party told defendant he was selling some of the pills. We must agree with the government that in no way can it be considered to be a legitimate medical practice to write prescriptions in return for sums of money ranging from $200 to $1,000 for each prescription written; to accept payment of $300 to $600 for writing prescriptions for someone who says he is selling some of the pills obtained; to give a patient an option as to what name a prescription for a powerful pain killer should be written in; to write prescriptions for powerful pain killers without ever seeing the patient, examining him, or verifying that he was in fact ill; or to write prescriptions at service stations, in a van, or in restrooms.

The case at bar does not remotely resemble the *Word* case. Here, there was evidence of prescribing practices that were outside the usual course, but those practices did not bear upon the second issue, whether the purpose was legitimate. There were presigned prescriptions, but only for established patients and only after they were seen by a mid-level provider. And, Dr. Lloyd's complaints about the disclosure forms do not bear upon the issue of the legitimacy of the prescriptions themselves.

6

The present case more closely resembles *United States v. Binder*, 26 F.Supp.3d 656 (E.D. Mich. 2014). In *Binder*, the evidence showed that the physician regularly prescribed controlled substances at nearly every office visit and at least one patient complained of an addiction to the pain medicine. There was evidence that patients were doctor shopping and that certain "red flags" existed. But, as here, there were no staged attempts by an undercover officer or patient to obtain a prescription for no legitimate medical purpose. As in the present case, patients testified about the reasons they needed pain medication. The district court in *Binder* acknowledged the authority which holds expert testimony is not necessary, but correctly read *Word* to apply only in cases where the lay testimony clearly established the absence of a legitimate medical purpose:

> In cases lacking such indicia of the absence of a legitimate medical purpose that even a lay juror could recognize, a directed verdict of acquittal is proper if expert evidence is not presented, because the jury has no reasonable basis on which to conclude beyond a reasonable doubt that the defendant acted outside the course of professional practice. *United States v. Shultice*, No. 98–54, 2000 WL 34030842, at *5 (N.D.Iowa Apr. 4, 2000) (noting that "[t]his is not the type of case that can be decided without expert testimony" and "[e]xpert medical evidence is required for a jury to ascertain and appreciate what type of conduct is and what type of conduct is not within the usual course of medical practice, and what type of conduct is without any legitimate medical purpose"). In *Shultice*, the district court found that expert testimony was required even where some indicia of unusual prescribing practices was introduced, such as notes in patient files that patients told the doctor if he did not prescribe drugs, "they

7

would get them on the street," and testimony by other patients that in some cases the doctor prescribed controlled substances for them on the same day they were released from the hospital after undergoing treatment for substance abuse. *Id.* at *6.

The government offered evidence in this case showing all the pharmacies Dr. Binder's patients used to fill the prescriptions issues by Dr. Binder. The data was collected by the Michigan Automated Prescription Service (MAPS), which is a data bank maintained by the State of Michigan to which all pharmacies that dispense controlled substance prescriptions regularly report. Trial Tr. vol. II, 101, Apr. 1, 2014. But where the government presents only "pattern" or "red flag" evidence sifted from a large number of patient files, particularly where no expert determination was made as to the suitability of the treatment in each case, the evidence is insufficient, without more, to demonstrate guilt beyond a reasonable doubt. *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1141 (4th Cir.1994); *see also United States v. Jones*, 570 F.2d 765, 769 (8th Cir.1978) (stating that evidence derived from summaries of large numbers of patient files directed merely in a general way to the quantity of prescriptions written and "quality" of patients treated "lack[s] substantial probative force upon the issue of improper medical practice").

The evidence presented by the government at trial was not sufficient to permit a rational juror to find that Dr. Binder prescribed drugs without a legitimate medical purpose and outside the course of professional practice. There was no evidence that patients admitted abusing drugs or stated a desire to receive medication other than for treatment of serious pain; sought or received prescriptions under fake identities; or received drugs intended for one person but prescribed for another. The government does not dispute that all of the patients who testified had a medical history of serious physical injuries that caused them real pain. Each of these patients testified that they felt pain and asked Dr. Binder to prescribe medication to relieve it.

*Binder* at 662-63. This case is much like *Binder*. Although the Government may have presented sufficient testimony with respect to the usual course of practice, there was an absence of testimony upon which a jury could make a finding as to the second prong, *i.e.*, whether the prescription was for a legitimate medical purpose.

When the jury's verdict as to counts 1 through 62 is set aside, then the counts related to maintaining a drug involved premises and money laundering would also fail. *See* Order, Doc # 267, Page ID 2795, note 2.

### III. UNNECESSARY DRUG SCREENS: COUNTS 112 TO 122

Defendants again present their arguments related to the unnecessary drug screens, though those arguments are now bolstered by the testimony offered in the defense case. Dr. Loyd testified he was pleased to see the drug screens; Dr. Gilbert testified the drug screens were necessary; Dr. Wright testified that he was aware of the monthly drug screening and did not have an issue with it. The only person who testified that the monthly drug screens were not necessary was Dr. Parker, whose opinion was based not on his own experience, but on a guidance document found on the Kentucky Board of Medical Licensure website. While it is true that Dr. Berman and Ms. Guice each testified that "absent a medical indication," Medicaid and Medicare would not pay for routine drug screens, but that testimony begs the question. Here, there was nothing but Dr. Parker's testimony to indicate the absence of a medical indication. While there were a

9

large number of drug screens performed, that large number cannot translate to whether they were necessary or not. The Government bears the burden of proof on this point and failed to present substantial evidence on the topic. Given the testimony of the other witnesses, the evidence was not sufficient as a matter of law.

### IV.   HOSPITAL BILLINGS: COUNTS 148 TO 197

Defendants respectfully request the Court to review their Rule 29 motion as of the time of the close of the Government's case. At that time, defense counsel argued that there was no testimony tying the counts of the Indictment to dates on which Dr. Chaney was out of town. The Government responded that it inquired of Agent Lambdin whether the counts of the Indictment corresponded to Government Exhibit 504 and he said they did.[2] As Defendants argued at the time, it turns out the actual proof in the record – the hospital billings themselves – did not correspond to the Government Exhibit, in that they did <u>not</u> show Dr. Chaney himself performed all the services identified in the Government Exhibit. Apparently, the jury did figure this out to some extent, but at the time of the original motion, defense counsel was correct in her assessment that the evidence related to these counts was insufficient.

---

[2]   Defendants are not convinced of the accuracy of the Government's description of Agent Lambdin's testimony, but that testimony has not yet been transcribed. The evidence at trial demonstrated, however, that if Agent Lambdin in fact testified that he had reviewed Government Exhibit 504 and that all the hospital billing entries therein were supported by records showing the services were billed as if performed by Dr. Chaney himself, then he was not truthful.

10

In addition, the jury's verdict, finding Defendants not guilty as to some counts and guilty as to others, is inconsistent. While Defendants acknowledge some of the hospital billings were incorrect, incorrect billings do not equate to a crime. It is plain that the jury ignored the intent requirement, as it is not reasonable to conclude that he intended to bill incorrectly for some dates, but not on others. Ms. Allen testified that she made the decisions about who was identified as the provider and that Dr. Chaney did not attempt to influence that decision. Her testimony was unrefuted.

### V.   MARCH 19, 2013: COUNT 197

Defendants ask the Court to reconsider the evidence on this particular count. While witnesses may have testified as described in the Court's Order ruling on the oral Rule 29 motion, those witnesses' testimony did not go to the issue of whether the visits were billed improperly. The question presented is whether Defendants billed improperly for office visits on the day in question and there is no evidence this occurred. The underlying billing data introduced by the Government does not support the contention that 30 minute visits were billed. It does not matter how long Dr. Parker would have taken to see this number of patients; it does not matter whether patients were seen quickly, with or without physical exams. The issue is whether Defendants billed improperly for those visits, and the government presented no evidence the visits were improperly billed.

### VI. PRESIGNED PRESCRIPTIONS: COUNTS 190 TO 220

Defendants ask the Court to revisit its decision on these counts as well. The issue is not whether the prescriptions were presigned, but whether Defendants intentionally concealed that fact. There was an absence of evidence on this topic. The fact that the prescriptions would not have been filled or reimbursed does not equate to a finding that anything was concealed. In fact, the evidence was to the contrary. There was no need for concealment, as Dr. Chaney could have called the prescription in to the pharmacy in most if not all of the instances, regardless of his location.

### VII. NERVE CONDUCTION TESTS: COUNT 234

Defendants stand by their original argument on this point and request that the Court review their motion under Rule 29 again. Dr. Berman was not familiar with the neural scan machine in use at Defendants' clinic and could not opine about whether it qualified as a nerve conduction test under the applicable guidelines. There is no evidence in the record that billing code 99504 is the only nerve conduction test CPT code or that this particular code is the one to which Dr. Berman was referring. All the witnesses confirmed that the test performed with the neural scan machine was not complex and there was no evidence that this particular machine required additional training or that the tests were billed improperly.

## CONCLUSION

Defendants respectfully request that a judgment of acquittal be entered with respect to the counts identified herein. To the extent Defendant Lesa Chaney has made additional arguments that would bear upon these Defendants' entitlement to a judgment of acquittal on any count, those are incorporated herein by reference.

Respectfully submitted,

*/s/ Elizabeth S. Hughes*
Elizabeth S. Hughes
GREEN CHESNUT & HUGHES PLLC
201 East Main Street, Suite 1250
Lexington, Kentucky 40507
Telephone: (859) 475-1471
Facsimile: (859) 455-3332
Email: ehughes@gcandh.com
ATTORNEYS FOR DEFENDANTS
JAMES A. CHANEY AND ACE CLINIQUE
OF MEDICINE, LLC

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL has been served on May 2, 2016, via the Court's ECF system, which will send electronic notice to counsel of record.

*/s/ Elizabeth S. Hughes*
ATTORNEY FOR DEFENDANTS