UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JAMES A. CHANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:24-CV-7-REW-HAI |
| v. | ) | |
| | ) | |
| CVS PHARMACY, INC., *et al.*, | ) | ORDER REMANDING |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Before the Court is Plaintiff James A. Chaney's motion to remand.  *See* DE 48 (Motion); 48-1 (Memorandum in Support).  Defendants responded in opposition, *see* DE 66; 67; 68; 69; 70; 73, and Chaney replied, *see* DE 76.  Certain Defendants, with permission from the Court, filed limited sur-replies.  *See* DE 80; 85.  Chaney subsequently moved for a hearing on the motion to remand.  *See* DE 84.  For the following reasons, the Court **DENIES** the request for a hearing but **GRANTS** the motion to remand.

## I.  Background

Chaney is a former Perry County physician.  *See* DE 1-1 at 39 ¶ 91 (Complaint).  As a physician, Chaney was authorized to write controlled substance prescriptions using identification numbers issued to him by the United States Drug Enforcement Agency ("DEA") and the Kentucky Board of Medical Licensure ("KBML").  *See id.* at 39-40 ¶ 92.  In 2014 and 2015, Chaney was federally indicted for various controlled substance, money laundering, and fraud offenses related to his medical practice.  *See United States v. Chaney et al.*, 6:14-CR-00037-GFVT-HAI, DE 1 (E.D. Ky. 2014) (Indictment); *see also id.* at DE 136, 190 (Superseding Indictments).  Following

1

a twenty-five-day jury trial in this District, Chaney was found guilty of, among other things, multiple distribution counts (per 21 U.S.C. § 841) as well as maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a), and acquiring and obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception and subterfuge, in violation of 21 U.S.C. § 843(a)(3). *See id.* at DE 281 (Verdict Form); 489 (Judgment). Chaney was sentenced to 180 months' imprisonment. *See id.* at DE 489. The judgment has survived all manner of appeal and § 2255 testing. *See United States v. Chaney*, 921 F.3d 572 (6th Cir. 2019); *Chaney v. United States*, No. 22-5524, 2022 WL 19264664 (6th Cir. Nov. 17, 2022).

Relating to the criminal prosecution and conviction, on December 11, 2023, Chaney filed a complaint in Perry Circuit Court raising state law claims of negligence, negligent/fraudulent misrepresentation, false light, defamation and libel, defamation and libel *per se*, and identity theft. *See* DE 1-1 at 44-50 ¶¶ 126-59 (Complaint). Chaney essentially claims that Defendants—all of whom are pharmacies or agents of pharmacies—misattributed prescriptions to Chaney in the Kentucky All Schedule Prescription Electronic Reporting ("KASPER") database, creating the purportedly false appearance that Chaney prescribed outside the bounds of applicable standards and law. *See id.* at 41-43 ¶¶ 100-18. Chaney seeks compensatory and punitive damages, as well as attorney's fees. *See id.* at 50-51 ¶¶ 160-66. He contends that pharmacy exaggeration and misdescription of prescription scope begat the criminal investigation and contributed to or caused his ultimate conviction. *See, e.g.*, *id.* ¶¶ 92, 99.

On January 16, 2024, Defendants Appalachian Regional Healthcare, Inc. ("ARH"), Helen Herald, and Holly Harris removed the matter to this Court, alleging federal question jurisdiction, per 28 U.S.C. § 1331. *See* DE 1 at 4 (Notice of Removal). Chaney filed the instant motion to remand, asking the Court to return the case to state court and impose a fee award under 28 U.S.C.

2

§ 1447. *See* DE 48-1 at 12-13. Defendants responded in opposition, *see* DE 66; 67; 68; 69; 70; 73, and Chaney replied, *see* DE 76. Certain Defendants, with the Court's permission, filed sur-replies *See* DE 80; 85. The matter is fully briefed and ripe for ruling.

## II.    Motion for a Hearing

After the motion to remand was fully briefed, Chaney moved for a hearing on the matter. *See* DE 84. There is no requirement that the Court hold a hearing on a motion to remand. Chaney offers no explanation for seeking a hearing, and the Court is unpersuaded of need. The briefing on the motion to remand is extensive, consisting of six responses, one reply, two sur-replies, and various exhibits. *See Pirie v. Broadview Multi-Care Ctr.*, No. 1:08-CV-1427, 2008 WL 2745977, at *3 (N.D. Ohio. July 11, 2008) ("[T]he Defendants have given the Court no reason to believe oral argument would be illuminating . . . . The Defendants have had a full opportunity to brief the Plaintiffs' Motion to Remand—in fact, all three Defendants filed a response in opposition—and to present all of their arguments to the Court in writing."). The Court thus **DENIES** Chaney's motion for a hearing and proceeds to address the merits of the remand motion.

## III.    Applicable Law

To adjudicate a case removed from state court, a federal court must have jurisdiction over the subject matter, either pursuant to a federal question, 28 U.S.C. § 1331, or diversity of citizenship, 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(a). "[B]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (alteration in original) (internal quotation marks omitted). (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)). "The

party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Id.* at 549.

Here, Defendants removed the matter pursuant to § 1331. *See* DE 1 at 4. Section 1331 establishes that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal v. Construction Laborers Vacation Trust of S. Cal.*, 103 S. Ct. 2841, 2856 (1983).

Generally, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 107 S. Ct. 2425, 2429 (1987) (internal citation omitted). "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be 'recharacterized' as a federal claim for purposes of removal." *In re Aredia & Zometa Prods. Liability Litigation*, No. 3:06-MD-1760, 2007 WL 649266, at *2 (M.D. Tenn. Feb. 27, 2007) (citing *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005)). The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 106 S. Ct. 3229, 3234 (1986). Further, the potential applicability of a defense implicating federal law "normally does not create statutory 'arising under' jurisdiction." *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2494 (2004). Courts refer to this set of ideas as the well-pleaded complaint rule. *See Dillion v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 755 (E.D. Ky. 2014)

("As the well-pleaded complaint rule's name suggests, only the complaint matters. Issues raised in responsive pleadings are irrelevant.").

In this matter, the Complaint pleads only state law claims and thus does not, on its face at least, raise a federal question. *See generally* DE 1-1. However, Defendants argue that two exceptions to the well-pleaded complaint rule apply: the artful pleading doctrine and the substantial-federal-question doctrine. "Under the artful-pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir. 2007). "Although occasionally [a] removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization, . . . most of them correctly confine this practice to areas of the law pre-empted by federal substantive law[.]" *Caterpillar*, 107 S. Ct. at 2432 n.11 (second alteration in original) (internal quotation marks omitted) (quoting *Federated Dept. Stores, Inc. v. Moitie*, 101 S. Ct. 2424, 2433-34 n.6 (1981) (Brennan, J., dissenting)). As to the second claimed exception—the substantial-federal-question doctrine—the Court may exercise jurisdiction over state law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363, 2368 (2005).[1]

---

[1] The Supreme Court has likened this difficult concept to a Jackson Pollock painting. *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) ("In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first.").

## IV.  Analysis

Chaney argues that the Court lacks subject matter jurisdiction because the Complaint asserts only state law claims and no exception to the well-pleaded complaint rule applies.  *See generally* DE 48.  Defendants contend that two exceptions apply: the artful pleading doctrine and the substantial-federal-question doctrine.[2]  *See* DE 66 at 7-11; 67 at 6-9; 68 at 5-15; 69 at 1; 70 at 1; 73 at 3-4.

### a.  Artful Pleading Doctrine

First, Defendants argue that the Court has jurisdiction under the artful pleading doctrine because (near as the Court can discern the defense theory) Chaney's state law claims are "analogous to alleging that Defendants aided and abetted in violating the very same federal laws for which he was convicted."  DE 66 at 8; *see also* DE 67 at 6-9; 73 at 3.  As discussed above, under the artful pleading doctrine, "a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute."  *Mikulski*, 501 F.3d at 561.  Stated differently, the artful pleading doctrine requires that there be a federal cause of action that the plaintiff actually asserts, masked by circuitous or wily pleading.  *See id.* at 561-63.

Pertinent here, a federal jury found Chaney guilty of violating 21 U.S.C. §§ 841, 843(a)(3) and 856(a).  *See Chaney et al.*, 6:14-CR-00037-GFVT-HAI, DE 281 at 8-4.  Under 21 U.S.C. § 843(a)(3), it is a crime "to acquire or obtain possession of a controlled substance by

---

[2] Though no Defendant raises the argument in the instant briefing, in the Notice of Removal, Defendants rely on *Rice v. Mayor & City Council of Baltimore*, No. RDB-15-3396, 2016 WL 1696536 (D. Md. Apr. 28, 2016), to support their claim that federal question jurisdiction exists.  *See* DE 1 at 7-8 ¶ 12 n.2.  Defendants' reliance on *Rice* is misplaced.  In *Rice*, the court denied the plaintiff's motion to remand because the plaintiff's complaint explicitly raised *federal claims*.  *See Rice*, No. RDB-15-3396, 2016 WL 1696536, at *4 ("Plaintiff's argument ignores the express allegations of his own Complaint—the alleged violations of his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Under Article III, this Court has original jurisdiction over such claims.").  Chaney's Complaint pleads solely state law claims, so *Rice* adds nothing.

misrepresentation, fraud, forgery, deception, or subterfuge[.]" 21 U.S.C. § 843(a)(3).  Under 21 U.S.C. § 856(a), it is a crime to maintain a drug-involved premises.  *See id.* § 856(a)(1).  21 U.S.C. § 841 proscribes unauthorized distribution of controlled substances.  *See id.* § 841.

While Defendants seemingly argue that Chaney, in substance, claims that Defendants violated these Title 21 provisions, there is no private right of action under statutes.  The Supreme Court has explained that "a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone" does not provide an implied cause of action that may be pleaded by a civil litigant.  *Cort v. Ash*, 95 S. Ct. 2080, 2089 (1975); *see also Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 114 S. Ct. 1439, 1455 (1994) (explaining that "[t]here would be no logical stopping point" to a rationale finding an implied cause of action in each section of the federal criminal code, for "[e]very criminal statute passed for the benefit of some particular class of persons would carry with it a concomitant civil damages cause of action").  None of the Title 21 statutes contains a provision permitting a civil litigant to initiate a lawsuit based on the prohibited conduct; the language of the statutes describes a criminal offense resulting in punishment of a fine, imprisonment, or both.  *See* 21 U.S.C. §§ 841, 843, 856.  Accordingly, Chaney—a private citizen—could not (even if he tried) legitimately plead violations of these statutes.  *See Vogt v . Macy's Logistics*, No. 3:22-CV-10, 2022 WL 19263325, at *3 (N.D.W.V. June 14, 2022) ("Plaintiff, as a private citizen, cannot levy and prosecute federal criminal charges against another party. If it was the Plaintiff's intent to litigate criminal charges against the Defendants, her attempt to do so would be frivolous."); *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("The presence of a criminal statute neither creates nor implies a corresponding private right of action. Private citizens . . . do not have standing to enforce criminal

statutes or have them enforced. Simply stated, private citizens generally have no standing to institute federal criminal proceedings." (internal citations omitted)).

In short, there is simply no federal cause of action in or implicated in the Complaint for Chaney to artfully plead around. *See Grievance Comm. for Tenth Judicial Dist. v. Pollack*, 669 F. Supp. 2d 454, 459 (S.D.N.Y. 2009) ("Respondent suggests that petitioner has artfully pled the federal criminal contempt charges against her to appear as questions of state law. The federal charges and resulting conviction, although providing the underlying factual context for the state grievance proceedings, do not, however, raise any federal questions of law." (internal citation omitted)); *City of Gary, Ind. ex rel. King v. Smith & Wesson Corp.*, 94 F. Supp. 2d 947, 952 n.8 (N.D. Ind. 2000) (granting motion to remand where plaintiff pled exclusively state law claims, noting "defendants do argue briefly in footnote 4 of their memorandum that the public nuisance portion of Gary's suit can be recharacterized as a federal criminal prosecution. The court finds this argument unpersuasive. The remedies Gary seeks are not the equivalent of a criminal sanction."). Indeed, other than the strained statutory theory, Defendants identify nothing hinting at a *federal* cause of action. Chaney's concept is that the Defendants committed state torts (negligence, misrepresentation, defamation) or state statutory violations that exposed him to criminal investigation and ultimately criminal liability. Whatever their dubious strength on the merits, the claims present state, not federal, causes of action. Thus, the Court does not have § 1331 jurisdiction under the artful pleading doctrine.

### b. Substantial-Federal-Question Doctrine

Defendants also argue that the Complaint raises a substantial federal question because it alleges that Defendants' conduct caused or contributed to Chaney's federal prosecution and conviction. *See* DE 68 at 5-15; *see also* DE 69 (incorporating by reference DE 68's arguments);

70 (same).  As outlined above, "[t]he substantial-federal-question doctrine has three parts: (1) the state law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568 (citing *Grable*, 125 S. Ct. at 2363).  This exception applies to a "special and small category" of cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 126 S. Ct. 2121, 2136 (2006).  *Gunn* called the field "slim."  *Gunn*, 133 S. Ct. at 1065.

Concerning the first prong, "[a] federal issue is necessarily raised where a state-law claim depends on the adjudication of a federal issue." *Humana Inc. v. Celgene Corp.*, No. 7:18-CV-64-KKC, 2019 WL 1231151, at *2 (E.D. Ky. Mar. 29, 2019) (citing *Gunn*, 133 S. Ct. at 1065). "However, 'when a claim can be supported by alternative and independent theories—one of which is a state-law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'"  *Id.* (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)).

Chaney argues that his claims "do not depend on the constitutionality or construction of any federal law[.]"  DE 48-1 at 6.  Defendants contend that the Complaint "raises issues of legal error or misconduct" as to the underlying criminal federal investigation and proceedings.  DE 68 at 7.  According to Defendants, this goes directly to the causation element of the negligence claims, because the Court must decide whether the outcome of the criminal proceeding would have been different had the alleged KASPER misattributions been timely discovered and brought to bear. *See id.* at 7-8.[3]

---

[3] The idea that only a federal forum could give access to necessary proof is not procedurally accurate or persuasive.

Courts, including the Sixth Circuit, have found that a complaint alleging exclusively state law claims based on a prior federal action typically does not raise a federal question jurisdiction. *See Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 544 (6th Cir. 2005) (finding no federal question jurisdiction where plaintiff brought a state court damages action against former employer, alleging perjury in the plaintiff's prior federal sex discrimination action); *Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.*, 666 F. Supp. 2d 749, 753 (E.D. Mich. 2009) ("The Sixth Circuit has made clear that state-law claims arising out of prior [civil] federal lawsuits do not generally warrant the exercise of federal question jurisdiction."). In *Vogelsang v. Zine*, No. 2:09-CV-02885-JAM-KJN-PS, 2010 WL 2737190 (E.D. Cal. July 12, 2010), the plaintiff—a former physician—was federally convicted of twenty-two counts of healthcare fraud and subsequently filed a civil action against parties involved in the criminal investigation and prosecution, exclusively raising state law claims "stemming from [the] underlying criminal prosecution, trial, and conviction." *Vogelsang*, No. 2:09-CV-02885-JAM-KJN-PS, 2010 WL 2737190, at *3, *10. The plaintiff claimed that the court had federal question jurisdiction over the civil action because the state law claims, in ways, were based on federal issues and cited various federal statutes. *See id.* at *8. The district court disagreed, concluding that "[t]he contentions of the plaintiff's complaint . . . still sound in state tort law." *Id.* at *10. It noted, among other things, that reference to federal statutes is "insufficient to confer jurisdiction":

> [G]iven the predominate position of the federal government in our present society and the burgeoning of federal regulation, we are not surprised when even the most local lawsuit is tangentially related to a federal law. However, such a relation to a federal law is not sufficient for section 1331(a) jurisdiction unless the lawsuit really and substantially involves a dispute or controversy respecting the validity, construction, or effect . . . of the federal law.

*Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Smith v. Grimm*, 534 F.2d 1346, 1350 (9th Cir. 1976)).

10

Here, the Complaint does not necessarily raise a disputed federal issue simply because it is factually connected to a prior federal criminal prosecution.   While the Complaint references KASPER, Chaney's federal criminal conviction, and "applicable standards and laws" related to that conviction, it does not challenge the interpretation of any federal statute or regulation.  *See Eastman*, 438 F.3d at 552-53 ("[T]he meaning of the two statutes cited by the plaintiff is not in serious dispute in this case . . . . the reference in the plaintiff's complaint to the federal statutes cited as a source of public policy does not create a substantial federal question in this case.").  The Complaint does not, by its text, impugn the legal validity of the conviction or the standards leading to it; rather, as a factual matter, the Complaint attributes some level of evidentiary incrimination to faulty foundational materials generated by or contributed to by Defendants.  That is not the same as alleging a matter requiring interpretation of federal law.  *See also Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) ("[I]t does not appear from Kalick's complaint that the interpretation of the federal regulation is in dispute, only whether [defendants] abided by the regulations. Kalick cannot simply cite to a federal regulation that does not give rise to a private cause of action in order to satisfy federal subject matter jurisdiction."); *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt.*, No. 06-CV-4197, 2007 WL 1456204, at *4 (D.N.J. 2007) (finding that federal predicate offenses in a state law RICO claim are not "disputed" under *Grable*, and accordingly do not give rise to federal subject-matter jurisdiction when the federal offenses "relate to issues governed by state law or they raise questions of fact," instead of requiring interpretation of a federal legal issue).  Thus, nothing indicates that the outcome of Chaney's state law claims will turn on the Court's interpretation of a federal statute or regulation, cutting against the position that the Complaint necessarily raises a federal issue.  *See Sullivan v. Novartis Pharm. Corp.*, 602 F. Supp. 2d 527, 535 (D.N.J.2009) ("In the absence of any current indication that this case will

11

require the resolution of disputed federal issues of general application, *Grable* counsels against the exercise of jurisdiction.").

*Gunn* offers a slightly different prism, perhaps. There, first, a federal patent infringement case invalidated the federal plaintiff's underlying patent. The losing federal litigant then sued his lawyer in state court, claiming that malpractice led to the federal loss. Eventually, the Supreme Court addressed whether the case raised a matter of (exclusive) federal jurisdiction. *Gunn*, 133 S. Ct. at 1065. The Court answered in the negative but did find a necessary federal issue in the elemental requirement that plaintiff prove, as a damage matter, that the federal case would have yielded a different substantive result with proper lawyering. The "case within a case," which called for application of a distinct patent-law doctrine as a causal matter, yielded a positive answer on this *Grable* prong. *See id.* ("Minton must show he would have prevailed . . . if only petitioners had timely made an experimental-use argument . . . . That will necessarily require application of patent law to the facts of Minton's case.").

Here, though some causal parallel obtains, the federal nexus is quite different. Rather than implicating federal law esoterica, Plaintiff's state theories rather invite analysis of the federal criminal conviction's preclusive impact or invulnerability to implied collateral attack. These topics, which sound largely in defense, are important but not of the type warranting jurisdiction as a substantial federal question. Indeed, the courts have regularly declined federal jurisdiction where the stated basis is the impact or preclusion of a prior federal judgment on prospective state recovery. *See Rivet v. Regions Bank of Louisiana*, 118 S. Ct. 921, 926 (1998) ("In sum, claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review."); *Weinacker v. Callaway*, No.

1:16-CV-389-AKK, 2016 WL 5662034, at *2 (S.D. Ala. Sept. 29, 2016) (referencing *Grable* and holding: "This argument centers on Weinacker's claim that federal law is implicated because she is suing these defendants as a result of her criminal conviction in federal court . . . .  That the Defendants' alleged fraudulent conduct purportedly led to her conviction of federal crimes unfortunately does not establish that her state law claims against them involves the construction of federal law."); *Feldman v. Paul*, No. 1:06-CV-00812, 2006 WL 8446749, at *2 (N.D. Ohio July 10, 2006) ("Accordingly, a defense that relies on the preclusive effect of a prior federal judgment will not provide a basis for removal." (citing *Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2058, 2062 (2003))).

Chaney purports to make no challenge to his federal conviction and claims simply to seek recovery from pharmacists that, through faulty reporting, exposed him to prosecution and ultimately contributed to the conviction.  This runs, though, headlong into the recognized defensive, preclusive, finality, and remedial principles behind *Heck v. Humphrey*, 114 S. Ct. 2364 (1994).  *Heck*, which limits civil litigation that would impugn or imply invalidity of an extant criminal judgment, began in § 1983 but has been extended, conceptually, across *Bivens*, the FTCA, and state theories such as legal malpractice and fraud.  *See Cobble v. Bennett*, No. 3:21-CV-00021-RGJ, 2021 WL 3713533, at *4 (W.D. Ky. Aug. 20, 2021) (noting Sixth Circuit extension of *Heck* to "suits against federal officials arising out of federal conviction"); *Young v. Gillespie*, No. CA 1:12-2169-TMC-SVH, 2012 WL 5354395, at *2 (D.S.C. Sept. 26, 2012), *report and recommendation adopted*, No. CA 1:12-2169-TMC, 2012 WL 5309820 (D.S.C. Oct. 29, 2012) ("It is well-settled that *Heck* applies to other types of claims and not exclusively to causes of action under § 1983. For example, the *Heck* doctrine bars claims brought by federal prisoners under the Federal Torts Claim Act alleging false imprisonment, malicious prosecution, and/or malpractice of

federal employees in connection with a federal criminal trial."); *Mayberry v. Keller*, No. 3:21-CV-506-JD-MGG, 2022 WL 1288841, at *1-2 (N.D. Ind. Apr. 28, 2022) ("The Seventh Circuit extended *Heck*'s holding to this very situation in *Banks v. Preston Humphrey, LLC*, 609 F. App'x 351, 353 (7th Cir. 2015), in which a [state] prisoner sued his court-appointed criminal attorney for state-law claims of breach of fiduciary duty, constructive fraud, and fraudulent misrepresentation and concealment."), *aff'd*, No. 22-1894, 2023 WL 2064157 (7th Cir. Feb. 17, 2023); *Mayberry*, 2022 WL 1288841, at *2 (noting bar against state-based recovery of malpractice damages relative to an intact conviction, per *Heck*).  Chaney's theories undoubtedly face an existential test under *Heck*, but the defensive impact of the prior conviction is not a question that rises to the level of federal cognizance required by *Grable* and *Gunn*.

Even if the Complaint raised disputed federal issues, they are not substantial.  The Sixth Circuit has outlined four factors for determining whether a state-law claim implicates substantial federal issues:

> (1) Whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (*i.e.*, not trivial); (3) whether a decision on the federal question will resolve the case (*i.e.* the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases.

*Mikulski*, 501 F.3d at 570.

Here, as to the first factor, the Complaint does not name a federal agency as a defendant, much less allege that an agency violated a federal statute or was aware that Defendants (or anyone save Chaney) allegedly violated a federal statute.  Second, regarding whether the federal question is important, "it is not enough that the federal issue be significant to the particular parties[;]" the question must be an important issue "to the federal system as a whole."  *Gunn*, 133 S. Ct. at 1066. The Supreme Court has distinguished cases that present "a nearly 'pure issue of law'" from cases

14

that are "fact-bound and situation-specific." *Empire*, 126 S. Ct. at 2137. In this case, Defendants argue that the state law claims challenge "the basis of acts by the executive and judicial branch[,]" including the DEA, the FBI, the Department of Justice, and the federal courts. DE 68 at 9-13. However, while such claims relate to a criminal proceeding, they do not raise a "pure issue of law." As discussed above, the allegations (which imply a causal analysis on the facts) do not require the Court to interpret disputes regarding the Controlled Substance Act or federal regulations surrounding controlled substances, and Chaney does not raise a claim against a federal agency or argue that a federal agency failed to comply with a statute. *See Williams-Salmon v. Avanir Pharma., Inc.*, No. 1:20-CV-419, 2020 WL 4432948, at *3 (N.D. Ohio July 31, 2020) ("[T]his case does not involve a federal agency, and a federal agency's compliance with a federal statute is not in dispute. As such, this factor weighs against characterizing the federal interest in this case as substantial."); *see also Empire*, 126 S. Ct. at 2137 ("[T]he dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases."). The allegations also do not require a determination of the constitutionality of federal law. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921) (holding that federal jurisdiction existed over the plaintiff's state law cause of action because the plaintiff's claim required a determination of whether a federal statute was unconstitutional). Rather, the primary question is whether Defendants, under a state-law regulatory framework, misattributed prescriptions to Chaney. In sum, this case is a "fact-bound and situation-specific" issue that is "not sufficient to establish federal arising under jurisdiction." *Gunn*, 133 S. Ct. at 1061 (quoting *Empire*, 126 S. Ct. at 1237).

15

Finally, contrary to the defense view, the Court sees little breadth to the application here. Chaney's theory is rare, essentially novel. After receiving a conviction, he attempts to blame others for accumulation of proof or triggering of suspicion contributory to the conviction. As *Gunn* noted, "if it does not arise frequently, it is unlikely to implicate substantial federal interests." *Gunn*, 133 S. Ct. at 1067. While the final factor is "subjective[,]" it is unlikely that resolution of this specific question will "be controlling over numerous other cases." *Mikulski*, 501 F.3d at 571. State processing of these claims hardly augurs a national adjudicative trend. Thus, considering the four *Mikulski* factors, the supposed federal question is not substantial.

Lastly, the Court must consider whether the exercise of jurisdiction would disturb the congressionally approved balance of federal and state judicial responsibility. *See Mikulski*, 501 F.3d at 568. While the "absence of a cause-of-action provision is not determinative, [it] certainly provides a starting point for this part of the analysis." *Id.* at 573; *see also Grable,* 125 S. Ct. at 2370 (noting that "the absence of a federal private right of action [is] evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires" (alteration in original)). "The question is not whether such a holding will open the federal courts to analogous cases—under the most rudimentary concept of legal precedent it certainly will. The pressing questions are what cases would be analogous and how many would there be." *Mikulski*, 501 F.3d at 573. Defendants argue that "to allow a federal prisoner to proceed with a state action challenging the grounds of federal proceedings would wholly frustrate congressional intent" because the Complaint "places into controversy the validity of actions by two Department of Justice agencies, and the proceeding of a federal district court[.]" DE 68 at 15. This perhaps overstates the largely factual import of the Complaint, which again, focuses on the evidentiary (thus causal) foundation of the conviction. *See Warrior Sports*, 666 F. Supp. 2d at 753 ("Plaintiff's legal malpractice claim

16

stemming from representation in a prior federal suit does not raise substantial questions of federal law. The only federal aspects of Plaintiff's claim—patent disputes embedded within the proximate cause element of an otherwise straightforward legal malpractice claim—are only incidental to the overall complaint. Moreover, using the case-within-a-case framework as leverage to extend federal jurisdiction to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim would 'constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant.'"); *Pridemore v. Columbia Gas of Ky., Inc.*, 598 F. Supp. 3d 541, 550 (E.D. Ky. 2022) ("[A]llowing Plaintiffs' negligence action to remain in this Court would open the doors of federal courts to virtually any pipeline-related suit that alleges a violation of a federal regulation. While impossible to quantify, the number would not be insubstantial . . . . Indeed, litigants could simply allege violations of federal regulations to crowbar their claims into federal court.").

In *Palkow v. CSX Transport, Inc.*, the plaintiff sued her former employer, alleging Title VII violations.  *See Palkow.*, 431 F.3d at 544.  A federal jury found in favor of the employer, and the plaintiff subsequently filed a state civil suit claiming that a key witness committed perjury during the federal trial.  *See id.* at 544-45.  The defendant removed the matter to federal court, claiming the court had federal question jurisdiction because the single state law claim "constitutes an attack on the federal jury verdict and resulting judgment[.]"  *Id.* at 545 (internal quotation marks omitted). The Sixth Circuit determined that the federal court lacked jurisdiction, explaining, in part, that:

> [R]emoval of state actions purporting to collaterally attack federal judgments presents difficult issues for the courts. To be sure, a federal court will want to protect the integrity of its judgments. But the point of critical importance is that "[i]t is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." Any notion that the jurisdictional net should be broadly cast by the courts is at odds with the constitutional establishment of a federal government of limited powers.

. . . .

Here, Plaintiff's claim was not filed in the same court that rendered the Title VII judgment; it was originally filed in state court. Moreover, [Plaintiff] did not ask in her state court complaint that the federal judgment entered against her be vacated or otherwise seek relief from the judgment. She simply asserted, as a way to substantiate her claim for monetary damages from the defendants, that Defendant Tavares's alleged perjury "had a substantial effect" on the outcome of her sex discrimination trial.

*Id.* at 554-55 (internal citation omitted) (quoting *Owen Equip. & Erection Co. v. Kroger*, 498 S. Ct. 2396, 2403 (1978)).

Here, Chaney filed the Complaint in state court. The Complaint does not, overtly at least, seek to set aside or evade the federal conviction. Further, as explained earlier, there is no private federal right of action at issue. While "the absence of a federal private right of action does not entirely decide the issue of congressional intent[,] . . . it is persuasive evidence that Congress did not intend to set out a 'welcome mat' inviting state claims with embedded federal issues . . . into federal court." *Fochtman v. Rhino Energy, LLC*, No. 13-104-ART, 2013 WL 5701468, at *2 (E.D. Ky. Oct. 17, 2013) (first citing *Grable*, 125 S. Ct. at 2370; then citing *Merrell Dow*, 106 S. Ct. at 3235). Accordingly, exercising jurisdiction over Chaney's claims would, in concept at least, disrupt the congressionally approved balance of federal and state judicial responsibility.

The defense undervalues or ignores the interdependence and comity between the federal and state systems. State judges are bound by, committed to, and fully capable of applying federal law. The *Heck* principles plainly relevant to this dispute are as accessible to a state judge as they would be in this Court. As the Supreme Court has noted: "State courts . . . will, in addition, be guided by federal court interpretations of the relevant federal . . . statutes, just as federal courts sitting in diversity are guided by state court interpretations of state law." *Tafflin v. Levitt*, 110 S. Ct. 792, 798 (1990); *Heck*, 114 S. Ct. 2364, 2373 n.9 ("State courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law.").

Congress recognized, in its demarcations of jurisdiction, that the state courts are trustworthy to administer federal norms, where applicable.

In sum, the Complaint does not raise a substantial federal question.  The Court lacks jurisdiction over the case, and remand is proper.

### c.   Consent to Removal under 28 U.S.C. § 1446

Chaney also asserts that remand is warranted because Defendants' Notice of Removal fails to comply with 28 U.S.C § 1446.  *See* DE 48-1 at 9-12; 76 at 1-3.  Though remand is appropriate based on the absence of a federal question, the Court addresses the consent issue given its potential impact on Chaney's request for a fee award.  *See* DE 48-1 at 12-13.

28 U.S.C. § 1446 governs the procedures for removal.  To properly remove a matter to federal court, a defendant must file a notice of removal containing a short and plain statement of the grounds for removal, signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.  *See Harper v. AutoAlliance, Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004); 28 U.S.C. § 1446(a).  The "rule of unanimity"—a rule captured in § 1446(b)(2)(A)—requires that the removing defendant obtain unanimous consent from all other "properly joined and served" defendants.  *See* 28 U.S.C. § 1446; *see also Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999).  The Sixth Circuit has explained:

> [A]ll defendants in the action must join in the removal petition or file their consent to removal in writing within thirty days of receipt of (1) a summons when the initial pleading demonstrates that the case is one that may be removed, or (2) other paper in the case from which it can be ascertained that a previously unremovable case has become removable.

*Loftis*, 342 F.3d at 516 (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322, 1328-29 (1999)).  Unanimity is satisfied when counsel for the removing defendant represents in the notice of removal that a co-defendant also consents to removal.  *See Harper*, 392 F.3d at 201-02.  A removing defendant thus may vouch for the consent of others.

19

Here, Chaney indicates that fifty-eight Defendants were properly joined and served by January 16, 2024, the date of removal.  *See* DE 48-1 at 9-11.  He argues that the removing Defendants have failed to comply with § 1446 because: (1) "none [of the Defendants] have filed their consent to removal in writing[;]" (2) the Notice of Removal's blanket statement that "all properly joined and served Defendants have consented to removal" is insufficient to demonstrate consent; (3) "counsel for several defendants have advised [counsel for Chaney] that they were never asked to join in or consent to" removal; and (4) Defendants thus have not timely consented in writing.  DE 48-1 at 9-12 (internal quotation marks omitted) (quoting DE 1 ¶ 17); *see also* DE 76 at 2-3.  In response, Defendants argue that all timely consented to removal, noting the lack of necessity that each Defendant "actually execute the petition."  DE 66 at 14 (internal quotation marks omitted) (quoting *Adams v. Lederle Lab's*, 569 F. Supp. 234, 243 (W.D. Mo. 1983)); *see also* DE 67 at 9; 68 at 15-19; 69 at 1; 70 at 1; 73 at 5.  Removing Defendants attached exhibits, purporting to support consent as to all relevant Defendants.  *See* DE 68 at 16-19; *see also* DE 68-7; 68-8; 68-9; 68-13; 68-14; 68-17; 68-18; 68-20; 68-21; 68-23; 68-25; 68-27; 68-28; 68-29; 68-30.

Here, the Notice of Removal states that "[a]ll properly joined and served Defendants have consented to removal[,]"  DE 1 ¶ 17, and is signed by counsel for removing Defendants ARH, Herald, and Harris.  *See id.* at 9.  True, the notice of removal is not signed by any other Defendant and does not attach written consent as to each Defendant.  However, the Sixth Circuit has rejected the notion that Rule 11 requires each defendant to "submit a pleading, written motion, or other paper directly expressing that concurrence" as to consent.  *Harper*, 392 F.3d at 201 ("Rule 11 merely requires any pleading to be signed 'by at least one attorney of record' and states that by presenting such pleading the attorney is certifying that, inter alia, "the allegations and other factual

contentions have evidentiary support.'" (quoting FED. R. CIV. P. 11(a), (b)(3))); *see also id.* ("Nothing in Rule 11 . . . prohibited counsel for the other defendants from making such a representation on Kelly's behalf.").  *Harper* adopted the "vouching" rule, which permits counsel for one defendant to represent a co-defendant's consent in the notice of removal.  *See Harper*, 392 F.3d at 201; *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F. Supp. 2d 807, 815 (N.D. Ohio. 2008) ("*Harper* stands for the proposition that a party seeking to remove a case to federal court need do no more than obtain the consent of his fellow defendants and make a timely representation of that consent to the court.").  Here, the Notice of Removal represented to the Court that all properly joined and served Defendants consented to removal.  This representation, per *Harper*, suffices to demonstrate consent.  Indeed, had the removing Defendants misrepresented any Defendant's concurrence in the removal, "no doubt [a non-consenting Defendant] would have brought this misrepresentation to the [C]ourt's attention[.]"[4]  *Harper*, 392 F.3d at 202.

Chaney further contends that the statement that all "Defendants have consented to removal" is insufficient because those defendants are not identified.  However, he fails to cite any law supporting such a requirement, and case law suggests that the rule of unanimity is satisfied when the notice of removal generally states that all other defendants consented.  *See Firedlander v. Figuerado*, No. 5:14-CV-4-KKC, 2014 WL 1883793, at *17 n.1 (E.D. Ky. Apr. 30, 2014) ("In its Notice of Removal, Fifth Third states that '[u]ndersigned counsel has contacted counsel for the other Defendants, and they have indicated their consent to removal'. Based on *Harper*[,] . . . a representation contained in the notice of removal that a co-defendant consents to removal is sufficient to satisfy the unanimity requirement[.]" (internal citations omitted)); *Central Laborer's*

---

[4] As to Chaney's brief claim that certain Defendants "advised [Chaney's] counsel that they were never asked to join in or consent to" removal, he does not name in the motion specific Defendants or offer any support for this assertion. DE 48-1 at 11.  Defendants' notice of removal represents that all Defendants consented, and no Defendant has objected. Absent support, the Court will not credit Chaney's allegation.

*Pension Fund v. Chellgren*, No. 02-CV-220-DLB, 2004 WL 1348880, at *6 (E.D. Ky. Mar. 29, 2004) ("Review of applicable case law suggests the preferred method is for the notice of removal to state that those defendants who are not signatories to the notice nevertheless consent to removal or intend to consent to removal.").

Chaney also challenges the timeliness of consent. *See* DE 76 at 1-3. He argues that Defendants needed to provide notice of consent by January 14, 2024 (or, 30 days from service), and that various notices of consent—pertaining to over fifty Defendants—are signed on February 28 or February 29, 2024, over thirty-days after service. *See id.* at 2. In their sur-reply, Defendants clarify that documents dated after the date of removal "merely corroborate timely verbal and/or written consent received prior to removal." DE 80 at 1. Defendants also assert that the "earlier-served Defendants' failure to remove or consent to removal within their own 30-day removal period" does not destroy the rule of unanimity. *Id.* at 2.

A defendant has thirty days from the date of service to remove a matter to federal court. *See* 28 U.S.C. § 1446(b). However, where multiple defendants are served at different times, the Sixth Circuit has explained that "as a matter of fairness to later-served defendants, . . . a later-served defendant has 30 days from the date of service to remove a case to federal district court, with the consent of the remaining defendant[.]" *Brierly*, 184 F.3d at 533; *see id.* at 533 n.3 ("We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own efforts to remove. Given the rule of unanimity, holding otherwise would vitiate the removal application of the later-served defendants[.]"). "'[A]s long as' a first-served defendant that 'waived the right to remove consents to removal when the later-served defendant seeks it[,]' a prior waiver does not prevent satisfaction of the § 1446(b)(2)(A) unanimity requirement." *Tri-Cnty. Pharma. v. Benzer KY-1, LLC*, 7:20-CV-51-REW-EBA, 2020

WL 3100022 (June 11, 2020) (quoting *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 762 (6th Cir.
2016)).

Here, Herald—the last of the three named removing Defendants to be served—was served
on December 27, 2023.[5]  Thus, the 30-day period to consent to removal concluded on January 26,
2024.  Removing Defendants filed notices of consent as to the fifty-eight properly joined and
served Defendants.  As to thirteen of these Defendants, the notices of consent evidently establish
timely consent.  *See* DE 68-8 (CVS Pharmacy, Inc. and Kentucky CVS Pharmacy, LLC, consenting
on January 16, 2024); 68-9 (D.B. Doyle Enterprises, Inc., consenting on January 12, 2024); 68-13
(Hospice of the Bluegrass, Inc., J. Holmes, and W. Short, consenting on January 15, 2024); 68-17
(Jordan Drug, Inc, consenting on January 12, 2024); 68-20 (M. McIntosh, consenting on January
16, 2024); 68-20 (Wal-Mart Stores East, LP, consenting on January 16, 2024); 68-21 (Mountain
Comprehensive Health Corp., consenting on January 16, 2024); 68-25 (The Medicine Shoppe
Hyden and R. Stewart, consenting January 12, 2024);  68-28 (Tombert, Inc., consenting on January
12, 2024).

As to the remaining Defendants, the various notices of consent are signed and dated on
February 9, February 28, and February 29, 2024, post-removal and some outside of the applicable
thirty-day consent period.   Three of these notices—which concern a total of fifty-five[6]
Defendants—were signed and dated in February but indicate that Defendants timely consented at
removal in mid-January.  *See* DE 68-7 at 3 n.2 (signed and dated on February 29, 2024 but
indicating that "[o]n January 15, 2024, the foregoing Defendants consented to removal via email
to ARH Defendants' counsel."); 68-27 at 2 n.1 (signed and dated February 28, 2024 but indicating

---

[5] ARH was served on December 14, 2023, and Harris was served on December 15, 2023.  *See* DE 1-2 at 1, 4.
[6] In addition to concerning some of the properly joined and served parties, DE 68-7 and DE 68-30 include several
Defendants framed as not properly served at the time of removal.

that [o]n January 15, 2024, the foregoing Defendants consented to removal via email to ARH Defendants' counsel."); 68-30 at 2 n.1 (signed and dated on February 9, 2024 but indicating that "[o]n January 16, 202[4],[7] Defendants consented to removal by and through prior counsel[.]"). Defendants' sur-reply clarifies that "the written consents and joinders dated after January 16, 2024, the date of removal, merely corroborate timely verbal and/or written consent received prior to removal." DE 80 at 1.

However, Chaney claims that his counsel spoke with "[c]ounsel who signed those consents[,]" Melissa Thomspon Richardson—counsel for Defendants referenced in two of the notices of consent (DE 68-7 and DE 68-27)—and that as of January 15, 2024, Richardson "had not advised that [her firm was] representing" ten of the fifty-two Defendants listed in the filings. DE 76 at 3. On March 1, 2024, Chaney requested (via email) that Richardson specify when she began representing the at-issue Defendants and provide the January 15, 2024 email where she consented to removal. *See* DE 76-1 at 4-5. Per the email exchange, Richardson did not provide the email referenced in DE 68-7 and DE 68-7 but stated that she gave "consent for all of [her] clients" by providing "verbal consent to the removing party's counsel[.]" *Id.* at 2-3 (Richardson, stating "I gave verbal consent to the removing party's counsel as I was in the middle of trial . . . . I did not have time to sit down and pen an email about it . . . . I am not sure what email you are referencing below"). However, Defendants then submitted the January 15, 2024 email, where Richardson states to counsel for removing Defendants that "[y]ou have permission by me for all of my clients to remove this to federal court." DE 82-1 at 10. This demonstrates timely consent for Defendants she represented at that time.

---

[7] The notice of consent states that Defendants consented to removal on January 16, 2023, but the Court construes the year as a typographical error because Chaney did not file the state court complaint until December 11, 2023.

That said, the remaining three documents—relating to five properly served and joined defendants—are signed in late February of 2024 and do not indicate a previous date of consent. *See* DE 68-14 (dated February 28, 2024); 68-18 (dated February 28, 2024); 68-29 (dated February 29, 2024).  While Defendants maintain that these parties all timely consented, nothing in the record specifies the method of consent. Defendants, as movants, bear the burden of proving removal proper.  They did not (in their response or their sur-replies) clarify whether or how these remaining Defendants consented orally or in writing within the 30-day window.  *See* DE 80  at 1 ("[T]he written consents and joinders dated after January 16, 2024, the date of removal, merely corroborate timely verbal and/or written consent received prior to removal."). A key is whether the consent occurred prior to or after removal.  As stated, a lawyer may voucher for another counsel's verbal pre-removal joinder in or consent to removal.  After that, though, *Loftis* requires a writing.  *See Hicks v. Emery Worldwide, Inc*., 254 F. Supp. 2d 968, 975 (S.D. Ohio 2003) ("[E]ven if an oral consent could, under certain circumstances, satisfy § 1446's requirements, this telephone conversation clearly was not an official representation of consent by counsel to the Court. Accordingly, the telephone call by a paralegal for TTS's counsel was insufficient to constitute timely consent to the removal." (emphasis added)); s*ee also Hart v. Duke Realty Ltd. P'ship*, No. 5:20-CV-01462, 2020 WL 3819141, at *2 (E.D. Pa. July 8, 2020) ("[C]onsent does not always require a formal filing – instead, an informal, even oral consent may suffice but only if presented directly to the court." (emphasis added)); *but see Deutsche Bank*, 571 F. Supp. 2d at 815 (N.D. Ohio. 2008) ("The individual co-defendants are not required to do anything (other than to indicate their consent verbally to the removing defendant's lawyer and, if the defendant is a corporation, do so through an attorney).").

Still, Defendants argue that "the fact that [Defendants] subsequently opposed [Plaintiff's] motion to remand cured any purported defect in the removal petition." DE 80 at 2 (alterations in original) (quoting *Harper*, 392 F.2d at 202). To be sure, the Sixth Circuit has stated that defendants can satisfy the rule of unanimity by, among other things, opposing a motion to remand. *See City of Cleveland v. Ameriquest Mort. Secs.*, 615 F.3d 496, 501 (6th Cir. 2010). However, this must occur within the applicable thirty-day period. *See id.* (finding that defendants satisfied the rule of unanimity in part because after Cleveland filed its motion to remand on January 17, 2008, all of the Defendants opposed Cleveland's motion to remand on February 1, 2008, . . . *within the thirty day period*" (emphasis added)); *Loftis*, 342 F.3d at 517 ("[W]e believe that frank opposition to removal by a codefendant who affirmatively seeks a remand *within the thirty-day period* satisfies the prerequisite of a motion, and empowers the district court to enforce the unanimity requirement." (emphasis added)). Here, Chaney's motion to remand was itself filed *outside* of the thirty-day period. Thus, any response in opposition also fell outside of the thirty-day period and, thus, cannot satisfy § 1446's requirements.

Finally, the Court notes that the consents documented in DEs 68-18, 68-23, and 68-29 reflect removal joinder that is both untimely and is expressed by an unrepresented entity required to act through counsel. Thus, the documents purport action (here, consent) by an LLC's registered agent. Entities with corporate separateness must act through counsel. *See Polston v. Millennium Outdoors, LLC*, No. 6:16-CV-16-KKC, 2017 WL 878230, at *8 (E.D. Ky. Mar. 6, 2017) ("It is not a rigid reading or arbitrary assessment of *Harper* to require that that corporation's counsel give consent (or take corrective action to consent) to satisfy unanimity, rather than to allow counsel for another party convey the consent of a corporation given by a corporate officer, because all roads lead to the same result: in order for the corporation to act in federal court a corporation must have

counsel. So whether a party retains counsel to consent or retains counsel to take corrective action after it consents, it must, at bottom, act through an attorney.").  Those documents cinch that removing counsel could not have acquired or had proper consent at the time of removal because the documentation of later consent itself, from an (even still, it seems) unrepresented entity, is ineffective.  This solidifies that the removal did not satisfy the rule of unanimity under the time constraints of § 1446.

This Court is mindful that all doubts regarding the removal petition must be resolved against removal.  *See Queen ex rel. Province of Ont. v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).  Defendants bear the burden of demonstrating that removal was proper and have not adequately shown that all Defendants properly and timely joined in or consented, in writing, to removal.

> ### d.  Fees pursuant to 28 U.S.C. § 1447

Chaney argues that removal was "objectively unreasonable" and, accordingly, seeks a fee award under 28 U.S.C. § 1447.  *See* DE 48-1 at 12-13.  Defendants responded in opposition.  *See* DE 66 at 11-12; 67 at 10; 68 at 19-20; 69 at 1; 70 at 1; 73 at 5.

28 U.S.C. § 1447 provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The Court has discretion in awarding costs and fees.  *See Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal," and "when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 711 (2005).  The non-removing party has the burden to "establish that the . . . removal attempt was not objectively

reasonable." *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008).  This is a neutral matter of discretion and judgment.  The non-removing party does not, thus, need to show that the removal was "frivolous, unreasonable, or without foundation[.]"  *Martin*, 126 S. Ct. at 710 (internal quotation marks omitted) (quoting *Christiansburg Garment Co. v. EEOC*, 98 S. Ct. 694, 700 (1978)).

Chaney claims that there was no objectively reasonable basis for removal because the Complaint is based solely on state law claims, does not name any federal actors, and does not seek any relief as to his federal criminal conviction.  *See* DE 48-1 at 13.  To be sure, Defendants' sole reliance on *Rice* in the Notice of Removal is misplaced because that case involved a complaint that explicitly raised *federal* claims in addition to state law claims.  *See Rice*, No. RDB-15-3396, 2016 WL 1696536, at *4.  That said, though the Court will remand the matter based on an absence on federal question jurisdiction, it does not find removal "objectively unreasonable."  Exceptions to the well-pleaded complaint rule establish federal jurisdiction even where a federal cause of action is not evident on the face of the complaint.  Here, the Complaint is factually related to a federal investigation and prosecution, and it does not expressly state that Chaney intends to assert only state law claims.  *Cf. Malone v. Weyer*, No. 3:19-CV-638-DJH-RSE, 2019 WL 2931301, at *3 (W.D. Ky. July 8, 2019) (remanding case and granting fee award where the complaint stated "that it 'asserts state common law causes of action only,' then reiterates: '*[T]his Complaint does not assert any federal cause of action*[,]'" because "[i]nclusion of such disclaimers 'is an excellent practice' that the Sixth Circuit has 'strongly encourage[d]' as a way to 'avoid[ ] the procedural delay and expense of removal and remand.'" (internal citations omitted)).  Defendants' arguments under the substantial-federal-question doctrine were comprehensively briefed and cited relevant case law.  Though an ultimately unsuccessful basis for seeking removal, there is less clarity on

whether federal jurisdiction exists when a plaintiff raises state law claims involving conduct that related to an underlying criminal conviction. *Cf. Countrywide Home Loans, Inc. v. Bartmasser*, No. 2:08-CV-805, 2009 WL 4678840 (S.D. Ohio Oct. 22, 2008) (directing plaintiff to file a motion for fees in connection with motion to remand given the lack of "objectively reasonable basis" for removal and "clear prohibition" of removal of mortgage foreclosure case (internal quotation marks omitted)).  Given the arguable substantiality of a federal question, the Court does not find removal on this basis objectively unreasonable.

Further, while the removal ultimately lacks timely, documented unanimity under § 1446, the Court does not find the posture or sequence objectively unreasonable either.  Even if some Defendants ultimately did not provide required post-removal consent that was effective, the record nonetheless suggests timely and unanimous consent by, save unrepresented entity-defendants, all properly joined and served Defendants. *Cf. Maguire v. Genesee Cnty. Sheriff*, 601 F. Supp. 2d 882, 886 (E.D. Mich. 2009) (awarding fees after defendants failed to comply with the rule of unanimity, explaining that "[t]he removing defendant made no effort to secure the consent to remove from the other defendants, and he missed the filing deadline by a factor of three. These are rudimentary procedural concepts, and the misguided attempt at removal only delayed the resolution of the merits of the case and increased the expenses of the litigants."); *Deutsche Bank*, 571 F. Supp. 2d at 815 (N.D. Ohio 2008) ("The individual co-defendants are not required to do anything (*other than to indicate their consent verbally to the removing defendant's lawyer* and, if the defendant is a corporation, do so through an attorney)." (emphasis added)).

Finally, Chaney argues that removal was "a calculated move to delay the case from moving forward" but offers no explanation or support.  DE 48-1 at 13.  Defendants removed the matter within the statutorily required time frame and just thirty-six days after Chaney filed the Complaint

in state court.  *Cf. HealthCare Facility Mgmt LLC v. Engnan*, Nos. 1:23-CV-246, 247, 248, 249, 250, 2023 WL 5846874, at *3 (S.D. Ohio Sept. 11, 2023) (finding fee award justified because plaintiff "filed suit in state court against all five Defendants on October 25, 2022" and defendants "removed on May 1, 2023, more than six months later. 'Instead of closing discovery and preparing for a trial this fall as the parties were set to do in the state court, [plaintiff] spent the last two (2) months briefing its motion to remand along with a litany of other related motions Defendant[s] filed following removal—all of which were meritless, halted discovery and improperly delayed CFC's ability to prosecute its claims on the merits.'" (second alteration in original)); *Fed. Nat'l Mortg. Ass'n v. Jaa,* No. 14-2065-STA-DKV, 2014 WL 1910898, at *9 (W.D. Tenn. May 13, 2014) ("The court can only surmise that Jaa's removal is intended to delay the state court proceedings. Recognizing that such litigation-prolonging tactics should be deterred and counterbalancing the need to preserve a defendant's right to removal, the court recommends that FNMA's attorney fees incurred as a result of this removal be assessed against Jaa.").  In a case Plaintiff commenced a decade after the underlying criminal conviction, the Court is unpersuaded by arguments concerning the dynamics of delay.  The Court **DENIES** the fee request.

## V.    Conclusion

Thus, the Court **ORDERS** as follows:

1.   The Court **DENIES** DE 84, Chaney's motion for a hearing; and

2.   The Court **GRANTS** DE 48 and **REMANDS** the case to Perry Circuit Court. The state court may process any pending motions in the manner it sees fit.  The request for a fee award is **DENIED**.

This the 12th day of August, 2024.



Signed By:

*Robert E. Wier*

**United States District Judge**